APL-2021-00169
Appellate Division–First Department Case No. 2020-03001
New York County Clerk's Index Nos. 111723/11 and 595472/17

# Court of Appeals
### *of the*
# State of New York

KATHRYN CASEY, LAURIE CAGNASSOLA, GERALD COHEN, BETTY FURR, FRANCESCA GAGLIANO, CAROLYN KLEIN, JOSEPH MORGAN, RICHARD ROSE, JESSICA SAKS and KIRK SWANSON, on behalf of themselves and all others similarly situated,

*Plaintiffs-Respondents,*

– and –

PAMELA RENNA and VITTINA DEGREZIA aka VITTINA LUPPINO,

*Intervenor-Plaintiffs,*

– against –

WHITEHOUSE ESTATES, INC., KOEPPEL & KOEPPEL, INC., DUELL 5 MANAGEMENT LLC d/b/a DUELL MANAGEMENT SYSTEMS, WILLIAM W. KOEPPEL and EASTGATE WHITEHOUSE ESTATES, LLC,

*Defendants-Appellants.*

*(For Continuation of Caption See Inside Cover)*

## BRIEF FOR *AMICI CURIAE* RENT STABILIZATION ASSOCIATION OF NYC, INC. AND COMMUNITY HOUSING IMPROVEMENT PROGRAM, INC. IN SUPPORT OF DEFENDANTS-APPELLANTS WHITEHOUSE ESTATES, INC., *ET AL.*

KATSKY KORINS LLP
*Attorneys for Amici Curiae Rent*
   *Stabilization Association of NYC, Inc.*
   *and Community Housing*
   *Improvement Program, Inc.*
605 Third Avenue
New York, New York 10158
Tel.: (212) 953-6000
Fax: (212) 953-6899
akoch@katskykorins.com

WHITEHOUSE ESTATES, INC., EASTGATE WHITEHOUSE LLC
and WILLIAM W. KOEPPEL,

*Third-Party Plaintiffs-Appellants,*

– against –

ROBERTA L. KOEPPEL, ALEXANDER KOEPPEL as Executors and Trustees
of the Trust created under Article Fourth of the Last Will of Robert A. Koeppel,
KOEPPEL MANAGEMENT COMPANY LLC and ROBERTA L. KOEPPEL
individually,

*Third-Party Defendants-Respondents.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

The only subsidiaries of the Rent Stabilization Association of NYC, Inc. are Realty Services of America, Inc., RSA Insurance Agency, Inc., and RSA Mortgage Brokerage, Inc. The sole subsidiary of the Community Housing Improvement Program, Inc. is Associated Builders and Owners of Greater New York.

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES _____ ii

PRELIMINARY STATEMENT _____ 1

INTERESTS OF THE *AMICI* _____ 7

ARGUMENT_____ 10

    I.  THE APPELLATE DIVISION'S HOLDING THAT "THE BASE
       DATE RENT CANNOT BE ESTABLISHED" WAS LEGAL ERROR 10

    II. THE APPELLATE DIVISION FURTHER ERRED IN APPLYING
       THE DEFAULT FORMULA BASED ON ITS "FRAUDULENT
       OVERCHARGE SCHEME" JURISPRUDENCE, WHICH
       CONTRADICTS THIS COURT'S PRECEDENT AND IS
       INCONSISTENT WITH THE RSL AND RSC _____ 15

    III.IF THE COURT DETERMINES THAT THE DEFAULT FORMULA
       CAN BE APPLIED BASED ON A "FRAUDULENT OVERCHARGE
       SCHEME," IT SHOULD PROVIDE CLEAR GUIDANCE ON THE
       DISTINCTION BETWEEN CONDUCT THAT WARRANTS SUCH
       APPLICATION AND CONDUCT THAT ONLY WARRANTS
       TREBLE DAMAGES_____ 21

CONCLUSION _____ 27

# <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

*Cases*

*435 Central Park West Tenant Assoc. v. Park Front Apts., LLC*, 183 A.D.3d
509 (1st Dept. 2020) _____ 16

*71 Clinton St. Apts. LLC v. 71 Clinton Inc.*, 114 A.D.3d 583
(1st Dept. 2014) _____ 20

*72A Realty Assocs. v. Lucas*, 101 A.D.3d 401 (1st Dept. 2012) _____ 12

*8200 Realty Corp. v. Lindsay*, 27 N.Y.2d 124 (1970) _____ 8

*Altman v. 285 West Fourth LLC*, 31 N.Y.3d 178 (2018) _____ 8

*Borden v. 400 East 55th Street Assocs., L.P.*, 24 N.Y.3d 382 (2014) _____ 18, 19

*Conason v. Megan Holding LLC*, 25 N.Y.3d 1 (2015) _____ 26

*Ferreyra v. Arroyo*, 35 N.Y.3d 127 (2020) _____ 21

*Gersten v. 56 7th Ave. LLC*, 88 A.D.3d 189 (1st Dept. 2011), *appeal withdrawn*,
18 N.Y.3d 954 (2012) _____ 6

*Gridley v. Turnbury Village, LLC*, 196 A.D.3d 95 (2d Dept. 2021) _____ 23, 25

*Herman v. 36 Gramercy Park Realty Assocs., LLC*, 165 A.D.3d 405 (1st Dept.
2018), *leave to appeal denied*, 33 N.Y. 3d 1045 (2019), *reargument denied*,
33 N.Y.3d 1134 (2019) _____ 20

