| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK**<br><br>ANSELL GRIMM & AARON PC<br>BY: Joshua Bauchner, Esq.<br>Anthony J. D'Artiglio, Esq.<br>365 Rifle Camp Road<br>Woodland Park, NJ 07424<br>Attorneys for 939 First Avenue, LLC | **Hearing Date: January 5, 2023**<br>**Hearing Time: 2:00 p.m.** |
| In re:<br><br>EASTGATE WHITEHOUSE, LLC,<br><br>                                 Debtor. | In Proceedings Under Chapter 11<br>of the United States Bankruptcy Code<br><br>Case No. 22-22635(SHL) |

<br><br>

**MEMORANDUM OF LAW IN SUPPORT OF**
**CREDITOR/LANDLORD 939 FIRST AVENUE, LLC'S OPPOSITION TO DEBTOR**
**EASTGATE WHITEHOUSE, LLC'S MOTION FOR ENTRY OF AN ORDER,**
**PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE, APPROVING AND**
**AUTHORIZING ASSUMPTION OF AN UNEXPIRED LEASE BY AND BETWEEN**
**THE DEBTOR AND 939 FRIST AVENUE, LLC, OR, ALTERNATIVELY, FOR ENTRY**
**OF AN ORDER EXTENDING DEBTOR'S TIME TO ASSUME OR REJECT A LEASE**
**<u>OF NONRESIDENTIAL REAL PROPERTY</u>**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES……………………………………………………………   ii

PRELIMINARY STATEMENT…………………………………………………..   1

FACTS………………………………………………………………………………..   2

      I.     The Lease……………………………………………………………..   2

      II.    V.C. Drywall & Remodeling, LLC v. 939 First Avenue, et al
             – 161453/2018…………………………………………………...   4

      III.   The City of New York v. 939 First Avenue, LLC - 452998/2022……….   5

      IV.   Sidewalk Violation…………………………………………………   6

      V.    Kathryn Casey v. Whitehouse Estates, Inc. - 111723/11…………………   6

      VI.   Real Estate Taxes…………………………………………………   7

STANDARD OF REVIEW…………………………………………………………   7

      I.     Assumption Of Unexpired Lease…………………………………   7

      II.    Extension Of Time To Assume Or Reject Unexpired Lease……………..   8

LEGAL ARGUMENT……………………………………………………………   9

      I.     Debtor's Is In Default Under The Lease Precluding Assumption………..   9

      II.    Debtor's Should Not Be Afforded Additional Time To Assume Or
             Reject The Lease……………………………………………………   15

CONCLUSION………………………………………………………………...   16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Eastern Systems, Inc.*,
   105 B.R. 219 (Bankr. S.D.N.Y. 1989) ........................................................................................9

*In re Wedtech Corp.*,
   72 B.R. 464 (Bankr. S.D.N.Y. 1987) .........................................................................................8

**Statutes**

11 U.S.C. § 365(b)(1) .......................................................................................... 7-8, 15

11 U.S.C. § 365(d)(4)(B)(i) ..........................................................................................8

Penal Code Section 230.00 .........................................................................................5

Creditor/Landlord 939 First Avenue, LLC ("Landlord") respectfully submits this memorandum of law in opposition to Debtor Eastgate Whitehouse, LLC's ("Debtor") Motion to Approve and Authorize Assumption of an Unexpired Lease by and between Debtor and Landlord, or, alternatively, for an Order Extending Debtor's Time to Assume or Reject the Lease (the "Motion")

## PRELIMINARY STATEMENT

Debtor impetuously filed an application to assume its Lease with Landlord while falsely representing to the Court that it is not in default under the Lease. These outstanding *monetary* defaults -- liability for these defaults is deemed "Additional Rent" under the Lease -- preclude assumption as a matter of law compelling denial of the Motion.

