| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK**<br><br>ANSELL GRIMM & AARON PC<br>BY: Joshua Bauchner, Esq.<br>Anthony J. D'Artiglio, Esq.<br>365 Rifle Camp Road<br>Woodland Park, NJ 07424<br>Attorneys for 939 First Avenue, LLC | Hearing Date: March 15, 2023<br>Hearing Time: 3:00 p.m. |
| In re:<br><br>EASTGATE WHITEHOUSE, LLC,<br><br>        Debtor. | In Proceedings Under Chapter 11<br>of the United States Bankruptcy Code<br><br>Case No. 22-22635(SHL) |

**MEMORANDUM OF LAW IN OPPOSITION TO SECURED LENDER BARCLAY BANK PLC'S MOTION TO DISMISS AND SUPPLEMENTAL MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES…………………………………………………………… ii

PRELIMINARY STATEMENT…………………………………………………….. 1

FACTS…………………………………………………………………………….. 3

LEGAL ARGUMENT…………………………………………………………….. 3

    I.    Debtor Had Authority To File This Bankruptcy…………………………... 3

    II.    The Case Should Not Be Dismissed Pursuant To 11 U.S.C. § 1112(b)…… 5

        A.  There Is Not Good Cause For Dismissal Under 11 U.S.C. § 1112(b)….6

        B.  The Secured Lender Would Benefit From Dismissal…………………..8

    III.    The Secured Lender's Motion To Dismiss Is Made In Bad Faith………….9

    IV.    Laches Prohibits Dismissal………………………………………………10

CONCLUSION……………………………………………………………………..12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*520 East 81st Street Associates v. Lenox Hill Hospital*,
  74 Misc. 2d 438 (N.Y. Civ. Ct. 1973)..................................................................................9

*In re AMC Realty Corp.*,
  270 B.R. 132 (Bankr. S.D.N.Y. 2001).................................................................................7

*In re Franchise Servs. Of N. Am. V. united States Trs.*,
  891 F.3d 198 (5th Cir. 2018) ...............................................................................................4

*In re Halpern*,
  229 B.R. 67 (Bankr. E.D.N.Y. 1999)...................................................................................6

*In re Herrera*,
  554 B.R. 262 (Bankr. D.N.M. 2016) ............................................................................. 9-10

*In re Hinchcliffe,*
  164 B.R. 45 (Bankr. E.D. Pa. 1994) ....................................................................................7

*In re Insight Terminal Sols., LLC*,
  2019 Bankr. LEXIS 2949 (W.D. Ky. Sept. 23, 2019) .........................................................4

*In re Intervention Energy Holdings, LLC*,
  553 B.R. 258 (Bankr. D. Del. 2016) ....................................................................................4

*In re Lexington Hosp. Grp., LLC*,
  577 B.R. 676 (Bankr. E.D. Ky. 2017).............................................................................. 4-5

*Lippman v. Big Six Towers, Inc.*,
  2021 U.S. Dist. LEXIS 86266 (E.D.N.Y. May 5, 2021) .....................................................6

*In re O'Brien*,
  328 B.R. 669 (Bankr. W.D.N.Y. 2005) ...............................................................................3

*In re Orchard at Hansen Park, LLC*,
  347 B.R. 822 (Bankr. N.D. Tx. July 7, 2006).................................................................4, 6

*In re Pasta Bar by Scotto II, LLC,*
  2015 Bankr. LEXIS 3941 (Bankr. S.D.N.Y. Nov. 19, 2015) ..............................................4

*In re Rock 49th Rest. Corp.,*
  2010 Bankr. LEXIS 1223 (Bankr. S.D.N.Y. April 7, 2010)................................................8

*Ross v. Tognetti (In re Tognetti)*,
   2006 Bankr. LEXIS 2216 (Bankr. S.D.N.Y. Jun. 21, 2006) ...................................................... 10

*In re Shea & Gould*,
   214 B.R. 739 (Bankr. S.D.N.Y. 1997) ....................................................................................... 11

*SubCulture, LLC v. Rogers Invs. (In re Culture Project)*,
   571 B.R. 555 (Bankr. S.D.N.Y. 2017) ......................................................................................... 9

**Statutes**

11 U.S.C. § 1112(b) ............................................................................................................... 5-6

Creditor/Landlord 939 First Avenue, LLC ("Landlord") respectfully submits this memorandum of law in opposition to Secured Lender Barclays Bank PLC (the "Secured Lender") Motion to Dismiss (the "Motion") and Supplemental Motion to Dismiss (the "Supplemental Motion").

