UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re:                                            :
                                                  :
EASTGATE WHITEHOUSE LLC,                           :        Case No. 22-22635 (SHL)
                                                  :
                                                  :
                              Debtor.             :

-------------------------------------------------------------------x

### DECLARATION OF DIRECT TESTIMONY OF WILLIAM W. KOEPPEL IN SUPPORT OF DEBTOR'S AMENDED MOTION TO ASSUME GROUND LEASE

WILLIAM W. KOEPPEL, hereby declares:

1.      I submit this declaration of direct testimony in support of the motion of Eastgate Whitehouse LLC (the "Debtor") to assume its ground lease (the "Ground Lease") with 939 First Avenue LLC (the "Ground Lessor") with respect to the real property and improvements located at 939-943 First Avenue (a/k/a 350 East 52nd Street), New York, New York 10022 (the "Property"). Except as otherwise stated, the facts set forth in this declaration are based on personal knowledge, documents reviewed and/or information provided to me.

2.      I am the sole member of Whitehouse Estates, Inc., which is the sole member of the Debtor.

3.      On August 19, 2022 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 bankruptcy petition with this Court.

4.      The Debtor's principal asset is its interest as a ground lessee under the Ground Lease.

5.      The Property is a mixed-use commercial/multi-family residential building consisting of 5 commercial units and approximately 137 residential units. The Debtor's business consists solely of leasing the commercial and residential units at the Property to various tenants.

DOC ID - 40059936.3

1

6.      The Debtor has been operating its business pursuant to numerous cash collateral stipulations (the "Cash Collateral Stipulations") with Barclays Bank PLC ("Barclays" or "Secured Lender") and its predecessor.  Exhibit 23, Exhibit 24, Exhibit 25 and Exhibit 26 are copies of the Cash Collateral Stipulations.

7.      The Debtor is current on its post-petition operating expenses.  Exhibit 36, Exhibit 37, Exhibit 38, Exhibit 39 and Exhibit 40 are the Operating Reports for the months of September 2022 through January 2023.

### The Loan

8.      The Debtor is indebted to the Secured Lender pursuant to a pre-petition loan (the "Loan") made to the Debtor on or about July 23, 2018, in the original principal amount of $32,100,000.00. [Claim No. 5; Doc. No. 124].  Pursuant to the Cash Collateral Stipulations, the Debtor has stipulated that its obligations to the Secured Lender under the Loan are secured by a duly perfected first priority lien and security interest in the Pre-Petition Collateral (as defined therein), which includes the Debtor's interest in the Ground Lease.

### The Ground Lease Escrow Fund

9.      Under the Ground Lease, the Debtor is responsible for paying monthly rent of $3,125.00 (a total of $37,500 annually) to the Ground Lessor.  The term of the Ground Lease runs through June 30, 2031, with an option for tenant to automatically renew through June 30, 2055. Exhibit 4 is a copy of the Ground Lease.

10.      The loan documents between the Debtor and the Secured Lender provide for an escrow fund to be held by the Secured Lender for the payment of rent to the Ground Lessor (the "Ground Lease Escrow Fund").  The Secured Lender disburses the monthly rental payment to the Ground Lessor every month from the Ground Lease Escrow Fund.

11.    The Debtor is current on its monthly ground rent payments.

### The Assumption Of The Ground Lease Is A Reasonable Exercise Of The Debtor's Business Judgment

12.    I believe that the assumption of the Ground Lease is a reasonable exercise of the Debtor's business judgment.

13.    The Ground Lease, which is the Debtor's principal and only income-producing asset, allows the Debtor to lease the Property to tenants and generate income. If the Ground Lease were rejected, the Debtor would be required to surrender the Property to the Ground Lessor, essentially resulting in a forfeiture of its sole income-producing asset. In that case, the Debtor would have no ability to generate any income for the payment of creditors in this case. Accordingly, the Debtor's business judgment supports entry of an order approving of the assumption of the Ground Lease.

