| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK**<br><br>ANSELL GRIMM & AARON PC<br>BY: Joshua Bauchner, Esq.<br>Anthony J. D'Artiglio, Esq.<br>365 Rifle Camp Road<br>Woodland Park, NJ 07424<br>Attorneys for 939 First Avenue, LLC | Hearing Date: March 15, 2023<br>Hearing Time: 3:00 p.m. |
| In re:<br><br>EASTGATE WHITEHOUSE, LLC,<br><br>       Debtor. | In Proceedings Under Chapter 11<br>of the United States Bankruptcy Code<br><br>Case No. 22-22635(SHL) |

**CREDITOR/LANDLORD 939 FIRST AVENUE, LLC'S PRE-TRIAL MEMORANDUM
IN OPPOSITION TO DEBTOR'S MOTION TO ASSUME THE GROUND LEASE**

8279263v2

# TABLE OF CONTENTS

|  | Page(s) |
|---|---|
| TABLE OF AUTHORITIES……………………………………………….. | ii |
| PRELIMINARY STATEMENT………………………………………………… | 1 |
| FACTS…………………………………………………………………………. | 3 |
| LEGAL ARGUMENT…………………………………………………………. | 4 |
|     I.    The Court Should Not Give Any Weight To Debtor's Purported Business Judgment…………………………………………………... | 4 |
|     II.    Debtor's Continued Defaults Under The Lease Preclude Assumption… | 5 |
|     III.    The Secured Lender Has Not Provided Adequate Assurances Of Future Performance……………………………………………. | 7 |
| CONCLUSION………………………………………………………………… | 8 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*COR Route 5 Co., LLC v. Penn Traffic Co.*,
   524 F.3d 373 (2d Cir. 2008)................................................................................................ 3-4

*Eighteen Assoc. LLC v. Court St. Pizza, Inc.*
   2020 N.Y. Misc. LEXIS 820 (2d Dep't Feb. 8, 2020)..............................................................6

*Headless Horseman Entities, Inc. v. AP Petroleum Corp.*
   48 Misc. 3d 670 (Westchester Cty. 2015).................................................................................6

*In re Orion Pictures Corp.*,
   4 F.3d 1095 (2d Cir. 1993).........................................................................................................3

**Statutes**

11 U.S.C. § 365(b)(1) ........................................................................................................... 6-7

Landlord respectfully submits this Pre-Trial Memorandum in further opposition to the Motion to Assume.[1] In light of the extensive briefing already submitted in response to the Motion to Assume, Landlord only responds to some of the points raised in the Secured Lender's Pre-Trial Memorandum, which is not a concession that any unaddressed legal argument has merit, with Landlord expressly relying on and incorporating by reference the arguments made in its two prior memoranda of law submitted in opposition to the Motion to Assume.

## **PRELIMINARY STATEMENT**

Landlord respectfully requests that the Court reject the Secured Lender's Pre-Trial Memorandum without consideration because it is nothing more than an unauthorized sur-reply, with the Secured Lender raising a host of arguments that should have been asserted in its prior briefing on this Motion. The mere fact that the Court is holding a hearing on the already fully briefed Motion to Assume does not afford the Secured Lender the right to submit even more briefing to the Court.

Notwithstanding the above, if the Court is inclined to consider the Secured Lender's Pre-Trial Memorandum, it is nothing more than old wine in a new bottle with the Secured Lender rehashing the same tired arguments it previously set forth in this case.

First, the Debtor's business judgment does not support assumption. Assumption would saddle the estate with an approximately $25 million obligation arising from the J-51 Litigation without any reasonable expectation of a buyer willing to assume that obligation to provide any value to the estate. With ongoing Lease payments coming due, including a high, six figure tax payment, assumption of the Lease could very well be a significant detriment to the estate providing only costs with no value whatsoever.

---

[1] Capitalized terms have the same meaning as in Landlord's initial Memorandum of Law in opposition to the Motion to Assume.

1

8279263v2

Second, there are at least three defaults which remain outstanding and uncured including, remarkably, ***yet another mechanics lien*** placed on the property approximately one week ago. The Secured Lender fails to set forth a sufficient plan for curing these defaults nor does it provide any evidence that these defaults have been cured. Indeed, the Secured Lender's "plan" for curing the most significant default, the J-51 Litigation, contains no detail whatsoever other than a mere "hope" that mediation will be successful after more than a decade of litigation. Debtor and the Secured Lender's failure to cure these defaults confirms that assumption must be denied in accord with the Code.

Third, the Secured Lender fails to provide adequate assurance of future performance. Not only has another lien been permitted to be placed against the Property under the Secured Lender's watch, but the Secured Lender fails to escrow sufficient funds to satisfy upcoming real estate tax obligations due by July 1, 2023, and fails to commit, without reservation, to ensuring compliance with all Lease obligations on a going forward basis. Adequate assurance cannot be premised solely on the Secured Lender's stated intention, ***without any legal obligation***, to make good on Debtor's Lease obligations for an indeterminate period of time.

