**WESTERMAN BALL EDERER**
**MILLER ZUCKER & SHARFSTEIN, LLP**
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200
John E. Westerman
William C. Heuer
Mickee M. Hennessy
Todd M. Gardella
Michele L. Angell
*Special Litigation Counsel to David Wallace,*
*as Chapter 11 Plan Administrator of the*
*Estate of Eastgate Whitehouse, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                             :

In re                       :     Case No. 22-22635 (SHL)
                             :

EASTGATE WHITEHOUSE LLC,     :
                             :     Chapter 11
                             :

                    Debtor.     :
                             :
------------------------------------------------------x

### MOTION OF PLAN ADMINISTRATOR FOR ENTRY OF AN ORDER (I) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS PURSUANT TO THE CONFIRMED PLAN, (II) APPROVING THE STALKING HORSE AGREEMENT, SUBJECT TO HIGHER AND BETTER OFFERS, (III) FINDING THAT THE BUYER IS A GOOD FAITH PURCHASER UNDER BANKRUPTCY CODE § 363(m), (IV) APPROVING THE ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES PURSUANT TO <u>BANKRUPTCY CODE § 365, AND (V) GRANTING RELATED RELIEF</u>

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION AND RELIEF REQUESTED .......................................................................1

JURISDICTION AND VENUE ..................................................................................................2

BACKGROUND ..........................................................................................................................2

    A.    THE SECURED LENDER'S LOAN ....................................................................2

    B.    THE BANKRUPTCY CASE ................................................................................3

    C.    THE CONFIRMED PLAN....................................................................................3

    D.    THE PROPOSED SALE .......................................................................................5

BASIS FOR RELIEF REQUESTED...........................................................................................7

    A.    THE SALE TO MAZAL SHOULD BE APPROVED SUBJECT TO HIGHER
           AND BETTER OFFERS .......................................................................................7

    B.    MAZAL IS ENTITLED TO THE PROTECTIONS OF SECTION 363(m) OF
           THE BANKRUPTCY CODE.................................................................................9

    C.    ASSIGNMENT TO MAZAL OF CONTRACTS AND LEASES .......................10

          i.    SECTION 365(a) OF THE BANKRUPTCY CODE IS SATISFIED.............10

          ii.   SECTION 365(b) OF THE BANKRUPTCY CODE IS SATISFIED.............13

    D.    RELIEF UNDER BANKRUPTCY RULES 6004(h) AND 6006(d) IS
           APPROPRIATE.....................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

Cases

*991 Blvd. Realty Corp. (In re Nat'l Shoes, Inc.)*,
  20 B.R. 55 (Bankr. S.D.N.Y. 1982) .......................................................................... 14

*In re Advanced Contracting Sols., LLC*,
  582 B.R. 285 (Bankr. S.D.N.Y. 2018) ...................................................................... 10

*In re Angelika Films 57th, Inc.*,
  1997 WL 283412 (S.D.N.Y. May 29, 1997) ............................................................ 12

*In re Atlanta Packaging Prod., Inc.*,
  99 B.R. 124 (Bankr. N.D. Ga. 1988) .......................................................................... 7

*Bethlehem Steel Corp. v. BP Energy Co. (In re Bethlehem Steel Corp.)*,
  291 B.R. 260 (Bankr .S.D.N.Y. 2003) ...................................................................... 11

*In re Bygaph, Inc.*,
  56 B.R. 596 (Bankr. S.D.N.Y. 1986) ........................................................................ 15

*In re Celsius Network LLC*,
  2023 WL 471231 (Bankr. S.D.N.Y. Jan. 26, 2023) ................................................. 11

*In re Colony Hill Assoc's.*,
  111 F.3d 269 (2d Cir. 1997) ........................................................................................ 9

*COR Route 5 Co, LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*,
  466 F.3d 75 (2d Cir. 2006) ........................................................................................ 11

*Frostbaum v. Ochs*,
  277 B.R. 470 (E.D.N.Y. 2002) .................................................................................. 11

*In re Globe Metallurgical, Inc.*,
  312 B.R. 34 (Bankr. S.D.N.Y. 2004) ................................................................... 10-11

*In re Gucci*,
  193 B.R. 411 (S.D.N.Y. 1996) .................................................................................. 12

*In re Integrated Resources, Inc.*,
  147 B.R. 650 (S.D.N.Y. 1992) .................................................................................... 7

*Licensing By Paolo, Inc. v. Sinatra (In re Gucci)*,
  126 F.3d 380 (2d Cir. 1997) ...................................................................................... 10

*In re Luce Indus., Inc.*,
   8 B.R. 100 (Bankr. S.D.N.Y. 1980) ........................................................................................ 13