*Maddicks v. Big City Properties, LLC*, 34 N.Y.3d 116 (2019) _____ 8

*Matter of Ansonia Residents Assn. v. New York State Div. of Hous. & Comm.
Renewal*, 75 N.Y.2d 206 (1989) _____ 8

*Matter of Casado v. Markus*, 16 N.Y.3d 329 (2011) _____ 8

*Matter of Mengoni v. New York State Div. of Hous. & Comm. Renewal*, 97
N.Y.2d 630 (2001) _____ 8

## <u>TABLE OF AUTHORITIES (cont'd)</u>

<u>**Page**</u>

*Montera v. KMR Amsterdam LLC*, 193 A.D.3d 102 (1st Dept. 2021) _____ 16, 23

*Regina Metropolitan Co., LLC v. New York State Division of Hous. and Comm. Renewal*, 35 N.Y.3d 332 (2020) _____ passim

*Roberts v. Tishman Speyer Props., L.P.*, 13 N.Y.3d 270 (2009) _____ passim

*Simpson v. 16-26 East 105, LLC*, 176 A.D.3d 418 (1st Dept. 2019) _____ 18

*Sperry v. Crompton Corp.*, 8 N.Y.3d 204 (2007)_____ 19

*Thornton v. Baron*, 5 N.Y.3d 175 (2005)_____ 25

*Weinberg v. D-M Restaurant Corp.*, 53 N.Y.2d 499 (1981) _____ 17, 19

**Statutes**

CPLR 3016(b) _____ 21

CPLR 901(b) _____ 18, 19

Rent Stabilization Law § 26-516(a)_____ 17

**Regulations**

Rent Stabilization Code § 2522.6(b)(2) _____ 2, 15, 16

The Rent Stabilization Association of NYC, Inc. and the Community Housing Improvement Program, Inc. (collectively, the "*Amici*") respectfully submit this brief as *amici curiae* in support of Defendants-Appellants Whitehouse Estates, Inc., *et al.* ("Appellants"). For the reasons detailed below – in addition to those detailed in Appellants' own briefing – the August 5, 2021 Order of the Appellate Division, First Department (the "Order," R.1370-85[1]) should be reversed.

## **PRELIMINARY STATEMENT**

This case calls upon the Court to address First Department jurisprudence that has created a "fraudulent overcharge" exception to the rent-setting rules established by this Court in *Regina Metropolitan Co., LLC v. New York State Division of Hous. and Comm. Renewal*, 35 N.Y.3d 332 (2020) – and in so doing has, we respectfully submit, created a new penalty for rent overcharge that is nowhere authorized under the rent stabilization law ("RSL"). Specifically, the RSL establishes a penalty of treble damages for an overcharge that is "willful." It does not authorize any other kind of penalty for rent overcharge. The First Department jurisprudence on which the Order relies,

---

[1] References to "R.__" are to the printed Record on Appeal. References to "App. Br." are to Appellant's principal brief; references to "Resp. Br." are to the brief of plaintiffs-respondents ("Respondents"); references to "Reply Br." are to Appellants' Reply Brief.

1

however, establishes a separate and distinct penalty for an overcharge that is

"fraudulent": recalculation of rent pursuant to a "default formula," rather than

pursuant to the "four-year rule" endorsed by this Court in *Regina*. That

recalculation will always result in a damage award substantially greater than

what the four-year rule would authorize.[2]

Under this Court's precedent, application of the default formula based on

"fraudulent overcharge" (as distinct from based on an actual unavailability of

the information necessary to calculate the legal rent under *Regina*) amounts to a

---

[2] As explained in the parties' briefing, under the four-year rule a rent
overcharge is determined by looking to the rent actually charged on the date
four years before the claim was filed (the "base date") and adding, for each
subsequent year, the increases authorized by the Rent Guidelines Board
("RGB"). If the rent in any such year exceeds the total of the base date rent
plus RGB-authorized increases, the amount of such excess is an overcharge.
(*See* App. Br. at 3-4). As this Court recognized in *Regina*, in many cases the
four-year rule may result in a finding of a very small overcharge (or no
overcharge at all) even for apartments that, like those at issue here, were
mistakenly deregulated under the practice authorized by the Division of
Housing and Community Renewal ("DHCR") prior to this Court's
determination in *Roberts v. Tishman Speyer Props., L.P.*, 13 N.Y.3d 270
(2009), that apartments could not be deregulated while the buildings in which
they were located were receiving certain tax benefits. *See Regina*, 35 N.Y.3d
at 361-62. The "default formula," on the other hand, was devised by DHCR to
address overcharge claims in cases where the actual rent charged on the base
date cannot be determined, the rental history since the base date is unavailable,
or the base date rent is "the product of a fraudulent scheme to deregulate the
apartment." *See* Rent Stabilization Code ("RSC") § 2522.6(b)(2). Under that
formula, the legal rent is set based on whichever of four calculations set forth in
the RSC produces the lowest result – which will almost always be substantially
less than what the tenant is paying.

penalty. Unlike the circumstances in which the RSC expressly authorizes use of that formula, the recent "fraudulent overcharge" jurisprudence does not require a determination that it is not possible to determine *compensatory* damages under the four-year rule. Rather, in "fraudulent overcharge" cases application of the default formula is designed to punish or deter conduct the courts deem "fraudulent." That is the essence of a penalty, and that penalty contradicts both this Court's precedent and the RSL itself (and has never been endorsed by DHCR). (*See infra*, Point II).