As more fully set forth below, Debtor is in default under the Lease for at least five distinct reasons: (i) it allowed a mechanics lien against the Property and failed to discharge the lien; (ii) it allowed a subtenant permit a prostitution ring operate out of the Property; (iii) it failed to cure a sidewalk lien/violation at the Property; (iv) it is subject to extensive liability in a pending class action litigation for overcharging residential tenants for rent while receiving J-51 tax benefits; and (v) it failed to pay real estate taxes which remain due and owing. Not only do these constitute uncured defaults under the Lease, but most of them resulted in litigation with some of the defaults beginning at least a decade ago. Thus, Debtor's representation to the Court that there are no defaults permitting assumption is *patently false*.

Worse still, Debtor has not committed to curing these defaults prior to assumption, nor has Debtor provided any adequate assurances that it will promptly cure these defaults in exchange for assumption. Any such assurances would be illusory in any event because Debtor has had years to resolve most of these defaults but has not done what was necessary to comply with the Lease and protect Landlord, exposing Landlord to significant liability as a result of

1

Debtor's breaches and lack of diligence.  Because these defaults are all messes entirely of

Debtor's own making, and Debtor cannot reasonably cure these defaults either now or in the near

future, the Motion for assumption should be denied in its entirety.

<b><u>FACTS</u></b>

I.      <b><u>The Lease</u></b>.

On June 28, 1956, Landlord's predecessor-in-interest, and Debtor's predecessor-in-

interest, entered into a ground lease agreement (the "Lease"), since extended and assigned, for

the property located at 939-943 First Avenue a/k/a 4-350 East 52 Street, New York, New York

(the "Property").  *See* Declaration of Reena Malhotra ("Malhotra Decl."), **Exhibit A**.

Section 9 of the Lease states that:

> The Tenant shall promptly comply with all requirements of laws and ordinances
> now or hereafter in effect, and with all requirements of the constituted public
> authorities...and save landlord harmless and indemnify landlord from and against
> all penalties, fines, damages or costs resulting from failure to do so.  The tenant
> shall have the right, at its own cost and expense, to contest or review by legal
> proceedings the validity or legality of any such requirement and during such
> contest, the tenant may refrain from complying therewith provided that the tenant
> shall first furnish to the landlord a bond, in the form and amount and issued by a
> company satisfactory to the landlord, indemnifying the landlord against the cost
> of such compliance and against all liability for any damages, interest, penalties
> and expense (including reasonable fees of attorneys or counsel) resulting from or
> incurred in connection with such contest or non-compliance…

*See* Malhotra Decl. **Exhibit A** § 9.

Section 17 of the Lease states that:

> Notice is hereby given that the landlord shall not be liable for any labor or
> materials furnished or to be furnished to the tenant upon credit, and that no
> mechanic's or other lien for any such labor or material shall attach to or effect, the
> reversionary or other estate or interest of the landlord in and to the demised
> premises.  Whenever and as often as any mechanic's liens shall be filed against
> the premises, based upon any. act or interest of the tenant or of anyone claiming
> through the tenant, the tenant shall forthwith take such action by bonding, deposit
> or payment as will remove or satisfy the lien, and in default thereof for thirty (30)
> days after notice to the tenant, the landlord may, but shall not ,be obligated to do
> so, pay the amount of every such mechanic's ' lien, or discharge the same by

2

deposit, and the amount so paid or deposited, with interest thereon, shall be deemed additional rent reserved under this lease, and shall be payable forthwith with interest at the rate of six percent per annum from the date of such advance, and with the same remedies to the landlord as in case of default in the payment of rent.

*See* Malhotra Decl. **Exhibit A** § 17.  Section 30 of the Lease states that

[a]ll notes or notices of violation of law or municipal ordinances, orders or requirements noted in or issued by the Department of Housing and Building, Fire, Labor, Health or other State or Municipal Departments having jurisdiction, against or affecting the premises will be caused to be removed by the tenant within a reasonable time at its own cost and expense.

*See* Malhotra Decl,, **Exhibit A** § 30.  Section 38 of the Lease states that:

Tenant shall not use or occupy, nor permit or suffer the demised premises or any part thereof to be used or occupied for any unlawful or illegal business, use or purpose…[and t]enant shall indemnify and save harmless landlord against and from all costs, expenses liabilities, losses, damages, injunctions, suits, fines, penalties, claims and demands, including reasonable counsel fees, arising out of or by reason of or on account of any violation of or default in the covenants of this article.