## **PRELIMINARY STATEMENT**

The Secured Lender improperly filed the Supplemental Motion to Dismiss hoping to game the Bankruptcy process by ensuring that it gets the result it wants regardless of how the Court rules on the pending Motion to Approve and Authorize Assumption of an Unexpired Lease by and between Debtor Eastgate Whitehouse, LLC ("Debtor") and Landlord (the "Motion to Assume"). Specifically, the Secured requests that this Court first decide the Motion to Assume and, if it is inclined to deny it, "pause" the rejection and, instead, adjudicate the Motion and Supplemental Motion, hopefully dismissing the case before the Lease can be rejected. This patent gamesmanship seeks to misuse the Bankruptcy process by allowing the Secured Lender to receive an improper advisory opinion on the Motion to Assume and then seek dismissal if it does not like that opinion. This process is incredibly prejudicial to Landlord and the Court should not countenance this improper conduct.

First, the Motion should be denied because Debtor had authority to file the Bankruptcy Petition. The Secured Lender's attempt to obtain a "veto" over any Bankruptcy filed by the Debtor through the appointment of an "Independent Manager" who must consent to any Bankruptcy filing is contrary to public policy prohibiting restraints on a person or entity's ability to secure Bankruptcy protection.

Second, the Supplemental Motion should be denied because good cause does not exist for dismissal. The Secured Lender's entire Supplemental Motion is predicated on the idea that *if* the Court denies the Motion to Assume *then* there would be insufficient assets for a successful

1

reorganization. However, this premise is logically flawed because the Secured Lender seeks a temporally impossible result -- requesting the Court dismiss the case *before* the estate is divested of the assets allegedly necessary to the reorganization. Therefore, good cause could not exist for dismissal *before* adjudication of the Motion to Assume because the estate only could allegedly lack assets for a successful reorganization *after* the Court enters an order rejecting the Lease. This temporal paradox alone defeats the motion.

Third, dismissal only would be in the best interest of one creditor, the Secured Lender. The Secured Lender impermissibly seeks to have this Court prefer it over Landlord and other creditors, asserting that the Court should dismiss the case for the Secured Lender's sole benefit so it can foreclose on the ground Lease to detriment of Landlord and other creditors.

Fourth, the Secured Lender's Supplemental Motion was made for an improper purpose to manipulate the Court system. This "heads I win, tails you lose" approach is not permitted under the Bankruptcy Code and seeks to twist the process to ensure that unless the Secured Lender gets everything it wants, the whole Bankruptcy will be dismissed notwithstanding the months spent litigating these disputes before this Court.

Fifth, in the alternative, the Supplemental Motion should be denied because laches precludes the Secured Lender's belated application. This eleventh hour attempt to dismiss the entire Bankruptcy is plainly too late, after all parties have spent months adjudicating the Motion to Assume, with Landlord clearly prejudiced by having participated in the process in good faith only for the Secured Lender to seek to undo all that work days before the Motion to Assume hearing.

Thus, because Bankruptcy Courts are Courts of equity, and the Secured Lenders are not engaging in equitable conduct, the Motion and Supplemental Motion should be denied. *See In re O'Brien*, 328 B.R. 669, 674 (Bankr. W.D.N.Y. 2005).

## FACTS

For purposes of this opposition, and because the Court is fully familiar with the history of this matter, Landlord will not provide a competing factual or procedural history, but does Landlord concede that Secured Lender's history is correct.[1]

## LEGAL ARGUMENT

I. **Had Authority To File This Bankruptcy.**

Contrary to the Secured Lender's assertion, Debtor had authority to file this Bankruptcy because any assertion that the Independent Manager for Debtor -- whose appointment was required by the Secured Lender -- needed to consent to the Bankruptcy filing is precluded as a matter of public policy.