### The Ground Lessor's Objections

14.    I have reviewed the Ground Lessor's objection to the Debtor's motion to assume the Ground Lease (the "Assumption Motion"). According to such objection, the Ground Lessor opposes the assumption of the Ground Lease on multiple grounds including because: (i) real estate taxes on the Property due on January 3, 2023 had allegedly not been paid; (ii) a mechanics' lien against the Property had been filed by V.C. Drywall & Remodeling, LLC ("V.C. Drywall") and the Debtor had allegedly failed to indemnify the Ground Lessor as a defendant in a state court mechanic's lien action (the "Mechanic's Lien Action") filed by V.C. Drywall; (iii) New York City had filed a lawsuit against the Ground Lessor because a brothel had been allegedly operating out of one of the commercial units at the Property; (iv) New York City had issued a sidewalk lien with respect to the Property; and (v) there was a state court class action lawsuit (the "Class Action Lawsuit") pending against the Debtor, which could potentially result in a claim against the Ground

Lessor, even though the Ground Lessor has never been a party in the Class Action Lawsuit.  I address each of these below.

### Real Estate Taxes

15.    Exhibit 13 is the November real estate tax bill for the Property, requiring the payment of real estate taxes by January 3, 2023.  Exhibit 14 is a statement for the New York City Finance Department's website, showing that the real estate taxes for the Property were paid in December 2022.  Exhibit 15 is a report from the New York City Finance Department's website, showing that no real estate taxes are currently owed at the Property.

### The Mechanics' Lien Action

16.    With respect to the mechanic's lien filed by V.C. Drywall, the Debtor entered into a settlement (the "Mechanics' Lien Settlement") with V.C. Drywall and the Ground Lessor, which resolves the Mechanics' Lien Action, and requires V.C. Drywall to release its mechanics' lien. Under the Mechanics' Lien Settlement, V.C. Drywall will be dismissing the Mechanics' Lien Action and releasing the Ground Lessor.  Exhibit 16 is a copy of the Court's order approving the Mechanics' Lien Settlement, and attached to the order is the settlement agreement signed by the Debtor, V.C, Drywall and the Ground Lessor.

17.    Additionally, pursuant to the Cash Collateral Stipulations, the Debtor has paid counsel for the Ground Lessor with respect to the fees and expenses incurred by the Ground Lessor in connection with the Mechanics' Lien Action.  To the extent the Ground Lessor has incurred any additional fees and expenses related to the Mechanics' Lien Action, the Debtor intends to pay such amounts from cash collateral, which is permitted under the Cash Collateral Stipulations.[1]

---

1 I have been advised that last week, on March 8, 2023, a Notice of Lien was filed in the amount of $8,165.63 by NYC Newline Contractors, LLC for pre-petition work performed at the Property.  Barclays has informed the Debtor that it has consented to the use of cash collateral to resolve such lien,  I intend to authorize the Debtor to file a motion authorizing the payment of such alleged lien, and to seek an expedited hearing on such motion.

DOC ID - 40059936.3

## The Brothel Allegedly Operated At The Property

18.     In or about November 2022, the New York City Police Department raided and shut down the operations of Beauty Plus Inc., a commercial tenant at the Property, on the grounds that it was allegedly operating a brothel at the Property.  The Debtor had no knowledge that Beauty Plus Inc. was operating a brothel at the Property.

19.     In connection therewith, New York City (the "City") commenced an action (the "City Action") seeking, among other things, injunctive relief against the Debtor and Ground Lessor. Exhibit 17 is a copy of the Complaint in the City Action.

20.     In response, the Debtor filed an ejectment action (the "Ejectment Action") in state court against Beauty Plus Inc. to terminate its tenancy at the Property.  Exhibit 19 is a copy of the Complaint in the Ejectment Action.

21.     The Ejectment Action was resolved by the Debtor's entry into a termination and surrender agreement (the "Surrender Agreement") with Beauty Plus, Inc., which terminated its tenancy at the Property.  Pursuant to the terms of the Surrender Agreement, Beauty Plus Inc. has vacated its space at the Property.  Exhibit 20 is a copy of the Surrender Agreement.

22.     Additionally, the Debtor entered into a stipulation of settlement with the City which resulted in the dismissal of the City Action in its entirety.  Exhibit 18 is a copy of the "so ordered" stipulation of settlement, which dismissed the City Action.