Therefore, because there is not a sufficient legal or factual basis to permit assumption, the Court should deny Debtor's Motion in its entirety and deem the Lease rejected.

## **FACTS**

For purposes of this pre-trial memorandum, and because the Court is fully familiar with the history of this matter, Landlord will not provide a competing factual or procedural history for the Court, which is not a concession that the Secured Lender's factual recitation is correct. Landlord is, however, compelled to address certain issued raised by the Secured Lender.

8279263v2

First, the Debtor's alleged indebtedness to the Secured Lender is **wholly irrelevant** to whether the Debtor should be permitted to assume the Lease. The Secured Lender's selfish reasons for championing Lease assumption should not be considered by this Court when determining whether **Debtor** satisfies the standard to assume the Lease.

Second, the Secured Lender claims that it is holding $206,563.61 in escrow to pay amounts due under the Lease, which allegedly could satisfy five and a half years of Lease payments. **This is false**. As the Secured Lender should be aware, the Debtor is required to pay all real estate taxes when they become due and owing, with the next tax payment alone totaling far in excess of the escrow amount allegedly held by the Secured Lender.

## LEGAL ARGUMENT

### I. The Court Should Not Give Any Weight To Debtor's Purported Business Judgment.

As the Secured Lender concedes, the Court should "plac[e] itself in the position of the…debtor-in-possession [to] determine[e] whether assuming the contract would be a good business decision or a bad one." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2d Cir. 1993). In   The question is whether "it would be beneficial or burdensome to the estate to assume" the lease. *COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 383 (2d Cir. 2008).

Here, contrary to the Secured Lender's assertions, there is insufficient evidence in the record to support assumption of the Lease.

First, and as set forth above, the Secured Lender betrays its true intentions claiming that the "Secured Lender's primary collateral would be placed in jeopardy" if the Lease is rejected, which **has nothing to do with** whether the Court should accept the Debtor's business judgment that assuming the Lease would be good for the estate as a whole. *See COR Route 5 Co., LLC v.*

3

*Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 383 (2d Cir. 2008) ("The Bankruptcy Code places the option of assuming or rejection executory contracts with the debtor, not with its business partners.").

Second, as the Court will recall, the Secured Lender conceded that the Debtor could not attract a buyer for the Lease in light of the J-51 litigation, and while the Debtor claimed it was having "preliminary discussions" regarding sale of the Property, there has not been a single update in the months since which would evidence that assumption of the Lease could result in a sale to generate revenue for the estate.

Third, as the Secured Lender again concedes, the J-51 litigation is not yet resolved, thus assumption of the Lease could saddle the Bankruptcy Estate with approximately $25 million in super-priority cure liabilities without any clear benefit to the estate.

Furthermore, the Secured Lender's alleged belief that the matter will settle and thus "significant progress" has been made in this case is undermined by the record. The Secured Lender and J-51 Plaintiffs waited months from the filing of this Motion to even engage in mediation, after which they held multiple sessions without a resolution. Indeed, as the Debtor recently advised this Court, they believe a Court of Appeals decision will be issued this week, which, if favorable to the Debtor as Debtor adamantly believes will be the case, would likely torpedo any settlement remanding the matter back to litigation without an uncertain result over an uncertain time frame.

Thus, in the absence of any resolution of the J-51 litigation, the Debtor's business judgment should be given no weight by this Court because no rational business entity would willingly accept a $25 million liability without at least ***some*** assurance that the corresponding asset is salable for an amount in excess of that potential liability.

## II. Debtor's Continued Defaults Under The Lease Preclude Assumption.

Landlord was shocked to discover for the first time in the Secured Lender's trial brief that the Debtor has *again* permitted a construction lien to be placed upon the Property, with a new notice of lien in the amount of $8,165.63 filed against the Property on March 8, 2023. While the Secured Lender claims that it intends to satisfy the lien -- notably without providing any evidence that the lien was satisfied -- permitting a new construction lien against the Property is inarguably a default existing at the time of assumption which will not be cured in violation of Section 17 of the Lease.[2]

Furthermore, the sidewalk lien remains on the Property even though Debtor has had *more than seven years* to clear it. Although the Secured Lender now claims that it and Debtor are merely waiting for the City to re-inspect and discharge the lien, the Secured Lender has not provided any assurances that the City will "pass" the Debtor at the inspection or when the inspection will occur. The Debtor's inexcusable delay in curing the sidewalk lien prohibits assumption.

Finally, the Secured Lender's claim that the J-51 litigation is not a default requiring cure contradicts the plain language of the Lease. Pursuant to Section 9 of the Lease, Debtor was required to "promptly comply with all requirements of laws" at the Property, and to "save landlord harmless and indemnify landlord from and against all penalties fines, damages or costs resulting from failure to do so." Notwithstanding this requirement, while Debtor received J-51 tax benefits, it violated Rent Control and Rent Stabilization laws for residential tenancies at the

---

[2] Naturally, this begs the question of how many other contractors Debtor has stiffed over the years and whether the Secured Lender will satisfy the claims of any other contractors who lien the Property moving forward.