*In re M. Fine Lumber Co., Inc.*,
   383 B.R. 565 (Bankr. E.D.N.Y. 2008) .................................................................................... 14

*In re Metaldyne Corp.*,
   409 B.R. 661 (Bankr. S.D.N.Y. 2009) ...................................................................................... 7

*In re Natco Indus., Inc.*,
   54 B.R. 436 (Bankr. S.D.N.Y. 1985) ................................................................................. 14, 15

*Nat'l Sugar Refining Co. v. Stroehmann Bros. Co. (In re Nat'l Sugar Refining Co.)*,
   26 B.R. 765 (Bankr. S.D.N.Y. 1983) ...................................................................................... 11

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
   4 F.3d 1095 (2d Cir.1993) ....................................................................................................... 11

*In re VCR I, L.L.C.*,
   922 F.3d 323 (5th Cir. 2019) .................................................................................................... 7

*In re Westview 74th St. Drug Corp.*,
   59 B.R. 747 (Bankr. S.D.N.Y. 1986) ...................................................................................... 14

## Statutes

11 U.S.C. § 365(a) ........................................................................................................................ 10
11 U.S.C. § 365(b)(1) ................................................................................................................... 13

## Rules

Fed. R. Bankr. P. 6004(h) ............................................................................................................ 16
Fed. R. Bankr. P. 6006(d) ............................................................................................................ 16

TO:    HONORABLE SEAN H. LANE,
       UNITED STATES BANKRUPTCY JUDGE:

David Wallace as the chapter 11 plan administrator (the "Plan Administrator") for the

above-captioned, post-confirmation debtor, Eastgate Whitehouse, LLC (the "Debtor") under the

confirmed *Liquidating Plan for the Debtor Filed by Barclays Bank PLC* [Docket No. 207] (the

"Confirmed Plan"),[1] as and for his *Motion Of Plan Administrator For Entry Of An Order*

*(I) Approving The Sale Of Substantially All Of The Debtor's Assets Pursuant To The Confirmed*

*Plan, (II) Approving The Stalking Horse Agreement, Subject To Higher And Better Offers,*

*(III) Finding That The Buyer Is A Good Faith Purchaser Under Bankruptcy Code § 363(m),*

*(IV) Approving The Assignment Of Executory Contracts And Leases Pursuant To Bankruptcy*

*Code § 365, And (V) Granting Related Relief* (the "Motion"), respectfully states as follows:[2]

## INTRODUCTION AND RELIEF REQUESTED

1.    Pursuant to the Confirmed Plan and the Confirmation Order (as defined below), the

Plan Administrator seeks entry of an order, substantially in the form attached hereto as **Exhibit A,**

*inter alia*, (i) approving the sale of substantially all of the Debtor's assets free and clear of liens,

claims and encumbrances to the stalking horse bidder Mazal Echad LLC ("Mazal," or the "Stalking

Horse"), subject to higher and better offers, pursuant to that certain *Agreement of Purchase and*

*Sale*, dated September 29, 2025 (the "PSA"), annexed hereto as **Exhibit B**; (ii) finding that Mazal

is a good faith purchaser entitled to the protections of section 363(m) of title 11, United States

Code (the "Bankruptcy Code"); (iii) approving the assignment of the Assigned Contracts and

Leases (as defined below); and (iv) granting related relief.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed them in the Confirmed Plan.

[2] The Plan Administrator also submits herewith the declaration of Daniel Parker, from the Broker (as defined herein)
in support of the Motion (the "Parker Decl.").

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Bankruptcy Case (defined below) and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a), 363, 365, and 1142 the Bankruptcy Code, Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 6004-1 and 6006-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), and the Court's *Guidelines for the Conduct of Asset Sales* (the "Sale Guidelines").

## BACKGROUND

### A.      The Secured Lender's Loan

3.      The Debtor is indebted to Barclays Bank PLC (the "Secured Lender") in an amount which is not less than $45,176,900.24 as of the Petition Date (defined below), pursuant to a pre-petition loan (the "Loan") made to the Debtor on or about July 23, 2018, in the original principal amount of $32,100,000.00.  The Debtor's obligations to the Secured Lender under the Loan are secured by, *inter alia*, a duly recorded first-priority leasehold mortgage on the Ground Lease, a duly perfected first-priority security interest in the rents from the Property, and all of the Debtor's Personal Property (each as defined below).

4.      Pursuant to the Confirmed Plan and Confirmation Order, the Secured Lender has an allowed secured claim in an amount not less than $45,176,900.24, plus any and all accrued and unpaid post-petition interest.  (*See* Confirmation Order, ¶¶ 4-5; Confirmed Plan, § 5.1).