As detailed below, although the Appellate Division also found that the default formula should apply in this case for the alternative reason that the actual base date rent could not be established, that finding was based on a legal error. The lower court never considered whether the base date rent could be "established" using the four-year rule; instead – pursuant to precedent that has since been overturned by this Court – it (a) called upon Appellants to "establish" the base date rent by calculating all permissible rent increases since the apartments were deregulated years before the base date, and (b) determined that Appellants had not done so. It therefore awarded summary judgment in favor of Respondents based on a legal standard that has since been rejected by this Court.

3

Respondents did not argue in the lower court, and the lower court did not find, that there was insufficient evidence to determine what rent was actually being paid on the base date. As a result, the Appellate Division may have been correct in observing that the record did not contain leases or other evidence showing the actual rent charged on the base date for each of the 78 apartments at issue in this action, as would be necessary to calculate the legal rent under the four-year rule.[3] But the reason why it did not contain such evidence is because such evidence would have been beside the point under the analysis Respondents urged when *they* moved for summary judgment. The Appellate Division thus affirmed summary judgment in favor of Respondents based on a finding that *Appellants* had not adequately proven something that, under the law as it existed at the time of Respondents' motion, no one was suggesting they needed to prove. This was error as a matter of law. (*See infra*, Point I).

If the Court agrees that the base date analysis was legally erroneous, the Order cannot stand unless the Court adopts the "fraudulent overcharge" jurisprudence that was the Appellate Division's alternative basis for its

---

[3] As noted below, however, it does contain Respondents' admission that Appellants had produced leases showing the actual base date rent for at least 55 of those apartments. (*See infra* at 15).

holding. For the reasons summarized above and further detailed below, we respectfully submit that the Appellate Division's "fraudulent overcharge" reasoning and analysis should be reversed.[4] But if the Court instead adopts a "fraudulent overcharge" exception to the four-year rule, we urge that it also clarify what distinguishes conduct that is "fraudulent" (and therefore warrants application of the default formula) from conduct that is merely "willful" (such that the only available penalty is statutory treble damages) – and that it make clear that a finding of "fraudulent" conduct requires clear and convincing proof that the landlord had good reason to know that its conduct was not only unlawful (which would amount to willfulness), but actually satisfied the elements of fraud.

This is critical so that parties and courts can understand what proof is needed to warrant the substantially different remedies at issue. But it is also necessary to alleviate the untenable position in which landlords who mistakenly deregulated apartments prior to *Roberts* will otherwise find themselves. As detailed below, although *Roberts* ultimately meant that thousands of apartments that had been mistakenly deregulated pursuant to the

---

[4] If the Court finds that the default formula was correctly applied based on an absence of base date documentation, we urge it to be specific in that analysis and to expressly overrule the alternative "fraudulent overcharge" analysis.

practice previously authorized by DHCR had to be re-regulated, DHCR did not issue guidance as to how landlords should calculate the legal rent in such apartments until 2016 (seven years after *Roberts*, and four years after *Gersten*[5]).  Moreover, four years later (in 2020) this Court decided in *Regina* that DHCR's guidance was incorrect, and imposed a different rule.  *See Regina*, 35 NY.3d at 361-62

Meanwhile, over 4,000 landlords waited for DHCR's guidance before re-registering mistakenly-deregulated apartments.  Under the First Department's "fraudulent overcharge" jurisprudence, that "delay" has been considered a factor that heavily weighs in favor of a finding of fraud (and a corresponding application of the default formula).  (*See infra* at 22-23 and n.14).  But landlords who (like Appellants here) did not wait had to guess at what DHCR and/or this Court would ultimately approve.  Appellants here guessed incorrectly, and find themselves accused of fraud because of it.

---

[5] In *Gersten v. 56 7th Ave. LLC*, 88 A.D.3d 189 (1st Dept. 2011), the First Department determined that *Roberts* applied retroactively to all apartments mistakenly deregulated under DHCR's prior practice.  Because an appeal to this Court was withdrawn in 2012 (*see* 18 N.Y.3d 954 (2012)), that is considered by some to be the point at which it became clear that all such apartments would have to be re-registered as rent regulated.  Others were waiting to see whether this Court would shortly thereafter rule on retroactivity in a subsequent case.

If waiting for guidance is considered an indication of fraud *and* acting incorrectly before the guidance is issued is also considered an indication of fraud, then the only way a landlord could avoid a finding of fraud is to have correctly predicted in 2012 both what DHCR would say in 2016 and that this Court would overrule DHCR in 2020. Because we respectfully submit that this cannot be the law, if the Court establishes a new "fraudulent overcharge" claim that warrants application of the default formula we urge the Court to elaborate on the meaning of "fraudulent" in a way that sufficiently narrows the term to prevent it from encompassing such a wide swath of conduct. (Point III).

### INTERESTS OF THE *AMICI*

The *Amici* are New York real estate industry membership organizations, which together represent tens of thousands of small, medium and large property owners and managers of over one million rent-regulated apartments throughout the City of New York. They provide educational, legal and legislative advocacy, and other services to their members concerning the vast regulatory system affecting their properties under the various rent laws of New York.