*See* Malhotra Decl., **Exhibit A** § 38.

Debtor is indisputably in breach of each and every one of these provisions.  The Lease further provides that the costs arising from these defaults constitutes "Additional Rent" under the Lease placing Debtor in monetary default:

All taxes, costs, expenses, which tenant assume or agrees to pay hereunder and all payments on mortgages, both interest and principal, which tenant is obligated to pay, as hereinafter provided, shall be treated as additional rent, and in the event of non-payment landlord shall have all rights and remedies herein provided for in the case of non-payment of rent or of a breach of condition.

*See* Malhotra Decl., **Exhibit A** § 4.  Additionally, Section 7(a) of the Lease requires Debtor to "as additional rent, pay and discharge punctually as and when the same shall become due and payable without penalty, all taxes….which shall or may during the term be charged…upon or for the demised premises or any part thereof…"  *See* **Exhibit A** § 7(a).

3

II.    <u>**V.C. Drywall & Remodeling, LLC v. 939 First Avenue, et al. – 161453/2018.**</u>

More than ***four years ago***, on August 20, 2018, V.C. Drywall & Remodeling, LLC ("V.C. Drywall") filed a mechanics lien against the Property in the amount of $77,300.00, plus interest.  *See* Malhotra Decl., **Exhibit B**, Exhibit A.  On December 6, 2018, V.C. Drywall filed a Complaint against Landlord and Debtor (the "V.C. Drywall Litigation") seeking, among other things, to foreclose upon the mechanics lien, extinguish Landlord's ownership interest in the Property, and sell the Property to satisfy the mechanic's lien.  *See* Malhotra Decl. **Exhibit B**.

In the more than four years since the mechanics lien was placed on the Property, Debtor has taken no action whatsoever to discharge or satisfy the mechanics lien.  *See* Malhotra Decl. ¶ 10.  Debtor initially undertook efforts to defend and indemnify Landlord in the V.C. Drywall litigation, retaining Christopher Alvarado, Esq. ("Alvardo") to defend itself and Landlord.  *See* Malhotra Decl. ¶ 11.  However, Alvarado failed to advise Landlord that, pursuant to an Order dated March 17, 2022, Landlord was required to appear for a deposition on April 14, 2022.  *See* Malhotra Decl. **Exhibit C** and ¶ 12.  Landlord has no record of Alvarado contacting or attempting to contact anyone at Landlord's offices to schedule a deposition.  *See* Malhotra Decl. ¶ 13.  Landlord also has no record of Alvarado providing any Orders requiring their deposition to anyone at Landlord's offices.  *See* Malhotra Decl. ¶ 14.

On November 30, 2022, V.C. Drywall filed a Motion for Default Judgment against Landlord.  *See* Malhotra Decl., **Exhibit D**.  In light of the failures of Debtor's hand-picked counsel to properly protect Landlord's rights, Landlord retained new counsel to defend it in the V.C. Drywall Litigation and respond to the Motion for Default Judgment.  *See* Malhotra Decl. ¶ 16.  Landlord currently is incurring attorneys' fees and costs to defend itself in the V.C. Drywall Litigation, all of which are payable by Debtor pursuant to the Lease as "Additional

Rent." *See* Malhotra Decl. ¶ 17. Landlord also anticipates filing a Motion to Extend the Automatic Stay in this Bankruptcy to stay the V.C. Drywall Litigation against Landlord, which necessarily will cause Landlord to incur additional attorneys' fees and costs which are payable by Debtor. *See* Malhotra Decl. ¶ 18. Furthermore, if a judgment is entered again Landlord, Debtor will be responsible under the Lease for the full cost of any judgment. *See* Malhotra Decl. ¶ 19. These obligations constitute indisputable defaults under the Lease.