As the Secured Lender **concedes** in its Motion to Dismiss, the alleged requirement that the Independent Manager consent to Bankruptcy is set forth in Section 2.07 of Debtor's Amended and Restated Limited Liability Company Agreement (the "LLC Agreement"). *See* D.E. 50, **Exhibit 1** § 2.07. That Section explicitly prohibits certain actions so long as the loan with the Secured Lender remains outstanding, which includes filing for Bankruptcy without the Independent Manager's approval. *See id.* That same section, which explicitly was included in the LLC Agreement only to the extent the Loan with the Secured Lender remains outstanding,

---

[1]    As set forth in Landlord's opposition to the Secured Lender's supplemental brief in support of the Motion to Assume, it is Landlord's position that the deadline to assume or reject the Lease expired on December 27, 2022, at the latest, and that any extension of the time to assume the Lease is statutorily limited to 90 days. Landlord reserves the right to continue to assert that the Lease has been rejected as matter of law and that Debtor will be out of time to assume or reject the Lease.

3

governs the appointment of the Independent Manager, who is required to be independent of the Debtor but not the Secured Lender. *See id.* § 2.07(g). The LLC Agreement does not appear to vest any other responsibilities in the Independent Manager beyond her sign off on any action requiring the vote of 100% of managers, which includes filing for Bankruptcy. *See id.*

In light of the above, it is clear that the Independent Manager is nothing more than a creative attempt to provide the Secured Lender with a "veto" over any Bankruptcy filing by Debtor. This restriction is routinely prohibited by Bankruptcy Courts.[2] *See, e.g.*, *In re Intervention Energy Holdings, LLC*, 553 B.R. 258, 263 (Bankr. D. Del. 2016) (holding that pre-petition agreements which waive or otherwise interference with a party's rights to file for Bankruptcy are unenforceable as against public policy); *see also In re Lexington Hosp. Grp., LLC*, 577 B.R. 676, 683 (Bankr. E.D. Ky. 2017) ("Based on this public policy consideration, courts have held that contractual provisions in operating agreements that essentially prohibit a company's ability to file bankruptcy without a creditor's consent are void.").[3]

---

[2] Although the Secured Lender correctly notes that interpretation of governing documents is a matter of State law, whether a restriction on a Bankruptcy filing comports with public policy is a question of federal law. *See In re Insight Terminal Sols., LLC*, 2019 Bankr. LEXIS 2949, *8 (W.D. Ky. Sept. 23, 2019) ("The enforceability of bankruptcy restrictions based on public policy, such as the one at issue here, is a question of federal law.").

[3] The cases cited by the Secured Lender to support its position that the Independent Manager does not violate public policy are inapposite. In *Franchise Servs. of N. Am. v. United States Trs. (In re Franchise Servs. of N. Am.)*, the Court found a preferred shareholder after a "substantial equity investment" could maintain a veto right to a bankruptcy filing notwithstanding that it was also a creditor. *See* 891 F.3d 198, 207-08 (5th Cir. 2018). The uncontroversial position that equity owners of a company can require unanimity for a bankruptcy filing is much different than what is present here; namely, a Secured Lender with no equity interest unilaterally appointing an Independent Manager who can veto a bankruptcy filing. In *In re Pasta Bar by Scotto II, LLC*, the Court held that an operating agreement which required 75% of member approval to file bankruptcy would be enforced when one member of the 50-50 owned debtor did not approve the bankruptcy. *See* 2015 Bankr. LEXIS 3941 (Bankr. S.D.N.Y. Nov. 19, 2015); *see also In re Orchard at Hansen Park, LLC*, 347 B.R. 822 (Bankr. N.D. Tx. July 7, 2006) (reaching a similar result because all members did not consent to the bankruptcy, but the operating agreement required unanimity). Thus, just like *Franchise*, these cases merely stand for

4

Here, because requirement of the Independent Manager's consent was simply imposed by the Secured Lender without any legitimate purpose or benefit to Debtor, it is void as against public policy.