## The Alleged Sidewalk Violation

23.     While there is an existing sidewalk lien (the "Sidewalk Lien") of record against the Property, the Debtor has repaired the alleged sidewalk violation.

24.     The Debtor has contacted the City and requested that the City inspect the sidewalk and remove the Sidewalk Lien.

DOC ID - 40059936.3

## The Class Action Lawsuit

25.     The Debtor is a party to the Class Action Lawsuit, alleging that the Debtor overcharged tenants at the Property.  The Ground Lessor has not been named as a party in the Class Action Lawsuit and the Ground Lessor has not asserted that it suffered damages in connection therewith.

26.     Moreover, at the time of the alleged overcharges, the Debtor was charging rent to tenants and de-regulating apartments pursuant to the law that was in effect at the time.  I have been advised that the rents the Debtor was charging tenants was consistent with 15 years of Division of Housing and Community Renewal and Court authority, and that the New York Courts in 2009 thereafter ruled, in a case not involving the Debtor, that apartments could not be de-regulated under the rental stabilization rules if the Debtor was receiving J-51 tax benefits, which the Debtor was receiving.  I have been further advised that in 2011, New York courts held that this ruling should be applied retroactively, which resulted in a class of plaintiffs commencing the Class Action Lawsuit against the Debtor.  While an order of partial summary judgment had been entered against the Debtor by the trial court and affirmed by the First Department, no final judgment has been entered in the Class Action Lawsuit because the First Department's decision is under appeal. The Debtor's appeal has been argued before the New York Court of Appeals, and a decision from such court is expected shortly.

27.     The issues underlying the Class Action Lawsuit are the subject of a court-ordered mediation between Barclays and the Class Action Plaintiffs.

## Compensation Paid to the Ground Lessor

28.     The Ground Lessor has also objected to assumption of the Ground Lease on the grounds that the Ground Lessor has suffered actual pecuniary loss as a result of the Debtor's alleged

breaches of the Ground Lease. The Ground Lessor asserts that these damages consist of fees and expenses incurred by the Ground Lessor, specifically legal fees and expenses.

29. However, the Debtor has paid legal fees to Ground Lessor's counsel in the amount of $38,528.36 arising out of the Mechanics' Lien Action, the City Action and a pre-petition action commenced by the Ground Lessor against the Debtor relating to the Sidewalk Lien.

30. The Cash Collateral Stipulations give the Debtor the authority to pay any other outstanding fees and expense of the Ground Lessor relating to alleged breaches of the Ground Lease to the extent there exist any additional fees and expenses that have not yet been submitted by the Ground Lessor for payment. (Exhibit 25 at ¶ 3; Exhibit 26 at ¶ 3).

## The Ground Lease Escrow Fund And The Payment Of Post-Petition Real Estate Taxes

31. Finally, the Ground Lessor objects to the Assumption Motion on the grounds that the Ground Lessor has not been provided with adequate assurances of future performance by the Debtor under the Ground Lease. I believe that the Ground Lessor's contention is wrong.

32. Barclays is paying the monthly rent under the Ground Lease directly to the Ground Lessor from a "Ground Lease Escrow Fund," which is the procedure provided for under § 7.5 of the loan agreement (the "Loan Agreement") between the Debtor and Barclays. As set forth in § 7.5 of the Loan Agreement, the amount contained in the Ground Lease Escrow Fund is sufficient to pay rent under the Ground Lease through August 6, 2028, which is the Maturity Date (as defined in the Loan Agreement). A copy of the Loan Agreement is contained in Exhibit 10. Additionally, Barclays paid the real estate taxes due on January 3, 2023 for the Property.

33. The Debtor believes that the existence of the Ground Lease Escrow Fund, Barclays payment of the rent under the Ground Lease from such escrow fund, and the fact that real estate taxes are current on the Property protects the Ground Lessor.

I declare under penalty of perjury under the laws of the United States that the foregoing is

Executed this 14th day of March 2023.


   /S/ William W. Koeppel

William W. Koeppel

DOC ID - 40059936.3