8279263v2

Property by overcharging its residential tenants.[3] The Lease does not make any distinction or exceptions for particular types of violations of the law. Thus, Debtor's failure to comply with the law is a breach of the plain language of Section 9 of the Lease, which remains uncured without any reasonable assurances of a future cure.[4]

Furthermore, the Secured Lender's contention that the Estoppel Certificate precludes Landlord from asserting a default under Section 365(b) related to the Casey Litigation is *false*. The Estoppel Certificate only addresses defaults as defined by the Lease, not defaults within the meaning of Section 365(b). Landlord may have good reason for not declaring a formal default under the Lease and seeking termination while still asserting its rights to cure any defaults pursuant to Section 365(b)(1). Additionally, the Secured Lender does not set forth any facts

---

[3] The Secured Lender falsely claims that a "final judgment" finding a violation of the law is required to "terminate a lease" pursuant to the holding in *Headless Horseman Entities, Inc. v. AP Petroleum Corp.* *See* 48 Misc. 3d 670, 675 (Westchester Cty. 2015). Not only does that holding fail to require a "final" judgment as speciously asserted by the Secured Lender, but that Court only found that a summary eviction proceeding was an inappropriate forum to adjudicate a violation of the law. *Id.* There is no such concern present here where the State Court in the Casey litigation *already found* on summary judgment that the Debtor violated the law. *See* Landlord's Exhibit 6.

[4] The Secured Lender cites irrelevant authority for the proposition that a breach of an alleged "all laws" clause is not a breach or default under a Lease. For instance, in *Eighteen Assoc., LLC v Court St. Pizza, Inc.*, the Court found that the breaches of the lease were not tied to forfeiture clause, and thus no forfeiture could lie. 2020 N.Y. Misc. LEXIS 820 *2 (2d Dep't Feb. 8, 2020). This has *nothing to do with* whether a breach of an express lease term requires cure pursuant to 11 U.S.C. § 365(b)(1). Notably, the Secured Lender cites no Bankruptcy authority for the proposition that a Court may treat a particular default as "less important" under 11 U.S.C. § 365(b)(1) and, therefore, relieve Debtor of its statutory obligation to cure on a whim.

Similarly, the Secured Lender's contention that Landlord must have suffered an "injury" -- presumably a pecuniary injury -- is belied by the plain language of 11 U.S.C. § 365(b)(1). Specifically, § 365(b)(1)(A) requires a debtor seeking to assume a lease to cure *all defaults* while § 365(b)(1)(B) requires a debtor to compensate the landlord for any pecuniary damage. These are *separate obligations* with the obligation to cure necessarily unrelated, and not dependent upon, the existence of pecuniary damage to the landlord.

demonstrating that the Casey Litigation was within "Landlord's actual knowledge" at the time, rendering the Estoppel Certificate meaningless in any event.

### III. The Secured Lender Has Not Provided Adequate Assurances Of Future Performance.

Finally, the Secured Lender and Debtor have not provided adequate assurances of future performance in violation of 11 U.S.C. § 365(b)(1)(C).

First, the Secured Lender has not placed sufficient funds in escrow to cover the next tax payment on the Property due prior to July 1, 2023, instead merely stating it has a "policy" of paying taxes when they come due. *Query*: Presuming it has the same policy for rent to "protect the asset," why is base rent in escrow but not taxes, which are deemed "Additional Rent" under the Lease? If the Secured Lender truly seeks to provide adequate assurance of the payment of six-figure upcoming taxes, the Secured Lender should place sufficient funds in escrow to cover the next year of real estate taxes.

Second, Debtor permitted *yet another* construction lien to attach to the Property, rendering it absurd to suggest that the Secured Lender has adequate assurance of future performance when *within a week* of the final assumption hearing yet another default has arisen. Debtor repeatedly demonstrated it is a poor steward of the Property undermining any contention Landlord is adequately protected.

Finally, the Secured Lender's claim that it is "highly motivated" to ensure performance under the Lease is not the same as a legal obligation to ensure performance under the Lease. The second the Secured Lender believes the cost of maintaining the collateral no longer makes good business sense because, for instance, no buyer materializes with sufficient capital to pay off the J-51 claims and give the Secured Lender sufficient value, the Secured Lender will promptly stop funding Lease performance leaving Landlord insufficiently protected because the Secured

7

Lender did not provide any binding obligation to ensure performance under the Lease for a set period of time.

## CONCLUSION

For the foregoing reasons, Landlord respectfully requests that the Court Deny Debtor's Motion in its entirety, declare the Lease rejected as of the hearing date, and grant such other, further, and additional relief as the Court deems just and proper.

| | |
|---|---|
| Dated: Woodland Park, New Jersey<br>March 15, 2023 | ANSELL GRIMM & AARON, P.C.<br><br>s/ Anthony J. D'Artiglio<br>Joshua S. Bauchner, Esq.<br>Anthony J. D'Artiglio, Esq.<br>365 Rifle Camp Road<br>Woodland Park, New Jersey 07424<br>Tel: (973) 247-9000<br>Fax: (973) 247-9199 |

8279263v2