**B.     The Bankruptcy Case**

5.      On August 19, 2022 (the "Petition Date") the Debtor filed a voluntary chapter 11

petition, commencing the above-captioned bankruptcy case (the "Bankruptcy Case").  No statutory

committee has been appointed in the Bankruptcy Case.

6.      The Debtor is the ground lessee of certain real property located at 939-943 First

Avenue, a/k/a/ 344-350 East 52nd Street, New York, New York (the "Property"), pursuant to that

certain ground lease dated as of June 28, 1956 (as amended from time to time, the "Ground Lease")

with 939 First Avenue, LLC (the "Ground Lessor").[3]  (Parker Decl., ¶ 5).  The Property is a fifteen

story mixed use building.  Under the Ground Lease, the Debtor is responsible for paying monthly

rent of $3,125.00 (a total of $37,500 annually) to the Ground Lessor.  The term of the Ground

Lease runs through June 30, 2055.  The Debtor also owns certain personal property (the "Personal

Property," and together with the Property, the "Assets") located on or about the Property.  (Id.).

**C.     The Confirmed Plan**

7.       On January 18, 2024, the Court entered the *Findings of Fact, Conclusions of Law,*

*and Order (I) Approving Disclosure Statement on Final Basis and (II) Confirming Barclays Bank*

*PLC'S Chapter 11 Liquidating Plan for the Debtor* [Docket. No. 356] (the "Confirmation Order"),

confirming the Confirmed Plan and appointing the Plan Administrator.

8.      The Confirmed Plan provides for the sale of substantially all of the Debtor's assets,

including without limitation, the Debtor's interest as ground lessee in the Property under the

Ground Lease and substantially all of the Debtor's Personal Property.  (Confirmed Plan, § 7.4).

9.      As of the date hereof, all creditors in the Bankruptcy Case have been paid pursuant

to the terms of the Confirmation Order and Confirmed Plan, except for the Secured Lender and

---

[3] The Debtor is the successor-in-interest to the original lessee under the Ground Lease.  The Ground Lessor is the successor-in-interest to the original lessor under the Ground Lease.

the Class Action Lawsuit plaintiffs, who are to be paid from the proceeds of the sale of the Debtor's interest in the Assets.  (Confirmed Plan, § 1.33, Ex. B.)

10.     The Confirmed Plan and the Confirmation Order authorized and directed the Plan Administrator, on behalf of the Debtor's estate, to (i) employ a broker to market the Assets for a period of 120 days after entry of an order approving the retention of the broker (the "Marketing Period"), which was extended for an additional 120 days, with the Secured Lender's approval as required by the Confirmed Plan (the "Extended Marketing Period") to seek to obtain the highest and best offer therefor, taking into account the ability of proposed purchasers to close on their offers to purchase the Assets; and (ii) enter into a purchase and sale agreement for the sale of the Assets (the "Sale"), subject to (a) the Secured Lender's consent, and (b) higher and better offers, including any credit bid by the Secured Lender.  (*See id.*, §§ 1.17, 1.50, 1.66, 7.2, 7.4; Confirmation Order, ¶ 21).

11.     The Confirmation Order and Confirmed Plan also require that the Assets be sold "free and clear of all liens, claims[,] encumbrances, and interests pursuant to Bankruptcy Code Section 363(f), which liens, claims, encumbrances and interests shall upon the Closing Date attach to the proceeds of the Sale in the same order of priority that currently exist on the Sale Assets." (Confirmed Plan, § 7.6).

12.      On March 4, 2025, the Court entered an order [Docket. No. 356] authorizing the Plan Administrator to retain Eastdil Secured, LLC (the "Broker") as real estate broker for the Debtor and to market the Assets.

13.     The Extended Marketing Period concludes on October 30, 2025.

14.     The Plan Administrator and the Broker have marketed the Assets during the Marketing Period and the Extended Marketing Period, as required by the Confirmed Plan.  (*See*

Parker Decl., ¶¶ 5-8).

15.     After receiving approximately fifteen (15) offers during the Marketing Period and
Extended Marketing Period (*id.*, ¶ 8), the Plan Administrator, in his business judgment, has
concluded that the offer from Mazal, as reflected in the PSA, represents the highest and best offer
for the Assets (*id.*, ¶ 9), has designated Mazal as the stalking horse, and with the Secured Lender's
consent has entered into the PSA, which is subject to this Court's approval and higher and better
offers.