Indicative of the *Amici's* interest in and expertise on legal and public policy issues affecting private regulated housing is the large number of major cases where one or both of the *Amici* have participated as parties, intervenors

7

or *amicus/amici curiae.* They include, but are not limited to, *Altman v. 285 West Fourth LLC*, 31 N.Y.3d 178 (2018) (inclusion of 20% statutory vacancy increase in calculation of rent for purposes of determining whether deregulation threshold is met); *Roberts*, *supra* (reinterpretation of the luxury deregulation law with respect to owners that received J-51 tax benefits); *Matter of Casado v. Markus*, 16 N.Y.3d 329 (2011) (NYC Rent Guidelines Board orders providing for minimum dollar increases on rent stabilized apartments for long-term tenants); *Matter of Mengoni v. New York State Div. of Hous. & Comm. Renewal*, 97 N.Y.2d 630 (2001) (retroactive application of four-year statute of limitations for rent overcharge claims); *Matter of Ansonia Residents Assn. v. New York State Div. of Hous. & Comm. Renewal*, 75 N.Y.2d 206 (1989) (permanency of rent increases for major capital improvements under the RSC); *8200 Realty Corp. v. Lindsay*, 27 N.Y.2d 124 (1970) (constitutionality of the Rent Stabilization Law of 1969); *Maddicks v. Big City Properties, LLC*, 34 N.Y.3d 116 (2019) (standards for evaluating class allegations under CPLR 3211(a)); and, most recently, *Regina*, *supra* (non-retroactivity of overcharge calculation amendments enacted in Housing Stability and Tenant Protection Act of 2019).

The Appellate Division's Order directly impacts the members of the *Amici* organizations, all of whom own and operate residential buildings

containing units subject to rent stabilization (and many of whom are currently litigating these issues, some facing putative class actions similar to this one). As outlined above and further detailed below, the Appellate Division's Order endorses what is essentially a new penalty for "fraudulent overcharge," treats that penalty as available in a class action, and provides no means of distinguishing between conduct that is "fraudulent" (and therefore warrants that penalty) and conduct that is merely "willful" (for which the only available penalty is statutory treble damages – which must be waived in a class action). Moreover, when considered in the context of other First Department precedent, the Order places landlords in an untenable position: if (like Appellants here) landlords immediately attempted to re-register apartments mistakenly deregulated prior to *Roberts*, *supra*, but did not accurately predict the methodology this Court would ultimately endorse for calculating the legal rent, they might be guilty of "fraudulent overcharge"; however, if they waited for guidance from DHCR and/or this Court, their "delay" might also support a finding of "fraudulent overcharge." *Amici* urge this Court to relieve their members from this unfair burden – or, at a minimum, to provide clarity so that they can better understand how to navigate that burden.

## **ARGUMENT**

## I.  THE APPELLATE DIVISION'S HOLDING THAT "THE BASE DATE RENT CANNOT BE ESTABLISHED" WAS LEGAL ERROR

The lower court's ruling that the default formula should apply because there was insufficient evidence from which to "calculate" the base date rent (R.22-23) was premised entirely on a legal error: the lower court sought to "calculate" the base date rent pursuant to a "reconstruction" methodology that has since been rejected by this Court. (*See infra* at 11-13). The Appellate Division affirmed that ruling on a record that does not actually reveal whether or not the base date rent can be established for each apartment pursuant to the four-year rule ultimately endorsed by this Court in *Regina*. (*See infra* at 13-15). This was error as a matter of law.

A full understanding of the genesis of this error requires a step back to look at the unusual procedural posture in which this case came to the Appellate Division. The 2021 Order affirmed an order of the Supreme Court, New York County (Lebovits, J.) that was entered in *2017*. This four-year gap resulted from a combination of a bankruptcy that automatically stayed proceedings, followed by a series of extensions of the deadline to perfect in the Appellate Division – first based on the pendency in this Court

of the cases ultimately decided in *Regina*, *supra*, and later based on the

COVID-19 pandemic.[6]

The gap, in turn, gives rise to a substantial disconnect.  In their motion

for summary judgment (made in 2015), Respondents argued that the legal

rent on the base date should be determined using a version of what is now

called the "reconstruction" method: "by determining the last lawful and

properly registered rent amount, and adding lawful increases to that amount

through the base date."  (R.77).  As a result, they reasoned, "in order to

establish the legal regulated rents for [Respondents'] apartments, it is

necessary to review the entire rental histories of those apartments."  (R.78).

Claiming that the records Appellants had produced in discovery were

"entirely inadequate to perform the necessary review and make the required

calculations" (*id.*), Respondents urged that "the Court should determine that

[Appellants] are in default of their discovery obligations, and that as a

consequence the rents for all apartments should be calculated based on

DHCR's Default Formula."  (R.58; *accord* R.83).

In their reply papers, Respondents reiterated:

In order to determine the legal regulated rent for [Respondents']
apartments, [Appellants] must provide the leasing records from

---

[6] *See Casey, et al. v. Whitehouse Estates Inc., et al.*, Case No. 2020-03001
(App. Div., 1st Dept.), NYSCEF Doc. No. 4.

> the period of time when the apartment was timely registered as
> rent stabilized; [Appellants] must provide the records justifying
> any rent increase for individual apartment improvements (IAIs),
> as well as longevity increases and vacancy increases; and
> [Appellants] must provide the market leases from the time the
> apartment was deregulated to date. In no case have [Appellants]
> provided a complete set of those documents as to any apartment.

(R.1258). They also noted that DHCR's guidance on how to calculate the

legal rent for apartments that had been mistakenly deregulated prior to

*Roberts, supra* – issued in January 2016, shortly after they filed their

moving papers – supported their proffered methodology. (*See* R.1261).

Importantly, Respondents did *not* argue that they lacked sufficient

documents to determine what rent any tenant was actually paying on the

base date. No such argument was made because, under the precedent that

existed at that point, the rent actually paid on the base date (years after the

mistaken deregulations had occurred) was not the question. *See 72A Realty*

*Assocs. v. Lucas*, 101 A.D.3d 401, 402 (1st Dept. 2012); *accord* DHCR J-51

Rent Registration Initiative – FAQs, item 10 (R.1244-45). Rather, the

question was whether there was enough evidence to reconstruct what the

legal rent would have been if the apartments had never left rent stabilization.