**III.    <u>The City of New York v. 939 First Avenue, LLC - 452998/2022</u>.**

On November 23, 2022, the City of New York filed a Complaint against Landlord (the "City of New York Litigation") asserting that one of Debtor's tenants at the Property violated Section 230.00 of the Penal Code by permitting prostitution to occur at the Property. *See* Malhotra Decl., **Exhibit E**. The City of New York Litigation Complaint seeks relief against the Property and Landlord including (i) a permanent injunction regulating the use of the Property, (ii) removing all materials and equipment from the offending portion of the Property, (iii) closing the offending portion of the Property for one (1) year against all use, (iv) statutory civil penalties of a $1,000.00 per day for each day that the offending conduct occurred at the Property, and (v) costs, expenses, and disbursements incurred by plaintiff. *See* Malhotra Decl., **Exhibit E**.

Landlord will need to engage counsel to defend itself in the City of New York Litigation, incurring attorneys' fees and costs, all of which are payable by Debtor pursuant to the Lease as "Additional Rent." *See* Malhotra Decl. ¶ 22. Furthermore, if a judgment is entered again Landlord, Debtor will be responsible under the Lease for the full cost of any judgment, in addition to removing any restrictions on the use of the Property. *See* Malhotra Decl. ¶ 23.

**IV.**   <u>**Sidewalk Violation.**</u>

On October 27, 2015, the New York Department of Transportation issued a sidewalk violation/lien against the Property and Landlord.  *See* Malhotra Decl., **Exhibit F**.  On April 23, 2018, Landlord issued a 30-day notice to cure to remove the sidewalk violation and lien.  *See* Malhotra Decl., **Exhibit G**.  Rather than cure the violation, Debtor file an application for a Yellowstone injunction, instituting litigation over the sidewalk violation captioned *Eastgate Whitehouse, LLC v. 939 First Avenue, LLC*, Index No.:  154744/2018 (the "Sidewalk Litigation").  *See* Malhotra Decl. ¶ 26.  The Court stayed Landlord from enforcing the default against Debtor and afforded Debtor additional time to cure the sidewalk violation and remove the lien.  *See* Malhotra Decl. ¶ 27.

Notwithstanding the above, more than ***four and a half years*** after receiving the 30-day notice to cure, and more than seven years after the sidewalk violation/lien was issued, Debtor has not cured the sidewalk violation or removed the lien from the Property.  *See* Malhotra Decl. ¶ 28. Debtor is required under the Lease to remove the lien and cure the sidewalk violation.  *See* Malhotra Decl. ¶ 29.  Debtor is required to indemnify and defend Landlord for any damages resulting from the sidewalk violation or lien.  *See* Malhotra Decl. ¶ 30.  Debtor's failures constitute non-monetary and monetary defaults under the Lease.

**V.**   <u>**Kathryn Casey v. Whitehouse Estates, Inc. - 111723/11**</u>.

On January 18, 2012, Kathryn Casey filed a Complaint against Debtor's predecessor-in-interest (the "Casey Litigation") asserting class action claims alleging that Debtor received J-51 tax benefits preventing them from excluding apartments from rent regulations once the rents reach certain levels, yet Debtor overcharged the tenants for rent in violation of the law.  *See* Malhotra Decl., **Exhibit H**.  Plaintiffs seek ***at least*** $24 million in the Casey Litigation, with that

amount likely to increase since plaintiffs filed their overcharging and interest calculation in July 2020. *See* Malhotra Decl., **Exhibit I**. On March 28, 2017, the Court entered an Order granting plaintiffs' motion for partial summary judgment, holding that the apartments at the Property are subject to either Rent Stabilization or Rent Control, and requiring Debtor to offer renewal leases with legally compliant maximum rents or to continue tenancies with legally compliant maximum rents. *See* Malhotra Decl., **Exhibit J**.

The Casey Litigation is currently stayed, other than a carve-out for a pending appeal, but not yet resolved, as a result of this Bankruptcy. *See* Malhotra Decl. ¶ 35. Debtor is required under the Lease to cure any violations of the law. *See* Malhotra Decl. ¶ 36. To the extent that Landlord could be liable for any of the claims in the Casey Litigation, Debtor would be required to defend and indemnify Landlord for any attorneys' fees, costs, or damages suffered by Landlord as a result of that litigation, again reflecting both non-monetary and monetary defaults under the Lease. *See* Malhotra Decl. ¶ 37.