Indeed, the matter at hand is similar to *Lexington*, where the amended operating agreement required an independent manager solely to appease the lender, with the independent manager's approval required before a bankruptcy petition could be filed on behalf of the debtor. 577 B.R. at 680-81. Although there was no dispute that the independent manager's approval was not obtained, the Court held that the consent requirement violated public policy when considering similar factors as those at issue here; specifically, (i) the purpose of the independent manager was solely to prevent a bankruptcy filing, (ii) the independent manager did not have normal fiduciary duties, and (iii) her existence was linked directly to the continuing loan obligation. *See id.* at 684. Here, just as in *Lexington*, the Independent Manager's duties are not set forth in the LLC Agreement, there is no criteria for the Independent Manager to consider when determining whether to permit a Bankruptcy filing, and the Independent Manager only exists to the extent Debtor has not repaid its loan with the Secured Lender.

Thus, just like in *Lexington*, the Court should refuse to enforce the LLC Agreement to the extent that it requires the Independent Manager to consent to the Bankruptcy filing, rendering the Secured Lender's Motion to Dismiss for lack of authority meritless.

**II.    The Case Should Not Be Dismissed Pursuant To 11 U.S.C. § 1112(b).**

In its Supplemental Motion, the Secure Lender advances the new argument that the Bankruptcy should be dismissed pursuant to 11 U.S.C. § 1112(b) because "good cause" exists the uncontroversial position that owners of a company have the right to authorize a bankruptcy if the governing documents require their authorization.

Thus, all of the above cases have no bearing on whether a non-owner creditor can require the appointment of a manger with veto power of a bankruptcy filing.

5

for the dismissal and the dismissal would be in the best interest of the creditors. This argument, too, is without merit because no good cause for dismissal exists as it only benefits the Secured Lender.

### A.    There Is Not Good Cause For Dismissal Under 11 U.S.C. § 1112(b).

The Secured Lender argues that good cause exists because, *if* the Lease is rejected, *only then* would the Debtor allegedly "lack[] any assets to reorganize."[4] Notably, however, the cases cited by the Secured Lender involve matters where the estate, *at the time of the Motion*, did not have assets to permit reorganization. *See, e.g.*, *In re Halpern*, 229 B.R. 67, 72-73 (Bankr. E.D.N.Y. 1999) (dismissing because only available asset was not an estate asset, it was owned by a separate partnership). Here, unlike in *Halpern*, the Lease indisputably *is an asset of the estate*, and will continue to be an asset until the Motion to Assume is denied, at which point the Lease would be deemed rejected. It is only *after* the Lease is rejected that the estate would lack assets to reorganize and dismissal for cause would be warranted. The Secured Lender simply cannot undermine the space-time continuum to serve its self-interest. Einstein will not have it.

Indeed, the Secured Lender improperly requests that the Court issue an advisory opinion on the Motion to Assume and, if the result is not what the Secured Lender hopes for, the Court will then "pause" issuance of its decision on the Motion to Assume and, instead, consider dismissal of this Bankruptcy based on a lack of assets. However, as a result of the "pause," the

---

[4] The Secured Lender briefly states, without any argument, that dismissal also is warranted when continuation of the case no longer serves any particular bankruptcy purpose, citing to *Lippman v. Big Six Towers, Inc.* for this proposition. *See* 2021 U.S. Dist. LEXIS 86266, *9 (E.D.N.Y. May 5, 2021). However, Debtor fails to include the language used by the *Lippman* Court, which found there was no legitimate bankruptcy purpose because the case was "nothing more than a non-bankruptcy two-party dispute." *Id.* Thus, the *Lippman* case is irrelevant to this Bankruptcy which is plainly not a two-party dispute.

6

estate does not (yet) lack assets as the Ground Lease rejection would be held in abeyance at the Secured Lender's request undermining any basis for dismissal.

With that in mind, the Secured Lender cites no authority, and Landlord is aware of none, where dismissal for a lack of assets was permitted in advance of an order divesting the estate of those very assets.

To that end, the Secured Lender's reliance on *In re AMC Realty Corp.* is inapposite. 270 B.R. 132 (Bankr. S.D.N.Y. 2001). There, unlike what Secured Lender proposes here, the Court first considered whether the filing was akin to a bad faith petition to avoid the consequences of forfeiture of the property premised on a negotiated stipulation at mediation. *See id.* at 136. After so finding, the Court then considered whether to dismiss or grant relief from the automatic stay, ultimately determining that dismissal was more appropriate than stay relief to permit litigation divesting the estate of its primary asset. *See id.* at 147. Thus, contrary to the Secured Lender's position, a lack of assets was not the basis for dismissal. Rather, the Court concluded the petition was filed in bad faith in the first instance permitting dismissal. Nothing in the *AMC* decision permits this Court to prejudge the Motion to Assume and then delay entering an order rejecting the lease in favor of first dismissing the Bankruptcy because the Debtor will -- but does not currently -- lack assets to reorganize as a result of a stayed order of rejection.