**D.      The Proposed Sale**

16.     As a result of the marketing process, the Plan Administrator has secured Mazal's
bid for the Assets and fully negotiated and documented the PSA.  (*Id.*, ¶¶ 5-8).  A true and correct
copy of the PSA is attached hereto as **Exhibit B**.  The Plan Administrator has also obtained the
consent of the Secured Lender to proceed with Mazal as the stalking horse in accordance with the
terms of the PSA and the Confirmed Plan.

17.     As set forth in the PSA, the proposed Purchase Price (as defined in the PSA) is
$13,000,000.00.  (PSA, § 2(a)).  Mazal has provided the $650,000.00 deposit (the "Deposit")
required under the PSA to Stewart Title Guaranty Company, who is acting as the escrow agent
(the "Escrow Agent").  (*Id.*, § 2(a)(i)).  The Deposit will be applied to the Purchase Price at the
closing of the Sale.  (*Id.*, § 2(a)(ii)).

18.     The PSA is conditioned upon entry of a sale order by this Court no later than
November 3, 2025, authorizing the Sale to Mazal pursuant to the PSA, and determining that Mazal
is a good faith purchaser within the meaning of Bankruptcy Code section 363(m).  The closing of
the Sale (the "Closing Date") shall occur at 10:00 a.m. (prevailing Eastern Time) thirty (30) days

after the entry of an order approving the Sale (the "Sale Order"), or such earlier date as may be agreed upon by the parties. (*Id.*, § 10(a)).

19.     Notably, Mazal does not require a break-up fee in connection with its offer.  The PSA does contain an expense reimbursement provision of $350,000 if – and only if – a higher and better offer is received before November 3, 2025, and the Plan Administrator closes with a buyer other than Mazal.  As required by the Confirmed Plan and Confirmation Order, the PSA is subject to the receipt of higher and better offers, which will continue to be considered until three (3) days before the original date of the Sale Hearing (as defined in the PSA) (such date, the "Bid Deadline"). (*Id.*, § 9(a)).

20.     In the event that a higher and better offer and a deposit of at least $650,000.00 is received by the Plan Administrator by the Bid Deadline, the Plan Administrator shall request the Court continue the Sale Hearing and schedule an auction (the "Sale Auction") between the Stalking Horse and all parties that have submitted such a higher and better offer by the Bid Deadline.

21.     The Confirmed Plan and Confirmation Order require that within three (3) business days after entry into a purchase and sale agreement, the Plan Administrator file a motion seeking an order (i) approving the proposed sale, free and clear of all liens and encumbrances, but subject to higher and better offers; and (ii) finding that the proposed buyer is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.  (Confirmed Plan, § 7.4(c); Confirmation Order, ¶ 21).  Accordingly, the Plan Administrator now files this Motion, seeking entry of the Sale Order.

22.     In accordance with Local Rule 6004-1(j) and the Sale Guidelines, the Plan Administrator notes the following "Extraordinary Provisions" in the PSA:

> a) The Plan Administrator proposes to release Sale proceeds on or after the Closing Date without further Court order besides the Sale Order and the

Confirmation Order, and to allocate such proceeds in accordance with the Confirmed Plan.

b) The Sale of the Assets shall, pursuant to the Confirmed Plan, be exempt from New York State and New York City recording taxes, transfer taxes and stamp taxes pursuant to Bankruptcy Code section 1146, as set forth in section 12.1 of the Confirmed Plan.

c) At or before Closing (as defined in the PSA), Mazal shall have received from the Plan Administrator to the extent available, all records and files related to the ownership, management and operation of the Premises (as defined in the PSA).

d) The Plan Administrator is requesting waiver of the stays provided under Bankruptcy Rules 6004(h) and 6006(d).

**<u>BASIS FOR RELIEF REQUESTED</u>**

**A.    The Sale to Mazal Should be Approved Subject to Higher and Better Offers.**

23.    A trustee's duty is to maximize the value of the bankruptcy estate, and the Plan Administrator here, on the Debtor's behalf, has conducted an open and fair marketing process, including by hiring the Broker (*see* Parker Decl., *passim*) and continuing to market the Assets until the Bid Deadline.  *See In re VCR I, L.L.C.*, 922 F.3d 323, 327 (5th Cir. 2019) ("A trustee has the duty to maximize the value of the estate."); *In re Atlanta Packaging Prod., Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) ("It is a well-established principle of bankruptcy law that the objective of bankruptcy sales and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoted by *In re Integrated Resources, Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992)).