Respondents argued that there was not; the lower court agreed, finding that

"[Appellants'] evidence is too incomplete to permit an accurate *calculation*

of either the base rent, or the current legal rent, for any of the 78 apartments

that [Respondents] assert were improperly deregulated." (R.23, emphasis added).

By the time the case reached the Appellate Division, however, *Regina* had changed the applicable question: today, absent "a fraudulent scheme to deregulate" the apartment, the base date rent is the rent actually charged on the date four years prior to the filing of a claim.  35 N.Y.3d at 355-56. Applying this standard, the Appellate Division held that "the base date rent cannot be established because [Appellants] failed to provide leases showing what the actual rent charged on the base date was, or whether the actual rent was known." (R.1374).  But the reason the record did not reveal either "what the actual rent charged on the base date was" for each apartment or "whether [that] rent was known" was because in the lower court no one – not Respondents who moved for summary judgment, and not the court that granted that motion – was asking those questions.  Instead, they were trying to calculate the "base date rent" based on the reconstruction method this Court rejected in *Regina*.

The result is that (a) summary judgment was awarded against Appellants based on an incorrect standard (the reconstruction method); and (b) that judgment was then affirmed because the record did not contain evidence that would have been beside the point under the law as it existed at

the time the judgment was entered.  This was error as a matter of law.

Having moved for summary judgment on the issue of whether the default

formula should apply based on inability to establish the base date rents,

*Respondents* bore the burden of demonstrating that the base date rents could

not be established for any of the apartments at issue.  They may have met that

burden under the precedent that existed in 2017 when the lower court decided

their motion based on the reconstruction method.  But by the time they reached

the Appellate Division, that precedent had been overruled.  Although the

Appellate Division could have vacated the lower court's order on that basis and

remanded for a determination in light of the change in the law (as the dissenting

Justice would have done – *see* R.1385), it instead set out to apply *Regina* to the

record before it.

Under *Regina*, however, the Appellate Division should have asked

whether *Respondents* had adequately demonstrated that Appellants have no

records from which the rents actually charged on the base date could be

determined.  The answer to that question should have been a resounding "no."

Instead, the Appellate Division asked whether *Appellants* had submitted

evidence of the actual base date rents – evidence that, at the time the lower

court ruled, would not have changed the analysis or outcome.  In so doing, the

Appellate Division flipped the burden of proof and penalized Appellants for not rebutting an argument that Respondents never made.

We respectfully submit that the Appellate Division's determination that the actual base date rents "cannot be established" should be vacated for this reason alone. But we note one further point. As Appellants point out, the record apparently *does* include Respondents' admission that they were provided actual leases showing the rents charged on the base date for at least 55 of the 78 apartments at issue in this action. (*See* App. Br. at 57-59). As a result, for at least those 55 apartments there should be no application of the default formula based on inability to determine the rent charged on the base date. (RSC § 2522.6(b)(2)(i)).

As for the others, the record does not reveal whether or not the actual rent charged on the base date can be determined. To the extent it can, the default formula cannot apply unless there is another basis for applying it. As we explain in the sections that follow, there is not.

## II. THE APPELLATE DIVISION FURTHER ERRED IN APPLYING THE DEFAULT FORMULA BASED ON ITS "FRAUDULENT OVERCHARGE SCHEME" JURISPRUDENCE, WHICH CONTRADICTS THIS COURT'S PRECEDENT AND IS <u>INCONSISTENT WITH THE RSL AND RSC</u>

As detailed above, the Appellate Division's determination was driven in large part by its mistaken belief that the record permitted it to conclude that the

15

rent actually charged on the base date could not be determined.  But it was also driven by recent First Department jurisprudence that holds that the default formula applies not only where there is a fraudulent scheme to *deregulate*, but also where there is a fraudulent scheme to "overcharge."  *See 435 Central Park West Tenant Assoc. v. Park Front Apts., LLC*, 183 A.D.3d 509, 510-11 (1st Dept. 2020) (cited by the Appellate Division at R.1376); *accord Montera v. KMR Amsterdam LLC*, 193 A.D.3d 102, 107 (1st Dept. 2021).  Because the Appellate Division found that such a scheme existed here, it made clear that it would have applied the default formula regardless of whether or not the actual base date rent was known.  (*See* R.1373-74).  This, we submit, was also legal error.

As Appellants explain in detail (*see* App. Br. at 50-53; Reply Br. at 20-21), the First Department's jurisprudence authorizing use of the default formula in cases of "fraudulent overcharge" is inconsistent with this Court's precedent. That precedent (including *Regina*) dictates that fraud results in application of the default formula only where the rent actually charged on the base date is the product of a fraudulent scheme to *deregulate* the apartment.[7]  Conduct *after* the

---

[7] The RSC similarly provides for application of the default formula based on fraud only where there fraud constitutes a "scheme to *deregulate* the apartment." *See* RSC § 2522.6(b)(2)(iii) (emphasis added).

base date cannot possibly evidence "a fraudulent scheme to destabilize the apartment [that] taint[s] the reliability of the rent on the base date" – as required to warrant application of the default formula based on such a scheme. *See Regina*, 35 N.Y.3d at 355. Indeed, conduct constituting a fraudulent scheme to deregulate an apartment must by definition occur before the deregulation itself; that is, there can be no fraudulent scheme to deregulate an apartment that is already deregulated.