## VI.     Real Estate Taxes.

On January 1, 2023, real estate taxes in the amount of $835,668.11 came due and owing for the Property. *See* Malhotra Decl., **Exhibit K**. As of this date, Tenant has failed to pay $835,668.11 in real estate taxes due and owing for the Property, which constitutes a monetary default as Additional Rent under the Lease. *See* Malhotra Decl., **Exhibit K**.

<strong><u>STANDARD OF REVIEW</u></strong>

## I.     Assumption Of Unexpired Lease.

11 U.S.C. § 365(b)(1) states that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

7

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

## II.   Extension Of Time To Assume Or Reject Unexpired Lease.

11 U.S.C. § 365(d)(4)(B)(i) states the court may extend the time period for a debtor to assume or reject a lease "prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause." Courts should consider factors when determining whether to grant an extension including (i) whether "the debtor has not had the time necessary to intelligently…appraise its financial situation and the potential value of its assets in terms of the formulation of a plan…," (ii) "damage to the lessor beyond the compensation available under the Bankruptcy Code through the debtor's continued occupation of the land," (iii) if "the debtor fails or is unable to formulate a plan when it has had more than enough time to do so," (iv) whether "the case is exceptionally complex and involves large numbers of leases," and (v) whether a lease exists in the first instance. *See In re Wedtech Corp.*, 72 B.R. 464, 471-72 (Bankr. S.D.N.Y. 1987).

8

**LEGAL ARGUMENT**

I.    **Debtor's Is In Default Under The Lease Precluding Assumption.**

Debtor falsely states that it is not in "monetary" default under the Lease notwithstanding that Debtor is indisputably in both monetary and non-monetary default of the Lease.[1]  For the reasons set forth below, Debtor's failure to either cure the below described defaults or provide adequate assurance of any prompt cure precludes the assumption of the Lease.

First, Debtor is in default for permitting a mechanics lien to be placed on the Property and for not removing the lien from the Property.  Pursuant to Section 17 of the Lease, no mechanics lien may attach to the Property, and, if one does attach, Debtor is required to "forthwith take such action by bonding, deposit or payment as will remove or satisfy the lien." *See* Malhotra Decl., **Exhibit A** § 17.  Notwithstanding the above, Debtor allowed a lien to be placed on the Property more than four years ago and has since taken no action whatsoever to discharge the lien.[2]  *See* Malhotra Decl., **Exhibit B**, Exhibit A and ¶ 10.  Debtor is required to cure this default prior to any assumption of the Lease.

Additionally, Debtor is in default under the Lease for failing to properly defend and indemnify Landlord in the V.C. Drywall Litigation.  Debtor's appointed counsel, failed to advise that Landlord was required to appear for a deposition pursuant to a Court Order and failed to provide Landlord a copy of that Order.  Landlord is now defending a Motion for Default

---

[1]    To the extent Debtor alleges that Landlord did not provide notice of these defaults prior to Bankruptcy, Landlord notes that the Lease contains a "no waiver" provision which must be enforced, thus indisputably permitting Landlord to now insist on cure.  *See* Malhotra Decl. **Exhibit A** § 20; *see also In re Eastern Systems, Inc.*, 105 B.R. 219, 232 (Bankr. S.D.N.Y. 1989) (holding that "[c]ourts have uniformly deferred to the parties' intent, as expressed by non-waiver clauses in leases, and have enforced those clauses to preclude finding of waiver of conditions precedent by a landlord's acceptance of rent" while citing numerous cases for that proposition).

[2]    Debtor presumably will argue it disputes the amounts charged by V.C. Drywall in the V.C. Drywall Litigation.  Notably, this does not obviate Debtor's obligation to discharge the lien through a bond or deposit while disputing the amounts alleged to be due.