Similarly, *In re Hinchliffe*, cited by Secured Lender, **confirms** that the unorthodox procedure proposed by the Secured Lender is improper. There, the Court found that dismissal was warranted because the secured creditors ***already*** obtained relief from the automatic stay; thus, the rental income which served as the presumed basis for funding the plan would soon be unavailable to the debtor. 164 B.R. 45, 52 (Bankr. E.D. Pa. 1994). Again, the Court ***first*** found the assets were not available to the estate, entered an order permitting stay relief which would

7

divest the assets from the estate, and only then dismissed because the assets were no longer available to fund the plan. There is no basis for the Court engage in the legal gymnastics proposed by the Secured Lender, putting the cart before the horse by permitting dismissal for a lack of assets before entering an order on the Motion to Assume divesting the estate of those assets.

B. **The Secured Lender Would Benefit From Dismissal.**

Contrary to the Secured Lender's assertions, there is no evidence in the record that anyone other than the Secured Lender would benefit from dismissal. Specifically, as the Court is aware, if the case is dismissed, the Secured Lender will continue its efforts to foreclose its interest in the Lease, allowing it -- and only it -- to reap all the benefits. Notably, the Secured Lender has not set forth how any of the other creditors would benefit from dismissal or the Secured Lender's foreclosure of the Lease interest or, more appropriately, how any creditors would be ***better off*** if the Secured Lender forecloses instead of the Lease being rejected. Indeed, the Secured Lender is presumably not agreeing to share the proceeds from the foreclosure sale with the other creditors. The Secured Lender has not set forth any authority that the Court can prefer it over the Landlord and other creditors when determining whether dismissal is appropriate.[5]

---

[5] Furthermore, the Secured Lender's misguided position that *In re Rock 49th Rest. Corp.* supports dismissal because otherwise Landlord would receive an unauthorized windfall is misplaced. 2010 Bankr. LEXIS 1223 (Bankr. S.D.N.Y. Apr. 7, 2010). There, the Court merely held that a landlord could not demand a cure for defaults which were not actually a violation of the lease. *Id.* at *19. This has nothing to do with whether a Debtor who is unable to assume a lease can instead secure dismissal in advance of termination.

And, the Landlord is not receiving a windfall in any event. Rather, its Lease is being rejected in accord with the Code compelling it to now re-tenant the property. And, unlike the Secured Lender and Debtor, the Landlord did not create this situation.

8

Furthermore, contrary to the Secured Lender's apocalyptic assertion, a rejection of the Lease would not impair the residential tenant's rights to continue occupancy at the Property. Whether a subtenant has a continuing right to occupy a property after termination of the master lease in bankruptcy is a question for state law. *See SubCulture, LLC v. Rogers Invs. (In re Culture Project)*, 571 B.R. 555, 560, 564 (Bankr. S.D.N.Y. 2017). Notably, under New York State law, "[u]pon the ouster of the prime tenant the subtenants become the tenants of the [prime landlord] and are entitled to remain in possession." *520 East 81st Street Associates v. Lenox Hill Hospital*, 74 Misc. 2d 438, 442 (N.Y. Civ. Ct. 1973).

Further, even assuming *arguendo* that the Secured Lender is right, the termination of the residential tenant's rights is also a possibility if it is permitted to foreclose on the Ground Lease. State law permits a lender to include tenants in a foreclosure action to extinguish their rights as well. RPAPAL 1311 (an action to foreclose on a mortgage includes. as "necessary defendants:" "Every person having an estate or interest in possession, or otherwise, in the property as tenant in fee, for life, by the curtesy, or for years … or of any interest therein or undivided share thereof, after the determination of a particular estate therein.").

Thus, contrary to Secured Lender's assertion, a Lease rejection would not lead to the immediate, wholesale eviction of residential tenants any more than a foreclosure would.