24.    The choice of one stalking horse bidder over another is subject to the debtor's (or estate fiduciary's) exercise of "reasonable business judgment".  *See In re Metaldyne Corp.*, 409 B.R. 661, 667 (Bankr. S.D.N.Y. 2009) (Glenn, J.).  To that end, "the Court should not substitute its business judgment for that of the Debtors'."  *Id.* (collecting cases).  Here, moreover, the

Confirmed Plan already authorizes, and the Confirmation Order requires, the Plan Administrator

to file the Motion seeking to approve the Sale, subject to higher and better offers.  (*See* Confirmed

Plan, §§ 7.4(b), 7.4(c); Confirmation Order, ¶ 21).  Furthermore, the Confirmed Plan and

Confirmation Order establish, among other things, the Marketing Period, the Extended Marketing

Period, and the Plan Administrator's ability to enter into an agreement with a prospective stalking

horse purchaser, and the requirement that any sale agreement be subject to higher and better offers.

(*See*, *e.g.*, Confirmed Plan, §§ 7.4(b), 7.4(c); Confirmation Order, ¶ 21).

25.    Here, the Plan Administrator's selection of Mazal as the stalking horse, ably

assisted by the Broker and in consultation with the Secured Lender, was a clear exercise of his

business judgment.  Mazal's stalking horse bid is all cash, and, as reflected in the PSA, there are

no contingencies other than the requirement that a sale order by this Court no later than November

3, 2025.

26.    Thus, the Plan Administrator's entry into the PSA, and the proposed Sale to Mazal,

subject to higher and better offers, should be approved by the Court.

27.    The Broker has extensively marketed the Debtor's interest in the Assets for

approximately seven (7) months.  (Parker Decl., ¶¶ 5-8).  Initially, the Broker sent out email blasts

to over 14,000 parties concerning sale of the Debtor's interest in the Assets.  (*Id*., ¶ 6).  It has

entered into confidentiality agreements with over seventy (70) parties interested in potentially

purchasing the Debtor's interest in the Assets and conducting due diligence in connection with a

potential sale.  (*Id.*, ¶ 8).  Moreover, the Broker has conducted tours of the Property with thirteen

(13) potential purchasers during the Marketing Period and Extended Marketing Period.  (*Id.*)

Additionally, the Broker has reviewed and analyzed fifteen (15) offers for the acquisition of the

Debtor's interest in the Assets.  (*Id.*)  After all of the foregoing, the Broker and Plan Administrator

have concluded that Mazal's offer as reflected in the PSA is the highest and best offer received for
the Debtor's interest in the Assets to date.  (*Id.*)

28.     Furthermore, since the Class Action Lawsuit plaintiffs are to receive a fixed dollar
amount from the Sale proceeds and all creditors' claims other than the Secured Lender's have been
paid under the Confirmed Plan, the only party that will benefit from higher and better offers (or be
harmed by not receiving higher and better offers) will be the Secured Lender, unless the purchase
price were to exceed $45,000,000, which is more than three (3) times the Stalking Horse Purchase
Price.

29.     In advance of the Bid Deadline, the Plan Administrator will serve a copy of this
Motion upon all parties that have previously submitted an offer for the Debtor's interest in the
Assets and/or who the Broker has taken for a tour of the Property, and will cause the publication
of a notice in the Commercial Mortgage Alert notifying potential purchasers of the opportunity to
submit a higher and better offer by the Bid Deadline.

30.     If a higher and better offer is submitted to the Plan Administrator by the Bid
Deadline, along with a deposit of at least $650,000.00 in immediately available funds, the Plan
Administrator will request that the Court continue the Sale Hearing, and an auction will be
conducted between the Stalking Horse and any party that has submitted such higher and better
offer.  If no person submits a higher and better offer by the Bid Deadline, the Plan Administrator
will seek the Court's authorization of the Sale to Mazal pursuant to the PSA at the Sale Hearing.

31.     The Plan Administrator has, in the exercise of his business judgment, determined
that the PSA represents the highest and best offer for the Assets, will maximize the value of the
bankruptcy estate, and meets the requirements set forth in the Confirmed Plan and the

Confirmation Order.  (*Id.*).  As such, the Plan Administrator requests the Court approve the proposed Sale.

**B.      Mazal is Entitled to the Protections of Section 363(m) of the Bankruptcy Code.**

32.     Section 363(m) of the Bankruptcy Code provides certain protections to a good faith purchaser of assets from a bankruptcy estate.  *See In re Colony Hill Assoc's.*, 111 F.3d 269, 276 (2d Cir. 1997).  While the Bankruptcy Code does not define the meaning of "good-faith purchaser," courts have adopted the traditional definition as a party who purchases the assets for value, in good faith and without notice of adverse claims.  *See Licensing By Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997) (quotation and citation omitted).  "Good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made.  A purchaser's good faith is lost by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *Id.* (quotation and citations omitted); *see In re Advanced Contracting Sols., LLC*, 582 B.R. 285, 317 (Bankr. S.D.N.Y. 2018) (same).