In light of *Regina*'s admonition that it is not "necessary to recognize an additional common-law exception" to the four-year rule (35 N.Y.3d at 360), this is enough to justify rejection of the First Department's attempt to expand the default formula to cover fraudulent schemes to "overcharge." But that expansion is also inconsistent with the RSL itself. The statute provides that a landlord who is found "to have collected an overcharge" is liable for "a penalty equal to three times the amount of such overcharge" unless the landlord "establishes by a preponderance of the evidence that the overcharge was not willful." RSL § 26-516(a). The Legislature thus decided on a penalty for an overcharge that is "willful": that penalty is treble damages. It is not for the courts to impose an additional penalty (application of the default formula) based on a heightened level of willfulness they label "fraudulent." *See Weinberg v. D-M Restaurant Corp.*, 53 N.Y.2d 499, 508 (1981) ("a statute . . . is to be read

17

and given effect as it was written, and . . . the courts under guise of interpretation may not enlarge or change the scope of a legislative enactment").

This rule of construction is especially important in a case like this one, where Respondents had to disclaim any intent to seek a penalty in order to proceed as a class. *See* CPLR 901(b); *accord Borden v. 400 East 55th Street Assocs., L.P.*, 24 N.Y.3d 382, 392-98 (2014). Although this Court has never opined on whether the default formula constitutes the kind of "penalty" that is unavailable in a class action, the First Department has held that it does not – because it is "not 'punishing conduct.'" *Simpson v. 16-26 East 105, LLC*, 176 A.D.3d 418, 419 (1st Dept. 2019). This follows, that court reasoned, because the default formula "is applied equally in cases in which the owner has engaged in fraud and in cases in which the base date rent simply cannot be determined or the rent history is unavailable." *Id.* But in all such cases the default formula is applied because there is an inherent problem with the relevant rent history: there is not adequate evidence of the actual base date rent; the actual base date rent is known but unusable because it is itself a product of a fraudulent scheme to deregulate; or there is not sufficient evidence of the rent paid in each year since the base date. In any of these scenarios, the default formula is necessary to determine the proper amount of *compensatory* damages. *Id.*

18

In contrast, where both the actual base date rent and the actual rent in each year since the base date are known – and the base date rent is not a product of fraudulent scheme to deregulate – *Regina* dictates that compensatory damages are "*only* the increases collected [since the base date] that exceeded legal limits." 35 N.Y.3d at 356 (emphasis added). To increase those damages based on a finding that an overcharge was "fraudulent" amounts to a penalty. *See Borden*, 24 N.Y.3d at 396 ("[A] statute imposes a penalty when the amount of damages that may be exacted from the defendant would exceed the injured party's actual damages.") (citation and internal quotations omitted; alteration in *Borden*); *accord Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 213-14 (2007) (damages that go beyond what "compensates a plaintiff for actual damages," including those designed to "punish[]" or "deter[]" certain conduct, constitute a penalty for purposes of CPLR 901(b)). We respectfully submit that – much as the Court should be loath to read such an additional penalty into the statute by implication (*see Weinberg*, 53 N.Y.2d at 508) – it should be especially reluctant to do so in a class action setting where the plaintiffs have waived any right to seek a penalty in order to proceed as a class.

The question of whether the registration of reconstructed rents was a good faith attempt to comply with *Roberts* (as Appellants argue – *see* App. Br. at 7-10, 42-49) or a deliberate attempt to "artificially increase the legal

regulated rent" (as the Appellate Division concluded – *see* R.1373) is hotly

disputed between the parties. *Amici* take no position on that question, other

than to respectfully suggest that the record did not contain sufficient evidence to

warrant summary judgment in favor of Respondents on the issue. But even if it

did, that would have no bearing on whether the base date rent for Respondents'

apartments was the product of a fraudulent scheme to *deregulate* them. Rather,

at most it would mean that any overcharge was willful. The Legislature has

specified a remedy for that: the treble damages that Respondents chose to waive

in order to proceed as a class. Neither the statute nor this Court's precedent

leaves room for an additional, judicially-created remedy – *especially* in the

class action setting, where penalties are not available.[8]

---

[8] We note as well that, in granting class certification, the lower court expressly
held that (a) a claim for a penalty can be waived; and (b) it was "clear" that
there could be no treble damages because "the facts alleged cannot support a
finding that the landlord fraudulently or purposefully evaded the Rent
Stabilization Law." (R.188-191). The parties dispute whether that holding
became law of the case and precluded any claim for application of the default
formula based on a "fraudulent overcharge." (*See* R.25-26; Resp. Br. at 27, 40).
The Court, however, could hold that – having obtained class certification based
on a finding that they could not have sought a penalty because the conduct at
issue was neither willful nor fraudulent – plaintiffs are now judicially estopped
from seeking increased damages based on an argument that the conduct was in
fact fraudulent. *See Herman v. 36 Gramercy Park Realty Assocs., LLC*, 165
A.D.3d 405 (1st Dept. 2018), *leave to appeal denied*, 33 N.Y.3d 1045 (2019),
*reargument of leave to appeal denied*, 33 N.Y.3d 1134 (2019); *71 Clinton St.
Apts. LLC v. 71 Clinton Inc.*, 114 A.D.3d 583, 584 (1st Dept. 2014).