Judgment filed V.C. Drywall resulting entirely from Debtor's failure to properly defend and indemnify Landlord.  *See* Malhotra Decl. **Exhibits C-D** and ¶¶ 12-14.

As a result, Landlord had no choice but to retain new outside counsel to defend it in the V.C. Drywall Litigation, incurring attorneys' fees and costs.  *See* Malhotra Decl. ¶¶ 17-18. Additionally, Landlord could now be subject to a significant judgment as a result of the insufficient defense which Debtor would be required to satisfy as part of its indemnification obligation.  *See* Malhotra Decl. ¶ 19.  Debtor is required to cure these defaults prior to any assumption of the Lease.[3]

Finally, Landlord is suffering an ongoing pecuniary loss, including attorneys' fees and costs for independent outside counsel, directly resulting from Debtor's failure to satisfy the lien and to properly discharge its defense and indemnification obligations.  Debtor is required to compensate Landlord these actual pecuniary losses, which continue to grow by the day, prior to the assumption of any Lease.[4]

Second, Debtor is in default for permitting one of its tenants to violate the law by allowing a prostitution ring to operate out of the Property.  Pursuant to Section 9 of the Lease, Debtor was required to "promptly comply with all requirements of laws" at the Property, and to "save landlord harmless and indemnify landlord from and against all penalties fines, damages or costs resulting from failure to do so."  *See* Malhotra Decl., **Exhibit A** § 9.  Similarly, Section 38 of the Lease prohibits Debtor from permitting the Property to be used or occupied for any "unlawful or illegal business, use or purpose" while also requiring Debtor to "indemnify and save harmless landlord" as to any claims arising out of any unlawful or illegal use.  *See* Malhotra

---

[3]    Notably, any payments due under the Lease, inclusive of all indemnification obligations, constitute Additional Rent under the terms of the Lease.  *See* Malhotra Decl., **Exhibit A** § 4.

[4]    Because the pecuniary losses are ongoing, Landlord can provide an exact calculation of the pecuniary losses upon request on a fixed date prior to any assumption.

Decl., **Exhibit A** § 38.

Notwithstanding the above, Debtor permitted one if its tenants to operate brothel at the Property in violation of the Penal Code.  *See* Malhotra Decl., **Exhibit E**.  The City of New York thereafter instituted litigation against Landlord seeking, among other things:  (i) a permanent injunction regulating the use of the Property, (ii) removal all materials and equipment from the offending portion of the Property, (iii) closing the offending portion of the Property for one (1) year against all use, (iv) statutory civil penalties of a $1,000.00 per day for each day that the offending conduct occurred at the Property, and (v) costs, expenses, and disbursements incurred by plaintiff.  *See* Malhotra Decl., **Exhibit E**.  Landlord is currently in the process of securing counsel to defend itself in the City of New York Litigation and faces the prospect of a judgment against it resulting from Debtor's conduct.  *See* Malhotra Decl. ¶¶ 22-23.

Debtor's failure to ensure that no illegal activity takes place at the Property is another default which must be cured prior to any assumption.  The City of New York Litigation which is ongoing, and the relief sought therein restricting the use of the of the Property are defaults which must be cured prior to assumption, including removal of any restrictions on the use of the Property.  Debtor's failure to defend and indemnify Landlord is a default which must be cured prior to assumption.  Additionally, any pecuniary loss suffered by Landlord, including its reasonable attorneys' fees and costs incurred defending itself in the City of New York Litigation and any judgment entered against it in that litigation which remains pending, all must be resolved prior to any assumption.