### III.    The Secured Lender's Motion To Dismiss Is Made In Bad Faith.

Here, the Secured Lender has an improper motivation for filing this Supplemental Motion, further confirming it should be denied. "In evaluating a motion to dismiss, courts will closely scrutinize [the] motivation for seeking dismissal" because a party "must seek dismissal in good faith without intent to manipulate the court system." *See In re Herrera*, 554 B.R. 262, 267

9

(Bankr. D.N.M. 2016). A court should not dismiss a bankruptcy simply because the burdens "begin to outweigh" the benefits of bankruptcy. *Id.*

The Supplemental Motion was not made in good faith because the Secured Lender ***concedes*** it is attempting to manipulate the Court system. The Secured Lender -- and, by extension, Debtor -- cannot have it both ways, having asked for assumption of the Lease, they cannot now seek dismissal in the event that their requested relief is denied. Litigants cannot be permitted to wait for a Court to rule on pending motions and, if the ruling appears to be negative to their interest, first demand the Court dismiss the entire action before memorializing that negative ruling in an Order.

Essentially, the Secured Lender seeks to transport this Bankruptcy Court to the schoolyard, saying that unless the Court rules in its favor, it will take its ball and go home. This would lead to complete chaos permitting debtors to remain in bankruptcy, enjoy the benefits and protections of bankruptcy, all while threatening dismissal the second a creditor may receive a favorable ruling. This is not the law, and public policy considerations plainly prohibit the Secured Lender from now engaging in this gamesmanship.[6]

## IV.  **Laches Prohibits Dismissal**.

Motions to dismiss a bankruptcy action are subject to the defense of laches, which is an equitable doctrine "by which a court denies relief to a claimant who has unreasonably delayed in asserting the claim, when that delay has prejudiced the party against whom relief is sought." *Ross v. Tognetti (In re Tognetti)*, 2006 Bankr. LEXIS 2216, *49 (Bankr. S.D.N.Y. Jun. 21,

---

[6] Examples of the hazards of the Secured Lender's gamesmanship are numerous. For example, a plaintiff files a complaint. A defendant alleges its frivolous, moves to dismiss, and seeks sanctions. The plaintiff then says to the Court: "If you are going to dismiss and grant sanctions, I will voluntarily dismiss in advance. If not, I will oppose the motion." Litigants are not entitled to advisory court decisions to escape the consequences of their actions.

8272690v2

2006). The Court should "examine the equitable circumstances peculiar to each case to determine whether the [party] in asserting her rights was guilty of unreasonable delay that prejudiced the [other party]." *In re Shea & Gould*, 214 B.R. 739, 748 (Bankr. S.D.N.Y. 1997).

Here, laches applies to prevent the Secured Lender from seeking dismissal. The Secured Lender deliberately delayed seeking dismissal for the bases set forth in the Supplemental Motion until months ***after*** litigation involving the Motion to Assume. This last-ditch effort to prevent Lease rejection is highly inappropriate because Landlord has spent that time litigating that very issue, with the Court affording Debtor and the Secured Lender substantial time to resolve the many defaults under the Lease, only for the Secured Lender to now attempt to pull the rug out of from under the Landlord by rendering the whole exercise moot on the eve of the Court finally adjudicating the Motion to Assume.

By waiting until now to file the Supplemental Motion and requesting the Court only rule on it if the Motion to Assume would be denied, the Secured Lender has created a situation where the Landlord will suffer prejudice because it would have spent months litigating the Motion to Assume without the possibility of rejection.

## CONCLUSION

For the foregoing reasons, Landlord respectfully requests that the Court Deny the Secured Lenders' Motion and Supplemental Motion in their entirety, and grant such other, further, and additional relief as the Court deems just and proper.

| | |
|---|---|
| Dated: Woodland Park, New Jersey<br>March 13, 2023 | ANSELL GRIMM & AARON, P.C.<br><br>s/ Anthony J. D'Artiglio<br>Joshua S. Bauchner, Esq.<br>Anthony J. D'Artiglio, Esq.<br>365 Rifle Camp Road<br>Woodland Park, New Jersey 07424<br>Tel: (973) 247-9000<br>Fax: (973) 247-9199 |

8272690v2