33.     Here, the evidence will be uncontroverted that the Plan Administrator negotiated the PSA with Mazal (in consultation with the Secured Lender) in good faith and on an arm's length basis.  Thus, the section 363(m) finding required to be sought by section 7.4(c) of the Confirmed Plan should be entered.

**C.      Assignment to Mazal of Contracts and Leases**

34.     The Plan Administrator also seeks entry of an order, pursuant to section 365 of the Bankruptcy Code and as required by the Confirmed Plan, the Confirmation Order, and the PSA, authorizing the assignment of the Ground Lease, certain of the Service Contracts (as defined in the PSA), and certain leases (collectively, the "Assigned Contracts and Leases") to Mazal on the

Closing Date.[4]   The only Service Contract being assumed and assigned is an elevator service

contract with PS Marcato Elevator Co. Inc.  No cure amount is due with respect to this Service

Contract.

### i.    *Section 365(a) of the Bankruptcy Code is Satisfied.*

35.    Section 365(a) of the Bankruptcy Code provides that a debtor (or estate

fiduciary), "subject to the court's approval, may assume or reject any executory contract or

unexpired lease of the debtor." 11 U.S.C. § 365(a).   "Section 365(a) was created to provide a

debtor with the opportunity to maximize the value of the estate by allowing 'the debtor to

benefit from those contracts that are profitable and reject those which are unprofitable.'"   *In*

*re Globe Metallurgical, Inc.*, 312 B.R. 34, 38 (Bankr. S.D.N.Y. 2004) (quoting *Bethlehem Steel*

*Corp. v. BP Energy Co. (In re Bethlehem Steel Corp.),* 291 B.R. 260, 264 (Bankr .S.D.N.Y.

2003), citing *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4

F.3d 1095, 1098 (2d Cir.1993)). Thus, "[i]f a contract is profitable to a debtor, its assumption

should be authorized." *Nat'l Sugar Refining Co. v. Stroehmann Bros. Co.* (*In re Nat'l Sugar*

*Refining Co.*), 26 B.R. 765, 767 (Bankr. S.D.N.Y. 1983) (citation omitted).

36.    Assumption of an executory contract or unexpired lease is subject to court

review under the business judgment standard.   *See Orion Pictures*, 4 F.3d at 1099

(citation omitted).   "The 'business judgment' rule is not an unduly strict standard; it merely

requires showing that the decision…was based on the debtor's sound business judgment." *In*

*re Celsius Network LLC*, 2023 WL 471231, at *4 (Bankr. S.D.N.Y. Jan. 26, 2023) (Glenn, J.).

"In reviewing a trustee's or debtor-in-possession's decision to assume an executory contract,

then, a bankruptcy court sits as an overseer of the wisdom with which the bankruptcy estate's

---

[4] The Ground Lease was previously assumed on March 24, 2023 [Docket. No. 157].  Certain contracts and leases to
be assigned under the PSA were deemed assumed under section 8.2 of the Confirmed Plan and Confirmation Order.

property is being managed by the trustee or debtor-in-possession, and not, as it does in other circumstances, as the arbiter of disputes between creditors and the estate." *Orion Pictures*, 4 F.3d at 1099; *see COR Route 5 Co, LLC v. Penn Traffic Co.* (*In re Penn Traffic Co.*), 466 F.3d 75, 76-77 (2d Cir. 2006) (making note of "the deferential standard applied to debtors' business judgments as to whether to assume or reject executory contracts"); *Frostbaum v. Ochs*, 277 B.R. 470, 475 (E.D.N.Y. 2002) (highlighting use of "business judgment" rule in determining whether executory contract should be assumed or rejected).

37. Thus, upon a finding that a debtor has exercised its sound business judgment in determining that the assumption of an executory contract or unexpired lease is in the best interests of the estate, the court should approve the assumption under Bankruptcy Code section 365(a). *See In re Angelika Films 57th, Inc.*, 1997 WL 283412, at *5 (S.D.N.Y. May 29, 1997) ("In this Circuit, a bankruptcy court determining whether a lease should be assumed pursuant to § 365 of the Bankruptcy Code…must make a finding that assumption is in the best interests of the estate (and unsecured creditors).") (quotation omitted); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y. 1996) (affirming bankruptcy court's determination that assumption was in the best interests of the estate and in accord with business judgment).

38. Here, Article VIII of the Confirmed Plan governs the Debtor's post-effective date assumption and assignment of unexpired leases and executory contracts. Initially, the Court already approved the Debtor's assumption of the Ground Lease. (*See* [Docket. No. 157]). Furthermore, the Confirmed Plan provides for, and the Confirmation Order already authorized, the assumption of the contracts and leases listed on Exhibit C to the Confirmed Plan – which is reattached hereto as **<u>Exhibit C</u>** – as of the Closing Date. (Confirmed Plan, §§ 8.2, 8.4; Confirmation Order, ¶ 14).