### III. IF THE COURT DETERMINES THAT THE DEFAULT FORMULA CAN BE APPLIED BASED ON A "FRAUDULENT OVERCHARGE SCHEME," IT SHOULD PROVIDE CLEAR GUIDANCE ON THE DISTINCTION BETWEEN CONDUCT THAT WARRANTS SUCH APPLICATION AND CONDUCT THAT ONLY WARRANTS TREBLE DAMAGES

If the Court determines that the default formula can be applied based on a "fraudulent overcharge scheme," we respectfully submit that at a minimum it should clarify what that means. The First Department jurisprudence in this regard effectively creates a new species of "fraud" – one that apparently does not require that fraud be alleged with particularity,[9] or that the party alleging fraud prove scienter,[10] or that fraud be proven by clear and convincing evidence.[11] This, we submit, is not only inconsistent with this Court's jurisprudence (*see* App. Br. at 31-33); it also fails to create a basis for distinguishing a "fraudulent" overcharge (sufficient to trigger the default

---

[9] *Cf.* CPLR 3016(b).

[10] *Cf. Regina*, 35 N.Y.3d at 356, n.7 ("Fraud consists of evidence [of] a representation of material fact, falsity, scienter, reliance and injury.") (collecting cases; citations and internal quotations omitted; alteration in *Regina*).

[11] *Cf. Ferreyra v. Arroyo*, 35 N.Y.3d 127, 128 (2020) ("[T]he bar for establishing fraud is a high one. Fraud must be proved by clear and convincing evidence … –a standard that has been defined as proof that makes it highly probable that the alleged activity actually occurred.") (citations and internal quotations omitted).

formula) from one that is merely "willful" (for which the statutory remedy is treble damages).

Given the substantial difference in the impact of the remedies triggered by these two ostensibly different species of overcharge, a clear distinction between them is critical. But two other aspects of rent stabilization make this especially so. First, under the RSL the landlord bears the burden of demonstrating that any overcharge was *not* willful; that is, willfulness is effectively presumed for purposes of the treble damages remedy. In contrast, the tenant bears the burden of proving fraud.[12] Parties and courts need to know what proof a tenant needs to present – beyond proof of willfulness – to be entitled to application of the default formula. *See Regina*, 35 N.Y.3d at 356 ("conduct cannot be fraudulent without being willful").

Second, the absence of a clear distinction between fraud and "mere" willfulness leaves landlords in an untenable position. For many years after *Roberts*, landlords had no clear guidance as to how to calculate the legal rent for apartments that had been deregulated pursuant to DHCR's prior policy. Over

---

[12] There has never been any suggestion in the case law that the burden of proof with respect to fraud lies anywhere other than with the tenant asserting it. *See Regina*, 35 N.Y.3d at 354 (tenants permitted to use evidence outside the four-year lookback period "to prove that the owner engaged in a fraudulent scheme to deregulate the apartment").

4,000 of those landlords waited for guidance from DHCR.[13] Because that guidance did not come until 2016 (*see* R.1242-46), many of the landlords who waited for it are now faced with claims that the default formula should apply simply by virtue of their "delay." The First and Second Departments are currently split on the question of whether such "delay" is an indication of fraud.[14]

In contrast, Appellants here did not wait; instead, they promptly attempted to devise a way to calculate the legal rent. The lower courts did not approve of the method they chose, but it was not without basis: Appellants apparently attempted to reconstruct what the legal rent would have been if they had never deregulated the apartments *and* had preserved their right to every available increase by specifying in the relevant leases that any lower rent was a preferential one. (*See* R.1196-98).[15] In the absence of guidance from the courts

---

[13] *See Gridley v. Turnbury Village, LLC*, 196 A.D.3d 95, 97 (2d Dept. 2021).

[14] The Second Department held in *Gridley* that waiting for that DHCR guidance "does not indicate" fraud (and therefore does not warrant application of the default formula). *See Gridley*, 196 A.D.3d at 101. But the First Department has repeatedly cited such "delay" as a factor weighing in favor of application of the default formula (*see, e.g., Montera, supra*, 193 A.D.3d at 105-07 (discussing cases)) – even though DHCR itself did not treat it as such, inasmuch as its 2016 guidance did not instruct landlords to recalculate rent using the default formula. (*See* R.1242-46).

[15] The Appellate Division found this distasteful because it resulted in "legal" rents that were higher than the rents Respondents were actually paying (*see*

or DHCR, it was not self-evidently unreasonable to attempt this kind of

reconstruction.  Yet based solely on that attempt – and without any evidence

that any tenant actually paid any more rent than what would have resulted under

the methodology this Court ultimately endorsed in *Regina* –  Appellants were

found guilty not merely of willfulness but of *fraud*.

In this context it is unclear how a landlord could avoid a claim (if not an

actual finding) of fraud.  Landlords who waited for guidance are accused of

fraud by reason of their "delay," even though they had no idea that DHCR

would not issue guidance until 2016 (let alone that, as this Court found four

years later in *Regina*, that guidance would be incorrect).  Those who did not

wait are accused of fraud for using a methodology that is not what this Court

ultimately endorsed, even though DHCR itself also erred in that regard.  Fraud,

we submit, should not have such a wide swath.

A landlord in either of these groups (that is, (a) those who waited, and

(b) those who acted immediately but used the wrong pre-*Regina* methodology)

might have registered rents higher than they would have been if the landlord

had been prescient enough to immediately re-register apartments in 2012 using

---

R.1373-74), but there is no evidence that Appellants ever attempted to actually
collect those higher rents.

the methodology endorsed in *Regina* eight years later in 2020.[16]  That would

mean an overcharge.  But *fraud* must involve something more: a party guilty of

fraudulent conduct must at a minimum have had good reason to believe that the

conduct was not only wrongful, but egregiously so.