Third, Debtor is in default for failing to cure a sidewalk violation at the Property and permitting a sidewalk lien to attach to the Property.  Pursuant to Section 9 of the Lease, Debtor was required to "promptly comply with all requirements of laws" at the Property, and to "save

landlord harmless and indemnify landlord from and against all penalties fines, damages or costs resulting from failure to do so." *See* Malhotra Decl., **Exhibit A** § 9.  Similarly, Section 30 of the Lease requires Debtor to remove all notices of violation issued by a government entity "within a reasonable time at its own cost and expense."  *See* Malhotra Decl,, **Exhibit A** § 30. Notwithstanding the above, Debtor permitted a sidewalk violation/lien to attach to the Property on October 27, 2015, and has not yet cured the violation or discharged the lien more than ***seven years*** after issuance, notwithstanding Landlord demanding cure four and a half years ago.  *See* Malhotra Decl., **Exhibits F-G** and ¶¶ 26-29.  Debtor is required to cure this default prior to assumption.  Additionally, because Debtor is required to indemnify and defend Landlord for any damages resulting from the sidewalk violation or lien, , any pecuniary loss suffered by Landlord as a result of the sidewalk violation or lien must also be cured by Debtor prior to assuming the Lease.  *See* Malhotra Decl. ¶ 30.

Fourth, Debtor is in default for overcharging its subtenants at the Property in violation of rent control laws.  Pursuant to Section 9 of the Lease, Debtor was required to "promptly comply with all requirements of laws" at the Property, and to "save landlord harmless and indemnify landlord from and against all penalties fines, damages or costs resulting from failure to do so." *See* Malhotra Decl., **Exhibit A** § 9.  Debtor received J-51 tax benefits requiring it to comply with Rent Control and Rent Stabilization laws for residential tenancies at the Property yet, in violation of the law, Debtor overcharged its residential tenants at the Property.  *See* Malhotra Decl., **Exhibit H**.  The Court in the Casey Litigation already found that Debtor is required to comply with Rent Control and Stabilization laws, with the plaintiffs now seeking more than $24 million dollars as a result of Debtor's violation of the law.  *See* Malhotra Decl. **Exhibits I-J**.  Debtor also must cure this default prior to assuming the Lease.

12

Furthermore, because the Casey litigation remains pending, it is unclear if plaintiffs will seek to hold Landlord liable for any portion of Debtor's misconduct. If so, Debtor would be required to defend and indemnify Landlord for any damages it suffers as a result of the claims in the Casey Litigation. Therefore, Debtor also is required to compensate Landlord for any pecuniary damages suffered as a result of the Casey Litigation and the claims asserted therein.

Fifth, Debtor is in default for failing to pay real estate taxes which remain due and owing. Pursuant to Section 7(a) of the Lease, Debtor is required to pay real estate taxes as soon as they become due. *See* Malhotra Decl., **Exhibit A** § 7(a). Notwithstanding this requirement, Debtor has not paid $835,668.11 in real estate taxes which were due on January 1, 2023. *See* Malhotra Decl., **Exhibit K**. Therefore, Debtor is either required to pay those real estate tax amounts or, to the extent that Landlord is forced to pay the real estate taxes to prevent adverse consequences to the Property, Debtor is required to compensate Landlord for the full amount of the payment and any other pecuniary losses suffered by Landlord as a result of Debtor's monetary default.

Sixth, not only has Debtor failed to cure any of the above-described defaults as of the date of this Motion -- and does not commit to curing any of these defaults as a pre-condition to Lease assumption -- but Debtor cannot provide adequate assurance that it can or will "promptly" cure any of these defaults if the Lease is assumed. Instead, Debtor merely states that it "reserves all of its rights" regarding non-monetary defaults (whatever that means) and that whether cure is "prompt" is examined by the Court on a case-by-case basis. Even if Debtor could argue that it will "promptly" cure the defaults after Lease assumption, Debtor does not provide any plan for how or when the defaults will be cured, nor does it provide any adequate assurance that the defaults will be cured. Therefore, Debtor cannot meet the standard for lease assumption with adequate assurance of prompt cure in the absence of any details whatsoever as to how and when

it will cure.

Seventh, Debtor cannot provide adequate assurance that it will be able to perform under the Lease in the future.  Debtor has shown itself to be a poor steward of the Property, permitting a mechanic's lien to attach without clearing it, permitting a sidewalk violation/lien to issue without clearing it, permitting a subtenant to operate a brothel, unlawfully overcharging residential subtenants millions of dollars in violation of Rent Control and Stabilization laws while pocketing tax savings it otherwise was not entitled to, and failing to timely pay real estate taxes due and owing.  These actions clearly evidence that Debtor cannot provide adequate assurances that it will comply with the Lease prospectively.