39.     Moreover, the Confirmed Plan and Confirmation Order provide that those executory contracts and unexpired leases that the Debtor assumed under the Confirmed Plan would be subject to assignment under a purchase and sale agreement.   (Confirmed Plan, § 8.7; Confirmation Order, ¶ 18).

40.     Additionally, the Court previously found that the Debtor's assumption of those contracts and leases assumed pursuant to the Confirmed Plan was a sound exercise of the Debtor's business judgment.   (*See* Confirmation Order, ¶ II ("[The] plan proponent, has exercised reasonable business judgment in determining whether to assume, assume and assign, or reject executory contracts and unexpired leases pursuant to Article 8 of the Plan.")).

41.     Now, the Plan Administrator, in an exercise of his sound business judgment, has determined that the assumption and assignment of the Assigned Contracts and Leases to Mazal is critical to the Sale of the Assets.   Therefore, the assumption and assignment to Mazal of the Assumed Contracts and Leases is in the best interests of the Debtor and its estate and should be approved.

### ii.     *Section 365 of the Bankruptcy Code is Satisfied.*

42.     An unexpired lease or executory contract must be assumed in order to be assigned under Bankruptcy Code § 365(f)(2).   Here, the Court already approved the assumption of the Ground Lease.

43.     Pursuant to section 365(b)(1) of the Bankruptcy Code, in order to assume an executory contract or unexpired lease, a debtor or estate fiduciary must: (i) cure, or provide adequate assurance that it will promptly cure, any default existing under the agreement, aside from defaults excepted from the cure; (ii) compensate, or provide adequate assurance that it will promptly compensate, for any actual pecuniary loss resulting from such default; and (iii) provide

adequate assurance of future performance under the agreement to be assumed.  *See* 11 U.S.C. §

365(b)(1).  Indeed, section 365(b) "attempts to strike a balance between two sometimes competing

interests, the right of the contracting nondebtor to get the performance it bargained for and the

right of the debtor's creditors to get the benefit of the debtor's bargain."  *In re Luce Indus., Inc.*, 8

B.R. 100, 107 (Bankr. S.D.N.Y. 1980), *rev'd on other grounds*, 14 B.R. 529 (S.D.N.Y. 1981).

*(a) All Cure Costs to be Paid; Counterparties Deemed to Consent.*

44.    Here, no defaults under the Assigned Contracts and Leases exist, save for the

restoration of tenant security deposits as provided for by the Confirmed Plan.  Specifically, Exhibit

D to the Confirmed Plan – reattached hereto as **<u>Exhibit D</u>** – sets forth "the amount necessary to

cure any defaults under unexpired leases and executory contracts being assumed…"  (Confirmed

Plan, § 8.6).  The cure amounts listed were for deposits that will be restored to the counterparty

upon the assumption of their respective leases.  Further, no counterparty objected to the proposed

cure amounts before the entry of the Confirmation Order and as such, all counterparties are deemed

to have consented to the cure amounts.  (*See id.*)  As such, prior to the assumption of the Assigned

Contracts and Leases, and the one Service Contract being assumed, the Plan Administrator asserts

that no cure payments or other compensation need be made or provided under section 365(b) of

the Bankruptcy Code prior to the assignment to Mazal of the Assigned Contracts and Leases.

*(b) Assurance of the Stalking Horse's Future Performance is Adequate;*
*Counterparties can Object by the Objection Deadline.*

45.    Bankruptcy Code 365(f)(2) requires a showing of adequate performance of future

performance by the assignee executory contracts and unexpired leases being assigned.  "Congress

intended to give the term [adequate assurance of future performance] a practical, pragmatic

construction."  *In re M. Fine Lumber Co., Inc.*, 383 B.R. 565, 572 (Bankr. E.D.N.Y. 2008)

(quotation omitted). "Whether 'adequate assurance of future performance' has been provided is

determined by the facts and circumstances of each case." *Id.* (citing *Chera v. 991 Blvd. Realty Corp. (In re Nat'l Shoes, Inc.)*, 20 B.R. 55, 59 (Bankr. S.D.N.Y. 1982)) (additional citations omitted). "A debtor need not prove that it will 'thrive and make a profit,' or provide an absolute guarantee of performance." *Id.* at 573 (quoting *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985)) (additional quotation omitted). "It must simply 'appear that the rent will be paid and other lease obligations met.'" *Id.* (quoting *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 755 (Bankr. S.D.N.Y. 1986)) (brackets omitted). "The emphasis is on protection. Section 365 gives no indication that a landlord…is to improve its position upon the bankruptcy of a tenant. The statute affords no relief to a landlord simply because it might have the opportunity to rent the premises to others at a higher base or percentage rent and would otherwise seek to escape the bargain it made." *Natco*, 54 B.R. at 441 (citation omitted).