Clarifying what proof is needed to demonstrate a fraudulent overcharge

will give this Court an opportunity to resolve the split between the First and

Second Departments on the question of whether delay is indicative of fraud (*see*

*supra* at 23, n.14) – a split that we submit should be resolved in favor of the

Second Department rule that delay does not indicate fraud, such that the 4,000

landlords who waited for DHCR's guidance are not all subject to claims of

"fraudulent overcharge" for having waited for such guidance.  *See Gridley*, 196

A.D.3d at 101.[17]  But it will also give the Court an opportunity to clarify what

*does* constitute fraud – which, we submit, should be limited to serious

misconduct such as the conspiracy at issue in *Thornton v. Baron*, 5 N.Y.3d 175

(2005),[18] a fictitious tenancy designed to support an additional (unwarranted)

---

[16] *But see Regina*, 35 N.Y.3d at 361-62 (four-year methodology resulted in minimal or no liability).

[17] Such a ruling would be consistent with the apparent view of DHCR, which in 2016 instructed landlords who had not yet re-registered apartments mistakenly deregulated prior to *Roberts* to calculate rents based on the "reconstruction" method, *not* the default formula.  (*See* R.1242-46).

[18] In *Thornton*, the landlord "conspir[ed] with tenants, who shared in the illegal profits, by falsely agreeing the apartment was not being used as a primary

vacancy increase,[19] or an attempt to increase rent based on misrepresentations about a claimed renovation that did not in fact occur.[20]

In this case, the Appellate Division found that Appellants had "unilaterally registered rents from the base date forward that were not the rents actually paid" (and were instead "far higher"), and that it did so "without explanation." (R.1373). This, the Appellate Division found, amounted to "intentional misstatements of fact" that "constitute fraud." *Id.* Putting aside the question of whether the absence of an "explanation" could ever be enough to support a finding of fraudulent intent on a pre-deposition summary judgment record, the Appellate Division ignored the fact that when Appellants registered the apartments at issue it was not yet known that the legal rent should have been calculated based on the actual base date rent; instead, it was believed that the rent had to be "reconstructed." (*See supra* at 11-13). Appellants hired an expert to do that, and submitted an affidavit from him explaining how he did so. (*See* R.1196-1201). Appellants and their expert could certainly be cross-

_____

residence (and utilizing the courts as a tool to obtain false declarations to that effect)" – conduct this Court labelled "egregious" in *Regina. See Regina*, 35 N.Y.3d at 354.

[19] *See Conason v. Megan Holding LLC*, 25 N.Y.3d 1, 8-10 (2015); *accord Regina*, 35 N.Y.3d at 355.

[20] *See Conason*, 25 N.Y.3d at 9.

examined concerning their claim that they were trying in good faith (and in the absence of guidance from this Court or DHCR) to comply with what they believed the law required. But again, we respectfully submit that the current (pre-deposition) record does not contain enough evidence to support the conclusion that Respondents have proven by clear and convincing evidence that Appellants acted with fraudulent intent.

*****

If this Court endorses a "fraudulent overcharge" exception to the four-year rule without clarifying exactly how an overcharge that is "fraudulent" differs from one that is simply "willful," the exception will literally swallow the rule. We therefore urge the Court to provide such guidance, along the lines set forth above, if it endorses that exception.

## CONCLUSION

For the reasons detailed above and in Appellants' briefing, the Order should be reversed and the Court should clarify that there is no "fraudulent overcharge scheme" exception to the four-year rule. If the Court accepts such an exception, however, it should also (a) hold that application of the default formula based on a "fraudulent overcharge scheme" constitutes a penalty that cannot be sought in a class action; and (b) in all events, provide clear guidance as to what distinguishes an overcharge that is sufficiently "fraudulent" to

warrant application of the default formula from one that is simply "willful" (and

therefore only warrants a treble-damage penalty).

Dated:       New York, New York
             September 15, 2022

                              Respectfully submitted,
                              KATSKY KORINS LLP

                              By: _____
                                  Adrienne B. Koch
                                  Mark Walfish
                                  Benjamin Cohen
                              605 Third Avenue
                              New York, New York 10158
                              (212) 953-6000

                              *Attorneys for Amici Curiae The Rent
                              Stabilization Association of NYC, Inc.
                              and The Community Housing
                              Improvement Program, Inc.*

## <u>CERTIFICATION OF COMPLIANCE</u>

I, Adrienne B. Koch, a member of Katsky Korins LLP and counsel to the

*Amici Curiae*, do hereby certify pursuant to 22 NYCRR § 500.13(c)(1) that the

foregoing brief was prepared on a computer using Microsoft Word 2007.

*Type.* A proportionally spaced typeface was used, as follows:

Name of typeface: Times New Roman
Point size:        14
Line Spacing:      Double in text; single in footnotes, headings, and block
                   quotations

*Word Count.* The total number of words in this brief, inclusive of point

headings and footnotes and exclusive of pages containing the table of contents,

table of authorities, proof of service, certificate of compliance, corporate disclosure

statement, or any authorized addendum containing statutes, rules, regulations, etc.

is 6,541.

Dated:      New York, New York
            September 15, 2022

            _____
            ADRIENNE B. KOCH



COUNSEL PRESS

The Appellate Experts
10 EAST 40TH STREET, NEW YORK, NEW YORK 10016
(212) 685-9800; (716) 852-9800; (800) 4-APPEAL
www.counselpress.com
(316554)