Additionally, Debtor concedes that it cannot continue at the Property unless it sells its Lease interest, a dubious proposition in light of the numerous defaults extant at the Property, and particularly the possibility that a successor entity will be forced to defend a potential eight figure liability immediately upon taking possession of the Property.  Because any purported sale and assignment is purely theoretical, and unlikely to occur in light of the same defaults described herein which render the Lease unmarketable, Debtor cannot establish any reasonable likelihood of future performance, further confirming that Debtor cannot be permitted to assume the Lease.

Finally, on December 31, 2022, Landlord requested that Debtor furnish additional information regarding four of the noted defaults to permit Landlord to better assess both the scope of the default and any reasonable opportunity to cure.  This information includes:  (i) all documents related to Debtor's defenses for the payment of the lien amount claimed by V.C. Drywall, (ii) details regarding any negotiations between Debtor (or its representatives) and the City of New York regarding the City of New York Litigation, (iii) the lease with the offending tenant, (iv) details, including terms, of any settlement reached with the City of New York, (v) all

14

documents demonstrating Debtor's efforts to remove the sidewalk violation, (vi) the briefing for the pending appeal in the Casey Litigation, (vii) leases, including amendments and renewals, with the affected tenants, and (viii) details regarding the extent of J-51 tax benefits received by Debtor. *See* Declaration of Anthony J. D'Artiglio, Esq., **Exhibit A**. Because Debtor has not yet provided a response, both Landlord and the Court lack sufficient information to properly determine the likelihood of cure further confirming that assumption is unwarranted.

***

For the reasons set forth above, Debtor has not and cannot cure numerous, monetary and non-monetary defaults under the lease, confirming that Debtor cannot satisfy 11 U.S.C. § 365(b)(1) foreclosing its assumption of the Lease as a matter of law

## II.    <u>Debtor's Should Not Be Afforded Additional Time To Assume Or Reject The Lease</u>.

If the Court does not deny Debtor's Motion for the reason set forth above, the Court should deny Debtor's application to extend the time for it to assume or reject the Lease because good cause does not exist for an extension.

<u>First</u>, three of the above-described defaults have been ongoing for years -- more than a decade, more than seven years, and more than four years -- rendering it absurd to suggest that if Debtor is afforded merely 90 days it could concoct a plan to resolve all of these defects which it could not cure in the years predating Bankruptcy.

<u>Second</u>, Debtor does not need any additional time to intelligently appraise its financial situation and the value of its assets, having already conceded that it would prefer to assume the Lease, but that it is merely unable to do so because it cannot cure the defaults. It is not a matter of deliberation but ability to assume.

15

Third, and similarly, there are not a large number of leases at issue in this case, but only one ground lease for a single location.

Fourth, and again, similarly, there is no dispute as to whether a lease exists in the first instance necessitating additional time.

Finally, Landlord currently is suffering damage as a result of Debtor's continued occupation of the Property and the failure to cure its defects, with those losses expected to increase as time continues, particularly if Debtor is unable to satisfy its defense and indemnification obligations to Landlord.  Therefore, the Court should not afford Debtor additional time to attempt to find a miracle cure to its numerous defaults under the Lease and instead deny this Motion in its entirety rendering the Lease rejected by operation of law.

## CONCLUSION

For the foregoing reasons, Landlord respectfully requests that the Court Deny Debtor's Motion in its entirety, declare the Lease rejected as of the hearing date, and grant such other, further, and additional relief as the Court deems just and proper.

Dated: Woodland Park, New Jersey
     January 3, 2023

ANSELL GRIMM & AARON, P.C.

s/ Anthony J. D'Artiglio
Joshua S. Bauchner, Esq.
Anthony J. D'Artiglio, Esq.
365 Rifle Camp Road
Woodland Park, New Jersey 07424
Tel: (973) 247-9000
Fax: (973) 247-9199