46.     Here, the Plan Administrator has met this lenient standard. Mazal will have demonstrated to the satisfaction of the Plan Administrator, interested parties, and the Court its financial ability to close on the Sale of the Assets. This necessarily includes its ability to perform under the Assumed Contracts and Leases. *See, e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding proposed assignee's "personal financial resources…coupled with his experience as an owner and operator" to "indicate that the Landlord is adequately assured that the rent will be paid.").

47.     Likewise, the net-income generated from the Property greatly exceeds the modest monthly ground rent to be paid under the Ground Lease ($3,125.00) and the real estate taxes and insurance required to be paid by the ground lessee under the Ground Lease.

48.     Nevertheless, the Confirmed Plan allows objections to be filed and heard in this regard, as well:

Those unexpired leases and executory contracts which are being assumed pursuant to this Plan (the "Assumed Unexpired Leases And Executory Contracts") and which either are identified for assignment pursuant to the Sale Motion or the Transfer Motion shall be assigned as set forth therein, subject to the right of the non-debtor party to such unexpired lease or executory contract's right to object to such assignment by filing an objection to either the Sale Motion or Transfer Motion no later than fourteen days before the hearing on such motion, which objection will be determined by the Bankruptcy Court [the "Objection Deadline"].

(Confirmed Plan, § 8.7).[5]

49.     Pursuant to that certain *Order Scheduling Expedited Hearing And Modifying Local Rule's Deadline For Filing Objections To, And Limiting Notice Of, Motion Of Plan Administrator For Entry Of An Order (I) Approving The Sale Of Substantially All Of The Debtor's Assets Pursuant To The Confirmed Plan, (II) Approving The Stalking Horse Agreement, Subject To Higher And Better Offers, (III) Finding That The Buyer Is A Good Faith Purchaser Under Bankruptcy Code § 363(m), (IV) Approving The Assignment Of Executory Contracts And Leases Pursuant To Bankruptcy Code § 365, And (V) Granting Related Relief* [Docket No. 364] the Court ordered that any objections to the Sale Motion, including those relating to the assignment of the Assignment Contracts and Leases (as defined in the Sale Motion), are due no later than seven (7) days before the Sale Hearing.

50.     As such, the Objection Deadline, which is seven (7) days before the Sale Hearing, provides the deadline for parties to object to adequate assurance of future performance under any Assumed Contracts and Leases listed on Exhibit D to the Confirmed Plan, reattached hereto as **Exhibit D** . If no counterparties object to adequate assurance of future performance by the Objection Deadline, the assignment of the Assigned Contracts and Leases to Mazal (absent a higher or better offer) as of the Closing Date should be approved.

---

[5] Notably, this provision was included in the Confirmed Plan for the benefit of the Plan Administrator and Secured Lender, each of whom are willing to waive such requirement should the fourteen (14) day Objection Deadline impact the ability to obtain entry of the Sale Order by the November 3, 2025, deadline in the PSA.

**D.      Relief Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate.**

51.      Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property…is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease…is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6006(d).  The Plan Administrator hereby gives notice and requests that any order granting this Motion be effective immediately by providing that the fourteen (14) day stays under Bankruptcy Rules 6004(h) and 6006(d) be waived.

*[concluded on following page]*

**WHEREFORE**, the Plan Administrator respectfully requests that the Court enter an order:
(a) granting the Motion; (b) approving the sale of the Assets to the Stalking Horse pursuant to the
PSA, subject to higher and better offers; (c) approving the assignment of the Assigned Contracts
and Leases; and (d) granting such other and further relief as is just and proper.

Dated: Uniondale, New York
      October 1, 2025

**WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP**

By:     /s/ Mickee M. Hennessy          
         John E. Westerman
         William C. Heuer
         Mickee M. Hennessy
         Todd M. Gardella
         Michele L. Angell
         1201 RXR Plaza
         Uniondale, New York 11556
         Telephone: (516) 622-9200
         jwesterman@westermanllp.com
         wheuer@westermanllp.com
         mhennessy@westermanllp.com
         tgardella@westermanllp.com
         mangell@westermanllp.com

*Special Litigation Counsel to David Wallace,
as Chapter 11 Plan Administrator of the
Estate of Eastgate Whitehouse, LLC*

18