# Exhibit B

Execution Version

---

AGREEMENT OF PURCHASE AND SALE

between

EASTGATE WHITEHOUSE LLC, a
Delaware limited liability company

as Seller

and

MAZAL ECHAD LLC,
as Purchaser

Dated as of September 29, 2025

---

AGREEMENT OF PURCHASE AND SALE (the "**Agreement**") dated as of September 29, 2025 (the "**Effective Date**") between EASTGATE WHITEHOUSE LLC, a Delaware limited liability company, having an address at c/o David Wallace, as Chapter 11 Plan Administrator, 8111 Douglas Ave., Suite 600, Dallas, Texas 75225 ("**Seller**"), and MAZAL ECHAD LLC, having an address at 95-20 63rd Road, Suite S, Rego Park, New York 11374 ("**Purchaser**").

In consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser hereby agree as follows:

1.    <u>Sale and Purchase.</u> Subject to the terms of this Agreement and the Chapter 11 Liquidating Plan For The Debtor (as may be amended, the "**Plan**") filed By Barclays Bank PLC (the "**Secured Lender**") and the order, dated January 18, 2024, of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") confirming the Plan (the "**Confirmation Order**"), Seller shall sell and convey to Purchaser and Purchaser shall purchase from Seller, at the price and upon the terms and conditions set forth in this Agreement:

(a)    Seller's interest as ground lessee (the "**Ground Lessee Interest**") under that certain ground lease, dated as of June 28, 1956 (the "**Initial Ground Lease**") between First and Fifty-Second Corporation, a New York corporation, as ground lessor (the "**Initial Ground Lessor**") and 2249 Webster Ave. Corp, a New York corporation and predecessor-in-interest to Seller, as ground lessee (the "**Initial Ground Lessee**"), as amended by that certain Agreement dated as of November 15, 1978 (the "**First Amendment**") between First and Fifty Second Realty Company, a New York partnership and successor-in-interest to the Initial Ground Lessor (the "**Intermediate Ground Lessor**"), and Whitehouse Estates, Inc., a New York corporation, successor-in-interest to the Initial Ground Lessee and predecessor-in-interest to Seller, as ground lessee (the "**Intermediate Ground Lessee**"), as further amended by that certain Extension of Lease dated as of May 2, 2006 (the "**Second Amendment**," and together with the First Amendment and the Initial Ground Lease, as the same may have been or may be further amended, the "**Ground Lease**"), between 939 First Avenue, LLC, a New York limited liability company and successor-in-interest to the Intermediate Ground Lessor, as ground lessor (the "**Ground Lessor**") and Intermediate Ground Lessee, as ground lessee, which provides for Seller's lease of the real property located at 939-943 First Avenue, a/k/a 344-350 East 52nd Street, New York, New York, which is commonly known as Eastgate House, more particularly described in **Schedule 1** attached hereto (the "**Land**");

(b)    any buildings and improvements situated on the Land (the "**Improvements**");

(c)    all right, title and interest of Seller, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land and all other appurtenances to the Land and Improvements, and all right, title and interest of Seller in and to any award made or to be made in lieu thereof and in and to any

1

unpaid award for damages to the Land and Improvements by reason of change of grade of any street ("**Appurtenances**");

(d)     to the extent actually assignable by the Seller at no cost to Seller, all warranties, guaranties, licenses, permits and other rights both tangible and intangible, relating to the Ground Lessee Interest and the Improvements (the "**Miscellaneous Property**").

The Ground Lessee Interest, the Improvements, the Appurtenances, and the Miscellaneous Property are hereinafter collectively referred to as the "**Premises**". Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Plan or Confirmation Order or the order of the Bankruptcy Court approving a Sale Motion authorizing a sale of the Premises in accordance with this Agreement (the "**Sale Order**").

2.     Purchase Price; Deposit.

(a)     Purchaser will purchase the Premises from the Seller for $13,000,000.00 (the "**Purchase Price**") payable as follows:

(i)     Payment of Deposit.  Upon Purchaser's execution of this Agreement, and as a condition precedent to the effectiveness of this Agreement, Purchaser shall pay, as a deposit under this Agreement, an amount equal to Six Hundred Fifty Thousand and 0/100 Dollars ($650,000.00) (the "**Deposit**") to Stewart Title Guaranty Company (the "**Escrow Agent**"), who will act as escrow agent pursuant to this Agreement.

(ii)     Applicable Terms; Failure to Make Deposit.  Subject to Section 2(a), the Deposit shall be paid to Escrow Agent in immediately available funds by wire transfer in accordance with the wire instructions provided by Escrow Agent.  Except as expressly otherwise set forth herein, the Deposit shall be applied against the Purchase Price at Closing and shall otherwise be held and delivered by Escrow Agent in accordance with the provisions of **Exhibit G**. Notwithstanding any provision in this Agreement to the contrary, if Purchaser fails to timely make the Deposit as provided herein, Seller may elect to terminate this Agreement, in which event the parties shall have no further rights or obligations hereunder except for obligations which expressly survive the termination of this Agreement.

(iii)     Cash at Closing.  On the Closing Date, Purchaser shall (a) deposit into escrow with the Escrow Agent an amount equal to the balance of the Purchase Price in immediately available funds by wire transfer, or as otherwise provided under this Agreement, and (b) authorize and direct the Escrow Agent to simultaneously pay the Deposit into such escrow.  In the event that the Secured Lender is

2

the Purchaser, then the Purchase Price shall be paid by crediting the amount owed to the Secured Lender by the Seller against the Purchase Price.

(b)    Seller and Purchaser hereby agree that the Purchase Price shall be allocated as follows:

(i)    Real Property (as defined in the Plan) $13,000,000.00; and

(ii)    Personal Property (as defined in the Plan) $0.00.

(c)    The tax identification numbers of Seller and Purchaser are as follows:

Seller:        47-1573386
Purchaser:    39-3696286

(d)    Except as otherwise set forth in the Plan or this Agreement, the Deposit shall be immediately non-refundable upon execution of this Agreement by Seller and Seller's acceptance of Purchaser's offer and shall be applied to the Purchase Price. The Deposit shall be held in escrow in a non-interest-bearing account in accordance with the provisions hereof. The failure of Purchaser to timely deliver any portion of the Deposit as provided for herein shall, at Seller's option, cause this Agreement to be terminated, and thereafter neither party shall have any further right or obligation under this Agreement. If the transaction is not so consummated, then any portion of the Deposit not refundable to Purchaser as expressly provided herein shall be paid to Seller either as liquidated damages pursuant to the terms of this Agreement or disbursed as provided otherwise in this Agreement.

3.    Title. At Closing, title to the Premises shall be transferred to Purchaser "as is" and subject to all agreements, covenants, restrictions, conditions, reservations, defects and other matters of record, violations, zoning and other rules and regulations, such state of facts as an accurate survey of the Premises would show, rights of redemption and rights of any tenants in possession or under any Leases (as hereinafter defined). As provided for in the Plan, the Premises shall be transferred to Purchaser at Closing free and clear of all other liens, claims, encumbrances, and interests, upon payment of the Purchase Price.  If on the Closing Date the Premises is subject to any notes or notices of violation of law or municipal ordinances, orders or requirements, that have been noted in or issued by any federal, state or municipal department having jurisdiction, and which have not been fully remedied and discharged of record ("Violations"), Seller shall provide a credit at Closing in the amount of the outstanding fines on such Violations in lieu of discharging such Violations. As of August 1, 2025, the outstanding fines are set forth in Schedule 3 hereto.

4.    Representations and Warranties of Seller. Seller represents and warrants to Purchaser as follows:

(a)    That Seller has the authority to execute, deliver and perform its obligations under this Agreement pursuant to the Plan.

3

(b)     Except as otherwise set forth in <u>Schedule 4</u>, to Seller's knowledge, there are no lawsuits ongoing or threatened in writing with respect to (i) the Premises, or (ii) the Seller which will have a material adverse effect on Seller's ability to convey the Premises at Closing.

5.     <u>Representations and Warranties of Purchaser.</u> (a) Purchaser represents and warrants to Seller as follows:

(i)     <u>Organization, Execution and Power.</u> Purchaser is duly formed and in good standing under the laws of the State of Delaware. Purchaser has full power to execute, deliver and carry out the terms and provisions of this Agreement and has taken all necessary action to authorize the execution, delivery and performance of this Agreement. Neither the execution and delivery of this Agreement by Purchaser, nor the incurrence by it of the obligations herein set forth, nor the consummation by it of the transactions herein contemplated, nor compliance by it with the terms of this Agreement will conflict with or result in a breach of any of the terms, conditions or provisions of, or constitute a default under, the articles of incorporation or by-laws of Purchaser or any bond, note or other evidence of indebtedness, contract, indenture, mortgage, deed of trust, loan agreement, lease or other agreement or instrument to which Purchaser is a party or by which any of Purchaser's properties may be bound, or, to the best of Purchaser's knowledge after reasonable inquiry, any constitutional provision or statute or any order, rule or regulation of any court or governmental agency having jurisdiction over Purchaser or any of its activities or property.

(ii)     <u>Inspection.</u> Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof and shall accept the Premises in its present "as is" condition, subject to reasonable wear and tear.

(iii)     <u>Examination.</u> Before entering into this Agreement, Purchaser has made such examination of the operation, income and expenses of the Premises, the status of title to the Premises and all other matters affecting or relating to this transaction as Purchaser has deemed necessary. In entering into this Agreement, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, oral or written, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller which are not expressly set forth in this Agreement.  Purchaser has reviewed the Ground Lease and represents and warrants that Purchaser is able to comply with all requirements in the Ground Lease in connection with the transactions contemplated by this Agreement, including but not limited to Section 8(a) of the Initial Ground Lease.

4

(iv)    ERISA. Purchaser is not acquiring the Premises with the assets of an employee benefit plan (as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended).

(v)    PATRIOT Act. Purchaser represents to Seller that neither it nor any of its constituents have engaged in any dealings or transactions, directly or indirectly, (a) in contravention of any U.S., international or other money laundering regulations or conventions, including, without limitation, the United States Bank Secrecy Act, the United States Money Laundering Control Act of 1986, the United States International Money Laundering Abatement and Anti-Terrorist Financing Act of 2001, Trading with the Enemy Act (50 U.S.C. § I et seq., as amended), or any foreign asset control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended) or any enabling legislation or executive order relating thereto, or (b) in contravention of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-56, the "**USA PATRIOT ACT**"), Executive Order No. 13224 dated September 24, 2001 issued by the President of the United States (Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), as may be amended or supplemented from time to time ("**Anti-Terrorism Order**") or on behalf of terrorists or terrorist organizations, including those persons or entities that are included on any relevant lists maintained by the United Nations, North Atlantic Treaty Organization, Organization of Economic Cooperation and Development, Financial Action Task Force, U.S. Office of Foreign Assets Control, U.S. Securities & Exchange Commission, U.S. Federal Bureau of Investigation, U.S. Central Intelligence Agency, U.S. Internal Revenue Service, or any country or organization, all as may be amended from time to time. Neither Purchaser nor any of its constituents (i) are or will be conducting any business or engaging in any transaction with any person appearing on the U.S. Treasury Department's Office of Foreign Assets Control list of restrictions and prohibited persons, or (ii) are a person described in Section 1 of the Anti-Terrorism Order, and to the best of Purchaser's knowledge, respectively neither Purchaser nor any of its affiliates have engaged in any dealings or transactions, or otherwise been associated with any such person. The provisions of this subsection shall survive the Closing or earlier termination of this Agreement.

(b)    If any of the foregoing representations and warranties shall not be true and accurate in any material respect (and the same has a material adverse effect on Purchaser's ability to complete the Closing of this transaction and is not waived as permitted by this Agreement), Seller's sole right and remedy shall be to terminate this Agreement on or prior to the Closing, retain the Deposit and all interest (if any) earned on the Deposit as liquidated damages and to disburse the Deposit and such interest in accordance with the Plan.

6.    <u>Covenants of Purchaser.</u> Purchaser hereby covenants to Seller that (i) all actions required pursuant to this Agreement which are necessary to effectuate the transactions contemplated herein will be taken promptly and in good faith by Purchaser, (ii) Purchaser shall furnish Seller with such documents or further assurances as Seller may reasonably require, and (iii) Purchaser shall comply with all requirements in the Ground Lease in connection with the transactions contemplated by this Agreement, including but not limited to Section 8(a) of the Initial Ground Lease.

7.    <u>Conditions Precedent to Seller's Obligations to Close.</u> Seller's obligation to consummate the Closing hereunder is expressly conditioned on the satisfaction, at or before the time of the Closing hereunder or such earlier date as is specified below, of each of the following conditions (any one or more of which may be waived, in whole or in part, by Seller at Seller's option):

(a)    All of the representations and warranties of Purchaser contained in this Agreement shall have been true and correct in all material respects when made, and shall be true and correct in all material respects on the Closing Date with the same effect as if made on and as of such date.

(b)    The Sale Order shall have been issued by a court of competent jurisdiction, which order shall not be stayed as of the date of the Closing.

(c)    Pursuant to the Sale Order, the Purchaser is deemed a good faith purchaser within the meaning of Bankruptcy Code Section 363(m).

(d)    Purchaser shall have performed, observed, and complied with all covenants, agreements, and conditions required by this Agreement to be performed, observed, and complied with on its part prior to or as of Closing hereunder.

8.    <u>Conditions Precedent to Purchaser's Obligations to Close.</u> Purchaser's obligations hereunder (including, without limitation, its obligation to purchase and accept the Premises and pay the Purchase Price) are expressly conditioned on the satisfaction, at or before the time of Closing hereunder or such earlier date as is specified below, of each of the following conditions (any one or more of which may be waived, in whole or in part, by Purchaser at Purchaser's option):

(a)    All of the representations and warranties of Seller contained in this Agreement shall have been true and correct in all material respects when made, and shall be true and correct in all material respects on the Closing Date with the same effect as if made on and as of such date; and

(b)    Seller shall, as required by the Plan, cause David Wallace, as Chapter 11 Plan Administrator (the **"Plan Administrator"**) to file a Sale Motion with the Bankruptcy Court no later than three (3) business days after entry into this Agreement.

#520286635_v16

(c)    A Sale Order shall be entered by the Bankruptcy Court deeming Purchaser a good faith purchaser under Section 363(m) of the Bankruptcy Code; and

(d)    Seller shall have substantially performed, observed, and complied with all material covenants, agreements, and conditions required by this Agreement to be performed, observed, and complied with on its part prior to or as of Closing hereunder.

9.    <u>Sale Hearing; Sale Order</u>.

(a)    <u>Sale Motion</u>. Within three (3) business days of the execution of this Agreement, the Plan Administrator shall file a motion with the Bankruptcy Court (the "**Sale Motion**") seeking a hearing to approve the sale (the "**Sale Hearing**"). The Sale Motion shall include customary terms and conditions and be subject to higher and better bids. Drafts of the Sale Motion and related documents shall be provided to Purchaser at least one (1) day prior to filing and the Sale Motion shall be in form and substance reasonably acceptable to the Purchaser.

(b)    <u>Sale Order</u>. At the Sale Hearing, the Plan Administrator will seek the entry of a Sale Order in form and substance reasonably acceptable to Purchaser. The Sale Order shall include, among other findings and determinations: (i) approval of the Agreement; (ii) a determination Purchaser is a good-faith buyer under Section 363(m) of the Bankruptcy Code; (iii) determinations that the Purchase Price constitutes fair saleable value and is reasonably equivalent value for the Premises; (iv) a determination that the Premises are being sold and conveyed to Purchaser free and clear of any and all liens, Claims, interests, encumbrances, and rights of set off, whether known or unknown, disputed, contingent, actual or otherwise (collectively, "**Interests**"); and (v) a determination that Purchaser is not a successor of the Seller or Plan Administrator.

10.    <u>Closing</u>.

(a)    The transfer of title (the "**Closing**") to the Premises pursuant to this Agreement shall occur at 10:00 a.m. (Eastern Time) on the date that is thirty (30) days after the Bankruptcy Court enters the Sale Order, or such earlier date agreed to by Purchaser and Seller, unless stayed by an order of a court of competent jurisdiction, in the offices of Holland & Knight LLP, 787 Seventh Avenue, 31st Floor, New York, New York 10019, TIME BEING OF THE ESSENCE AS TO PURCHASER'S OBLIGATIONS UNDER THIS AGREEMENT (or by escrow, as mutually agreed to), subject to any right to extend the deadline for the Closing as set forth in the Plan, Confirmation Order or Sale Order. The day on which the Closing actually occurs is referred to herein as the "Closing Date". Nothing herein contained shall be deemed to create a financing or any other contingency or to condition Purchaser's obligations hereunder on Purchaser's ability to obtain financing or any other event or condition, except as expressly set forth herein.

#520286635_v16

(b)      At or before Closing, Purchaser shall have received the following from Seller, executed by Seller (as appropriate):

(i)      Four (4) original copies of the Assignment and Assumption of Ground Lease, in recordable form, substantially in the form attached hereto as **Exhibit A** (the "**Assignment of Ground Lease**");

(ii)      Intentionally Omitted;

(iii)      A bill of sale (without warranties) substantially in the form attached hereto as **Exhibit C** (the "**Bill of Sale**");

(iv)      An assignment and assumption Agreement substantially in the form attached hereto as **Exhibit D** (the "**Assignment and Assumption**");

(v)      A form letter to advise all contractors under Service Contracts, if any (to the extent such contracts are assumed pursuant to Section 20), of the sale to Purchaser, in the form annexed hereto as **Exhibit E**;

(vi)      A letter in the form attached hereto as **Exhibit F** to each tenant at the Premises, executed by Seller (the "Tenant Notice Letters");

(vii)      A combined Purchaser-Seller Closing Statement reflecting all financial aspects of the transaction (the "**Closing Statement**");

(viii)      Such other instruments and documents necessary to consummate the transaction contemplated hereby, including, but not limited to, signed counterparts of the appropriate New York City and New York State real property transfer tax forms, if applicable;

(ix)      such additional documentation as Seller or Purchaser's title company deems reasonably necessary in order to convey to Purchaser Seller's interests in the Premises, including any title affidavit;

(x)      For informational purposes only, without representation or warranty of any kind, an updated Retail Rent Roll for the Premises, in substantially the same form as the Retail Rent Roll attached as **Exhibit I** hereto, current as of a date not more than fifteen (15) business days prior to the Closing Date;

(xi)      For informational purposes only, without representation or warranty of any kind, an updated Residential Rent Roll for the Premises, in substantially the same form as the Residential Rent Roll

attached as **Exhibit I** hereto, current as of a date not more than fifteen (15) business days prior to the Closing Date;

(xii)    Any documents required to be delivered by Seller pursuant to the Ground Lease in connection with the transactions contemplated by this Agreement, including but not limited to Section 8(a) of the Initial Ground Lease;

(xiii)    To the extent available and in the possession and control of Trigild Property Management, all records and files related to the ownership, management and operation of the Premises;

(xiv)    To the extent available and in the possession and control of Trigild Property Management, all keys to all entrance doors to, and equipment and utility rooms located in, the Premises; and

(xv)    Possession of the Premises in the condition required by this Agreement.

(c)    At or before Closing, Seller shall have received the following from Purchaser executed by Purchaser (as appropriate):

(i)    The Purchase Price in immediately available funds;

(ii)    The countersigned Assignment of Ground Lease;

(iii)    The countersigned Bill of Sale;

(iv)    The countersigned Assignment and Assumption;

(v)    A Certificate of Good Standing from the Secretary of State in which Purchaser is organized, dated within 30 days of the Closing Date;

(vi)    An executed resolution authorizing Purchaser to consummate the transactions contemplated hereunder, and to perform all of Purchaser's obligations hereunder, and containing incumbency language as to the signatory of the Closing documents for Purchaser;

(vii)    Any documents required to be delivered by Purchaser pursuant to the Ground Lease in connection with the transactions contemplated by this Agreement, including but not limited to Section 8(a) of the Initial Ground Lease;

(viii)    A countersigned Closing Statement;

#520286635_v16

(ix)    Such other instruments and documents necessary to consummate the transaction contemplated hereby, including, but not limited to, signed counterparts of the appropriate New York City and New York State real property transfer tax forms, if applicable.

(d)    Pursuant to the Confirmation Order, the following shall be a condition precedent to the Closing, which may not be waived by the Seller or Purchaser: entry of a Sale Order.

(e)    <u>Closing Costs</u>. At Closing, Purchaser shall pay for all of the following: (i) the base premium for any title policy; (ii) the premium payable in connection with any and all endorsements requested by Purchaser, (iii) one-half of the Escrow Agent's fee; (iv) the cost of any survey; (v) if applicable, all loan and lenders' fees related to any financing obtained by Purchaser (including mortgage tax); (vi) the cost of recording the Assignment of Ground Lease and mortgage (if any), and (vii) any sales taxes payable in connection with the Closing. At Closing, Seller shall pay for one-half of the Escrow Agent's fee.  Each party shall be responsible for the payment of its own attorneys' fees incurred in connection with this Agreement and all other expenses which such party incurs. Additionally, any additional expenses, charges and fees in connection with Closing, not specifically provided for herein or incurred by a specific party, shall be borne by the party that customarily bears such expense, charge or fee in real estate transactions in New York County, New York.

11.    <u>Apportionments</u>.

(a)    The parties shall prorate the following as of 11:59 p.m. E.S.T. on the day immediately preceding the Closing Date (the "**Apportionment Date**") on the basis of the actual number of days of the month which shall have elapsed as of the Closing Date, the actual number of days in the month, and a 365 day year:

(i)    Fixed rents payable by Tenants which are collected on or prior to the Closing in respect of the month (or other applicable collection period) in which the Closing occurs (the "**Current Month**"), on a *per diem* basis based upon the number of days in the Current Month prior to the Closing Date (which shall be allocated to Seller) and the number of days in the Current Month on and after the Closing Date (which shall be allocated to Purchaser).

(ii)    Rent payable under the Ground Lease, on a per diem basis based upon the number of days in the Current Month prior to the Closing Date (which shall be allocated to Seller) and the number of days in the Current Month on and after the Closing Date (which shall be allocated to Purchaser).

(iii)    All other income the Premises generates.

10

(iv)    Real property taxes and assessments (apportioned on the basis of the tax year in which the Closing Date occurs), water rates and charges, and sewer taxes not otherwise payable directly to the taxing authority by any tenant under any lease or occupancy agreement at the Premises (each, a "Lease"). Any party with a right to occupy any portion of the Premises pursuant to a Lease is referred to hereunder as a "**Tenant**". Fees for water and sewer shall be paid by Seller up to the date of Closing. If there is a water meter or meters which relate to the Premises, Seller shall furnish a final actual reading to a date not more than ten (10) days before Closing and the unfixed water charge and sewer rents, if any, shall be apportioned, on the basis of such last reading.  If there is no water meter on the Premises, Seller must provide evidence that no water meter is located at the Premises.

(v)    All electric, telephone, fuel, and other utility charges based on the last ascertainable bill unless meter readings are made as of the Closing Date, in which case such meter readings shall govern. Seller will make commercially reasonable efforts to obtain meter readings to the extent they are available.

(vi)    All other costs and expenses of operating the Premises customarily apportioned in connection with sales of properties substantially similar to the Premises in the City and State of New York.

(b)    All security deposits and advance rentals in the nature of security deposits (together with interest accrued thereon less any permitted administrative fees) and letters of credit held by Seller as security under any Lease in effect on the Closing Date (the "**Security Deposits**"), as set forth in the Residential Rent Roll or Retail Rent Roll, as applicable, shall be turned over to Purchaser at the Closing, or at Purchaser's election, Seller shall give Purchaser a credit for those Security Deposits which are cash security deposits. Seller agrees that it shall not after the date hereof apply any Security Deposits for any Tenants against the payment of rents thereunder unless such Tenant vacates its space.

(c)    All operating costs and expenses applicable to any period before the Closing Date shall be paid by Seller on or before the Closing Date or promptly upon receipt of applicable statements. All operating costs and expenses applicable to any period from and after the Closing Date shall be paid by Purchaser.

(d)    Upon Purchaser's request, Seller shall make commercially reasonable efforts to assign any policies of insurance in respect of the Premises to Purchaser at Closing.

(e)    All prorations pursuant to this Section 11 will be final as of the Closing Date and there will be no reapportionments made thereafter.

12.    Default, Liquidated Damages; Termination, etc.

11

(a)    If Purchaser shall default in the performance of its obligations under this Agreement to purchase the Premises, and Seller has fulfilled all of its obligations under this Agreement and is ready, willing and able to complete Closing, then the Deposit shall be retained (or released to Seller, immediately upon Seller's request) as liquidated damages and this Agreement shall become void and be of no further force or effect, and no party hereto shall thenceforth have any claim of any nature against the other party hereto.

(b)    If Seller shall be unable to convey title to the Premises at the Closing in accordance with the provisions of this Agreement or fails to obtain a Sale Order by November 3, 2025, Purchaser's sole rights shall be to (i) terminate and cancel this Agreement, whereupon Seller shall return to Purchaser the Deposit with any accrued interest thereon, and provided Purchaser is not in default under this Agreement, and only in the event of Seller's conveyance of title to a purchaser other than Purchaser pursuant to a higher and better offer received by Seller, then Seller shall also pay Purchaser the Expense Reimbursement (as hereinafter defined), and this Agreement shall become void and be of no further force or effect, and no party hereto shall thenceforth have any claim of any nature against the other party hereto, or (ii) pursue specific performance of this Agreement. As used in this Agreement, "**Expense Reimbursement**" shall mean an amount equal to three hundred fifty thousand and 0/100 dollars ($350,000.00), which will be payable as provided in this Section 12(b) immediately upon the later of (a) termination of this Agreement pursuant to clause (i) above, or (b) Seller's conveyance of title to a purchaser other than Purchaser in connection with a higher and better offer, so long as such termination is not the result of Purchaser's default hereunder. Seller's obligation to pay the Expense Reimbursement will expressly survive the termination of this Agreement.

(c)    The Agreement shall terminate, prior to the Closing:

(i)    automatically upon the closing of a sale of the Premises to a purchaser other than Purchaser.

(ii)    by mutual written consent of the Seller or Plan Administrator and Purchaser;

(iii)    Intentionally Omitted; and

(iv)    automatically in the event that any Governmental Authority of competent authority and jurisdiction shall have issued an order or judgment or enacted a law that permanently enjoins or otherwise makes illegal or prohibits the Sale of the Premises pursuant to this Agreement.

Notwithstanding anything otherwise set forth under this Agreement, in the event of a termination of this Agreement pursuant to this Section 12(c), Seller shall return to Purchaser the Deposit, with any accrued interest thereon, and this Agreement shall become void and be of no further force or effect, and no party hereto shall

12

thenceforth have any claim of any nature against the other party hereto, except as otherwise set forth under this Agreement.

13.    <u>Notices, Etc.</u> All notices, consents, approvals and other communications under this Agreement shall be in writing and shall be deemed given the third business day after mailing by one party by registered or certified United States mail, postage prepaid and return receipt requested, to the other party addressed as follows:

If to Seller:

> Eastgate Whitehouse LLC
> c/o David Wallace, as Chapter 11 Plan Administrator
> 8111 Douglas Ave., Suite 600
> Dallas, Texas 75225

with a copy to:

> Holland & Knight LLP
> 787 Seventh Avenue, 31st Floor
> New York, NY 10019
> Attention: Vivian Arias

and to:

> Westerman Ball Ederer Miller Zucker & Sharfstein, LLP
> 1201 RXR Plaza
> Uniondale, New York 11556
> Attention: John Westerman
> Attention: Mickee Hennessy

If to Purchaser:

> Mazal Echad LLC
> 95-20 63rd Road, Suite S
> Rego Park, New York 11374
> Attention: Orah Zadeh

with a copy to:

> Polsinelli PC
> 600 Third Avenue, 42nd Floor
> New York, NY 10016
> Attention: Robert B. Koonin, Esq.

If to Escrow Agent:

#520286635_v16

Stewart Title Guaranty Company
Agency Escrow Services
1360 Post Oak Blvd., Ste. 100
Houston, TX 77056
Attention: Andrea Miller, Escrow Officer

Either party may, from time to time, specify as its address for purposes of this Agreement any other address upon the giving of 10 days' notice thereof to the other party.

14.    Integration. All understandings and agreements between the parties with respect to the subject matter of this Agreement are merged in this Agreement, which alone fully expresses their agreement with respect to such subject matter.

15.    Severability. If any term or provision of this Agreement or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

16.    No Assignment. Seller may not assign this Agreement. Purchaser may assign its rights under this Agreement upon the following conditions: (i) the assignee of Purchaser must be a Purchaser Affiliate (as defined below), (ii) the assignee of Purchaser shall assume all obligations of Purchaser hereunder, and (iii) a copy of the fully executed written assignment and assumption agreement shall be delivered to Seller prior to Closing.  Upon assignment and assumption, the named Purchaser hereunder and Purchaser's assignee shall be jointly and severally liable hereunder.  As used in this paragraph, "**Purchaser Affiliate**" shall with respect to Purchaser, any other entity (a) which directly, or indirectly through one or more intermediaries, Controls, is Controlled by or is under common Control with the Purchaser, and (b) (i) which owns a beneficial interest in Purchaser of fifty one percent (51%) or greater, or (ii) in which the Purchaser owns, directly or indirectly, a beneficial interest of fifty one percent (51%) or greater. As used in this paragraph, "**Control**" and its derivatives mean the ability, directly or indirectly, to direct or cause the direction of the management, policies or operation of an entity, whether through the direct or indirect ownership of equity interests or by contract and shall not be deemed to be absent as a result of any other person having a veto right over major decisions.

17.    Retail Tenant Estoppel Certificates.  Seller shall use reasonable efforts to obtain from the tenants listed in **Schedule 17** (the "**Key Tenants**"), an estoppel certificate or other statement substantially in the form attached as **Exhibit H**, (each a "**Tenant Estoppel Certificate**") prior to the Closing Date. For the purposes of this Section, "reasonable efforts" shall mean that Seller shall make two (2) written requests from each Retail Tenant for a Tenant Estoppel Certificate. Notwithstanding anything to the contrary contained in this Agreement, the delivery of any Tenant Estoppel Certificate or the information contained in any Tenant Estoppel Certificate shall not be a condition precedent to the obligation of Purchaser to close hereunder nor shall the inability of or failure by Seller to deliver any Tenant Estoppel Certificate or the information contained in any Tenant Estoppel Certificate give Purchaser a reason or right not to close hereunder.

14

18.    <u>Seller's Covenants</u>. Between the date of the Agreement and the Closing or earlier termination of this Agreement:

(a)    Seller shall not, without the prior written consent of Purchaser (not to be unreasonably withheld, delayed or conditioned): (i) cancel, terminate, amend, extend or otherwise modify any Lease except (i) for any Lease that may be unilaterally terminated or extended by the Tenant thereunder pursuant to the terms of such Lease and (B) for an immaterial modification of a non-residential lease or the termination of any non-residential Lease under which a Tenant has been in default for two (2) months or more; (ii) accept a surrender of a Lease prior to the expiration date thereof; (iii) unless there is a default by a Tenant under its Lease (and such Tenant has vacated its demised premises) apply any portion of any Security Deposit of such Tenant; (iv) enter into any new lease of space, provided that Purchaser agrees that it will approve or reject any proposed new residential lease at the Premises within three (3) business days and Purchaser's failure to respond to Seller's request for approval within such three (3) business day period will be deemed an approval; (v) amend or extend any Service Contract nor enter into any new service, maintenance or operating agreement unless the same expires or is terminated prior to the Closing Date, except as otherwise expressly set forth hereunder; or (vi) enter into any new residential Lease, amend any existing residential Lease or extend or renew any existing residential Lease unless (x) the tenant's credit is consistent with that required by Seller's current practices and (y) otherwise required by applicable law, the rent under such residential Lease (or renewal or extension thereof) shall not be less than the rent under the residential Lease for such apartment as of the date hereof, and if there is no such residential Lease for such apartment as of the date hereof, then such rent being charged by such Seller for such residential Lease shall be not less than the rent then being charged by such Seller for new leases of comparable apartments in the same building.  Upon request, Seller shall keep Purchaser reasonably informed as to the status of leasing prior to the Closing Date.  Further, with respect to any rent regulated apartment that becomes de-regulated, if permitted under applicable law, Seller shall only enter into new Leases for such apartment on market-rate terms.  Seller shall deliver to Purchaser a notice of each proposed action for which Purchaser's consent is required hereunder, setting forth such information as Seller believes is relevant thereto.

(b)    Seller shall operate the Premises in accordance with the prudent and customary management practices for properties of this type and in compliance with the provisions of this Agreement. Seller will maintain in effect through Closing, the following insurance presently maintained on the Premises:

(c)    Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes assessed against the Premises for any fiscal period in which the Closing is to occur or any subsequent fiscal period without the prior written consent of Purchaser, which consent shall not be unreasonably withheld.  There are no protest or reduction proceedings ongoing with respect to the Premises.

(d)       Seller shall furnish to Purchaser copies of any and all notices which it receives from any party, any governmental agency or any insurer with respect to the Premises or any portion thereof within five (5) days after Seller's receipt thereof.

(e)       Seller shall not, without the prior consent of Purchaser, enter into, modify, or terminate any additional service or equipment leasing contracts or other similar agreements relating to the Premises or modify or terminate any of the Service Contracts, except as instructed by Purchaser.

(f)       Seller will provide Purchaser and its representatives access to the Premises at reasonable times upon three (3) business days' notice via email to ian.lagowitz@trigild.com.

19.    Brokers. Seller represents and warrants to Purchaser, and Purchaser represents and warrants to Seller, that no broker or finder has been engaged by it, respectively, in connection with the sale contemplated by this Agreement, other than Eastdil Secured ("**Seller's Broker**").  Seller will be responsible for any commission payable to Seller's Broker with respect to this Agreement, pursuant to a separate arrangement between Seller and Seller's Broker.  Seller's Broker shall not have any rights by reason of this Agreement and is not an intended third-party beneficiary of this Agreement. The provisions of this Section will survive the Closing or any termination of this Agreement.

20.    Service Contracts. A list of the current service contracts (the "**Service Contracts**") in effect with respect to the Premises is attached hereto as Schedule 20. Purchaser will deliver notice to Seller within ten (10) business days prior to Closing setting forth which Service Contracts must be terminated prior to Closing, which Seller agrees it will terminate prior to Closing, and which Service Contracts Purchaser seeks to take assignment of, which Seller will assign to Purchaser at Closing. Purchaser's failure to deliver the notice contemplated under this Section 20 will be deemed an election for Seller to terminate all Service Contracts prior to Closing.

21.    Governing Law. This Agreement shall be governed by and construed in accordance with Title 11 of the United States Code and, to the extent applicable to contract matters, the laws of the State of New York. Any action or proceeding involving this Agreement shall only be commenced in the Bankruptcy Court for the Southern District of New York. Service of any summons and complaint or other process in any such action or proceeding may be made by certified mail directed to Seller or Purchaser, as applicable, at the address above set forth, personal service being hereby waived.

22.    **DISCLAIMERS AND LIMITATIONS. PURCHASER EXPRESSLY UNDERSTANDS, ACKNOWLEDGES AND AGREES THAT THE CONVEYANCE OF THE PREMISES SHALL BE MADE, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH HEREUNDER, BY SELLER TO PURCHASER ON AN "AS IS, WHERE IS" BASIS AND WITH ALL FAULTS, AND PURCHASER ACKNOWLEDGES THAT PURCHASER HAS AGREED TO BUY THE PREMISES IN ITS PRESENT CONDITION AND THAT PURCHASER EXCEPT AS OTHERWISE EXPRESSLY SET FORTH HEREUNDER, IS RELYING SOLELY ON ITS OWN EXAMINATION AND INSPECTIONS OF THE PREMISES AND NOT ON ANY STATEMENTS OR**

16

**REPRESENTATIONS MADE BY SELLER OR ANY AGENTS OR REPRESENTATIVES OF SELLER. ADDITIONALLY, PURCHASER HEREBY ACKNOWLEDGES THAT, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH HEREUNDER, SELLER MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING BUT IN NO WAY LIMITED TO, ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF THE PREMISES OR ANY PORTION THEREOF, OR WITH RESPECT TO THE ECONOMICAL, FUNCTIONAL, ENVIRONMENTAL OR PHYSICAL CONDITION, OR ANY OTHER ASPECT, OF THE PREMISES. SELLER HEREBY SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, OR CONCERNING: (i) THE NATURE AND CONDITION OF THE PREMISES OR ANY PART THEREOF, INCLUDING BUT NOT LIMITED TO ITS WATER, SOIL, OR GEOLOGY, OR THE SUITABILITY THEREOF FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER MAY ELECT TO CONDUCT THEREON, OR ANY IMPROVEMENTS PURCHASER MAY ELECT TO CONSTRUCT THEREON, OR ANY INCOME TO BE DERIVED THEREFROM, OR ANY EXPENSES TO BE INCURRED WITH RESPECT THERETO, OR ANY OBLIGATIONS OR ANY OTHER MATTER OR THING RELATING TO OR AFFECTING THE SAME; (ii) THE ABSENCE OF ASBESTOS OR ANY ENVIRONMENTALLY HAZARDOUS SUBSTANCES ON, IN OR UNDER THE PREMISES OR ON, IN OR UNDER ANY PROPERTY ADJACENT TO, IN THE VICINITY OF OR ABUTTING THE PREMISES; (iii) THE MANNER OF CONSTRUCTION OR CONDITION OR STATE OF REPAIR OR LACK OF REPAIR OF ANY IMPROVEMENTS; AND (iv) THE COMPLIANCE OF THE PREMISES OR THE OPERATION OF THE PREMISES OR ANY PORTION THEREOF WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY GOVERNMENT OR OTHER BODY; AND (v) THE NATURE OR EXTENT OF ANY EASEMENT, RESTRICTIVE COVENANT, RIGHT-OF-WAY, LEASE, POSSESSION, LIEN, ENCUMBRANCE, LICENSE, RESERVATION, CONDITION OR OTHER SIMILAR MATTER PERTAINING TO THE PREMISES, OR PORTION THEREOF. PURCHASER FURTHER ACKNOWLEDGES THAT THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY EXPLAINED TO PURCHASER AND THAT PURCHASER FULLY UNDERSTANDS AND ACCEPTS THE SAME. THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE CLOSING AND SHALL BE INCLUDED IN THE ASSIGNMENT OF GROUND LEASE.**

      23.    <u>Damage or Destruction</u>.

      (a)    If all or any part of the Premises is damaged by fire or other casualty occurring on or after the date hereof and prior to the Closing Date, whether or not such damage affects a material part of the Premises, then neither party shall have the right to terminate this Agreement and the parties shall nonetheless consummate this transaction in accordance with this Agreement, without any abatement of the Purchase Price or any liability or obligation on the part of Seller by reason of such destruction or damage. In such event, Seller shall pay over to Purchaser the net amount of the insurance proceeds collected, or, if any proceeds have not been collected, Seller shall assign to Purchaser all its right, title and interest in and to the

17

same and, in either such case, Purchaser shall receive a credit against the cash due at Closing for the amount of the deductible on such casualty insurance policy less any amounts expended by Seller to collect any such insurance proceeds or to remedy any unsafe conditions at the Premises, in all cases in no event to exceed the amount of the loss.

(b)     Notwithstanding Section (a) of this Section, in the event the cost of repair of damage to the Premises on account of a casualty, as applicable, shall, as assessed by an independent appraiser, exceed five percent (5%) of the Purchase Price, then Purchaser may, at its option, terminate this Agreement by notice to Seller, given on or before the earlier of (i) thirty (30) days after Purchaser receives notice of such casualty from Seller, or (ii) the scheduled Closing Date, whereupon Purchaser shall receive a refund of the Deposit (and no party hereto shall have any further obligation in connection herewith except under those provisions that expressly survive the termination of this Agreement).

(c)     The parties understand and agree that the provisions of this Agreement shall govern and supersede the provision of any law applicable to the Premises governing the effect of fire or other casualty in contracts for real property, including but not limited to Section 5-1311 of the General Obligations Law of the State of New York.

24.     <u>Condemnation</u>. If, prior to the Closing Date, all or substantially all of the Premises is taken (other than a temporary taking), or if Seller shall receive an official notice from any governmental authority having eminent domain power over the Premises of its intention to take, by eminent domain proceeding, all or substantially all of the Premises (a "**Taking**"), then this Agreement shall automatically terminate. Upon termination pursuant to the preceding sentence, the obligations of each party to the other shall terminate without further liability hereunder or otherwise, except that the Deposit and any interest thereon shall be refunded by Seller to Purchaser. In the event of a Taking of the Premises where the condemnation award shall, as assessed by an independent appraiser, exceed ten percent (10%) of the Purchase Price, Seller and Purchaser shall each have the option, exercisable within five (5) days after receipt of notice of such Taking, time being of the essence, to terminate this Agreement by delivering notice of such termination to the other party, whereupon the Deposit shall be returned to Purchaser and this Agreement shall be deemed canceled and of no further force or effect, and neither party shall have any further rights or liabilities against or to the other except pursuant to the provisions of this Agreement which are expressly provided to survive the termination hereof. If a Taking shall occur and neither party shall timely elect to terminate this Agreement, then Purchaser and Seller shall consummate this transaction in accordance with this Agreement, without any abatement of the Purchase Price or any liability or obligation on the part of Seller by reason of such Taking; provided, however, that Seller shall, on the Closing Date, (A) assign and remit to Purchaser the net proceeds of any award or other proceeds of such Taking which may have been collected by Seller as a result of such Taking less the reasonable expenses incurred by Seller in connection with such Taking, and (B) deliver to Purchaser an assignment of Seller's right to any such award or other proceeds which may be payable to Seller as a result of such Taking. The provisions of this <u>Section 24</u> supersede any law applicable to the Premises governing the effect of condemnation in contracts for real property.

25.   <u>Amendments and Waivers.</u> Neither this Agreement nor any of the terms hereof may be terminated, amended or waived orally, but only by an instrument in writing signed by the party against which enforcement of the termination, amendment or waiver is sought.

26.   <u>Assignment of Mortgage</u>. Seller will cause Secured Lender, the holder of existing mortgages encumbering the Property (the "**Existing Mortgages**"), to assign the lien of the Existing Mortgages to Purchaser's designee at the Closing; provided that at least ten (10) days prior to the Closing Date, Purchaser shall provide Seller with the name of Purchaser's designee. At the Closing, Purchaser shall reimburse Seller for all reasonable costs and expenses incurred by Seller in connection with the assignment of mortgage, including, without limitation, Seller's reasonable attorneys' fees.

27.   <u>Interpretation.</u> The table of contents and the headings of the various subdivisions of this Agreement are for convenience of reference only and shall not define or limit any of the terms or provisions hereof. All pronouns shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require. Capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the Plan.

28.   <u>Counterparts.</u> This Agreement may be executed in two or more electronic counterparts, each of which shall be deemed an original, and it shall not be necessary in making proof of this Agreement to produce or account for more than one such counterpart.

29.   <u>Survival</u>. Except as otherwise specifically provided for herein, the representations, warranties, covenants, agreements and indemnities contained in this Agreement, shall not survive the Closing Date, and shall be deemed to have merged or terminated upon the Closing Date.

30.   <u>Business Days</u>. The term or phrase "business days" means any day other than a Saturday, Sunday, federal holiday observed in the United States. In addition, the parties agree that to the extent a deadline hereunder falls on one of the following days, such deadline will be extended by one (1) business day: September 23rd, September 24th, October 2nd, October 7th, October 8th, October 14th and October 15th.

31.   <u>Lender Liability</u>. Notwithstanding anything to the contrary set forth in this Agreement, for the avoidance of doubt, Secured Lender shall have no liability with respect to any representations hereunder, or otherwise in connection with this Agreement or the transactions contemplated hereunder.

32.   <u>Third Party Beneficiaries</u>.    No third party shall have the benefit of any provision of this Agreement nor be entitled to enforce any provision hereof.

**33.   <u>WAIVER OF JURY TRIAL.  THE PARTIES HERETO HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND ANY DOCUMENT EXECUTED IN CONNECTION HEREWITH</u>**

19

**OR RELATED HERETO, OR ANY COURSE OR CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS TRANSACTION.**

*[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]*

*[SIGNATURES APPEAR ON THE FOLLOWING PAGE]*

20

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

**SELLER**:

**EASTGATE WHITEHOUSE, LLC,**
a Delaware limited liability company

By:    DAVID    WALLACE    AS    PLAN
ADMINISTRATOR    FOR    EASTGATE
WHITEHOUSE,  LLC  PURSUANT  TO  THE
CONFIRMED   CHAPTER   11   LIQUIDATING
PLAN   FOR   THE   DEBTOR   FILED   BY
BARCLAYS BANK PLC

By: _____
Name: David Wallace
Title: Plan Administrator

[Signature page to Agreement of Purchase and Sale]

**PURCHASER**:

**MAZAL ECHAD LLC,**
a Delaware limited liability company

By: _____
Name: Orah Mansher
Title: Authorized Signatory

**ESCROW AGENT**:

The undersigned has executed this Agreement solely to agree that it is acting as Escrow Agent in accordance with the terms and conditions of Section 2(a) and Exhibit G of this Agreement.

STEWART TITLE GUARANTY COMPANY

By: _____
Name: Andrea Miller
Title: Escrow Officer

[Signature page to Agreement of Purchase and Sale]

**EXHIBIT A**

**[Form of Assignment of Ground Lease]**

**ASSIGNMENT AND ASSUMPTION OF GROUND LEASE**

THIS ASSIGNMENT AND ASSUMPTION OF GROUND LEASE (this "Assignment") is entered into as of _____, 202__ (the "Assignment Date") among [_____] ("Assignor") and [_____] ("Assignee").

RECITALS

A.    Assignor and 939 First Avenue, LLC, a New York limited liability company ("Ground Lessor"), are parties to that certain that certain ground lease, dated as of June 28, 1956 (the "Initial Ground Lease") between First and Fifty-Second Corporation, a New York corporation, as ground lessor ("Initial Ground Lessor") and 2249 Webster Ave. Corp, a New York corporation and predecessor-in-interest to Seller, as ground lessee (the "Initial Ground Lessee"), as amended by that certain Agreement dated as of November 15, 1978 (the "First Amendment") between First and Fifty Second Realty Company, a New York partnership and successor-in-interest to the Initial Ground Lessor ("Intermediate Ground Lessor"), and Whitehouse Estates, Inc., a New York corporation, successor-in-interest to the Initial Ground Lessee and predecessor-in-interest to Assignor, as ground lessee ("Intermediate Ground Lessee"), as further amended by that certain Extension of Lease dated as of May 2, 2006 (the "Second Amendment," and together with the First Amendment and the Initial Ground Lease, as the same may have been or may be further amended, the "Ground Lease"), between Ground Lessor, as successor-in-interest to the Intermediate Ground Lessor, and Intermediate Ground Lessee, pursuant to which Assignor, upon the terms and conditions set forth therein, ground leased from Ground Lessor certain property located at 939-943 First Avenue, a/k/a 344-350 East 52nd Street, New York, New York, which is commonly known as Eastgate House, as more particularly described on Exhibit A attached hereto (the "Property").

B.    The Ground Lease is evidenced by a memorandum of ground lease recorded on [_____], in Liber [____], Page [____], in the Office of the City Register of the City of New York, New York County.

C.    Assignor desires to assign all of its right, title and interest in, to and under the Ground Lease to Assignee, and Assignee desires to assume all of Assignor's right, title and interest in, to and under the Ground Lease, in accordance with the terms hereinafter set forth.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties agree as follows:

1.    Assignment of Ground Lease.  Assignor hereby assigns, conveys, transfers and sets over to Assignee, its successors and assigns forever, all of Assignor's right, title and interest, as tenant, in, to and under the Ground Lease and all right, title and interest of Assignor in and to the easements, rights of way, servitudes, licenses, rights, privileges and appurtenances, if any, at any

time belonging or in any way pertaining to the Property and in and to all buildings, structures, other improvements and fixtures now standing or at any time hereafter erected upon the Property. Such assignment includes the current unexpired balance of the term of the Ground Lease together with the renewal term thereof and all rights of renewal thereunder.

2.      <u>Assumption Ground Lease</u>.    Assignee does hereby accept the foregoing Assignment, and assumes, covenants and agrees to perform, be bound by, discharge and observe all of the terms, covenants, conditions, duties, obligations, undertakings and liabilities of Assignor under the Ground Lease.  Assignee hereby agrees to perform all agreements and obligations of the Assignor with respect to the Ground Lease arising on and after the Assignment Date.

3.      <u>Representations</u>.  This Assignment is made by Assignor without recourse and without any express or implied representation or warranty whatsoever.

4.      <u>[Intentionally omitted]</u>.

5.      <u>Governing Law</u>.  This Assignment shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of law rules.

6.      <u>Counterparts</u>.  This Assignment may be executed in multiple counterparts, each of which shall be deemed to be an original but all of which taken together shall constitute one and the same instrument.

*[Signatures appear on the following page]*

#520286635_v16

# EXHIBIT B

## [Intentionally Omitted]

**EXHIBIT C**

**[Form Bill of Sale]**

<u>Bill of Sale</u>

Dated: _____, 2025

[_____], as seller ("<u>Seller</u>"), and [_____], a [_____] as purchaser ([individually or collectively, as the context requires,] "<u>Purchaser</u>"), have entered into that certain Agreement of Purchase and Sale, dated as of [_____, 2025] (as the same may be amended, modified and/or supplemented from time to time, the "<u>Agreement</u>"). Defined terms used herein but not otherwise defined shall have the meanings assigned to such terms in the Agreement.

Pursuant to the Agreement, Seller has agreed to sell to Purchaser all furniture, fixtures, equipment and other personal property which are placed in or attached to the Premises and are owned by Seller and used solely in connection with the operation of the Premises (the "<u>Transferred Assets</u>").

Seller, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby sell, grant, assign, convey, transfer and set over unto Purchaser, all of Seller's right, title and interest in and to the Transferred Assets.

TO HAVE AND TO HOLD the same unto Purchaser forever from and after the date hereof.

This Bill of Sale is made without warranty or representation, express or implied, by or recourse against Seller of any kind or nature whatsoever except as set forth in the Agreement.

The Bill of Sale shall be binding upon, and inure to the benefit of, Seller and Purchaser and their respective successors and assigns.

The Bill of Sale shall be governed by, interpreted under, and construed and enforceable in accordance with, the laws of the State of New York.

In the event that the terms of this Bill of Sale conflict with the terms of the Agreement, the Agreement shall control.

[Signature Pages Follow]

#520286635_v16

**EXHIBIT D**

**[Form Assignment and Assumption]**

<u>ASSIGNMENT AND ASSUMPTION AGREEMENT</u>

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT, is dated as of _____ ___ 2025, by and between [_____] ("**Assignor**") and _____, a _____ ("**Assignee**").

A. Assignor and Assignee entered into that certain Agreement of Purchase and Sale ("**Agreement**") dated _____, 2025, for the sale and purchase of a certain "Premises" (as defined in the Agreement).

B. Assignor desires to assign, transfer, set over and deliver to Assignee all of Assignor's right, title and interest in and to the Miscellaneous Property (as defined in the Agreement).

C. Assignee desires to assume the duties and obligations of Assignor with respect to the Miscellaneous Property.

NOW, THEREFORE, in accordance with the Agreement and in consideration of the sum of $10.00, the sufficiency and receipt of which are hereby acknowledged, the parties do hereby covenant and agree as follows and take the following actions:

1. Assignor does hereby assign, transfer, set over and deliver unto Assignee all of the Assignor's right, title and interest, if any, in and to the following, to the extent the same is transferable by Assignor (collectively, "**Intangible Property**"):

   a. the Leases, including any rights and/or claims, causes of action and/or judgments, settlements, proceeds or other rights to payment and/or pending or anticipated actions of Assignor and/or Assignor's affiliates (collectively "**Claims**") against any tenants that are currently occupying the Premises (and/or guarantors of the leases entered into by such tenants), but excluding any Claims against any former tenants that are no longer occupying the Premises;

   b. any and all service, maintenance, supply, operating, vendor, employment, travel, cable service, collective bargaining, yellow pages, barter, voucher, parking, advertising, offsite rental or equipment contracts, leases or other agreements, and any other similar agreement, however termed, written or oral, affecting the use, ownership, maintenance, or operation of all or any part of the Premises (other than any agreements with a franchisor and/or agreements with Assignor's manager) in effect as of the date of this Assignment and Assumption Agreement (collectively, "**Service Contracts**");

c.  any and all licenses, permits, authorizations, certificates of occupancy and other approvals issued by any governmental authority having jurisdiction over the Premises or any portion thereof (excluding any liquor license, if any, and any licenses or franchises granted to Assignor's manager) that are in effect for the current use and operation of the Premises or any portion thereof (collectively, "**Permits**");

d.  any and all guaranties, warranties, websites, domain names, telephone exchange numbers, architectural or engineering plans and specifications, and development rights that exist as of the date of this Assignment and Assumption Agreement and that relate to the Premises, if any, but excluding any rights and/or claims, causes of action and/or judgments, settlements, proceeds or other rights to payment and/or pending or anticipated actions of Assignor and/or Assignor's affiliates from and/or against any former owners of the Premises and/or any former borrowers or guarantors under, arising from or related to any loan held by Assignor and/or Assignor's affiliates (collectively, "**General Intangibles**"); and

e.  any and all rights to the name of the improvements upon the Land.

2.  THE INTANGIBLE PROPERTY IS BEING ASSIGNED "**AS IS**", "**WHERE IS**", AND "**WITH ALL FAULTS**" AS OF THE DATE OF THIS ASSIGNMENT AND ASSUMPTION AGREEMENT, WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER AS TO ITS CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED. ASSIGNEE IS HEREBY ACQUIRING THE INTANGIBLE PROPERTY BASED SOLELY UPON ASSIGNEE'S OWN INDEPENDENT INVESTIGATIONS AND INSPECTIONS OF THAT PREMISES AND NOT IN RELIANCE ON ANY INFORMATION PROVIDED BY ASSIGNOR OR ASSIGNOR'S AGENTS OR CONTRACTORS. ASSIGNOR SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST OR PRESENT, EXPRESS OR IMPLIED, CONCERNING THE INTANGIBLE PROPERTY OR ASSIGNOR'S TITLE THERETO.

3.  Assignee hereby accepts the foregoing assignment of the Intangible Property and hereby assumes all duties and obligations of Assignor under such Intangible Property assigned herein.

4.  This Assignment and Assumption Agreement shall be (a) binding upon, and inure to the benefit of, the parties to this Assignment and Assumption Agreement and their respective heirs, legal representatives, successors and assigns, and (b) construed in accordance with the laws of the state in which the Real Property is located, without regard to the application of choice of law principles.

5.  The parties may execute this Assignment and Assumption Agreement in one or more identical counterparts, all of which when taken together will constitute one and the same instrument. If so executed, each of such counterparts is to be deemed an original for all purposes, and all such counterparts shall, collectively, constitute one agreement, but in making proof of this Assignment, it shall not be necessary to produce or account for more than one such counterpart.

[Signature Pages Follow]

## EXHIBIT E

**[Form Notice to Contractors]**

NOTICE TO SERVICE CONTRACTOR

_____, 2025

RE: [_____]

Dear Service Contractor:

Please be advised that on this date [_____] ("Seller") has transferred the referenced property to _____, a _____ ("**New Owner**"). You must look to the New Owner, and not to Seller, for all payments and other expenses, if any, due under your contract for services provided after this date. All correspondence should be directed to New Owner at _____.

[SIGNATURE PAGE FOLLOWS]

**EXHIBIT F**

**Form of Tenant Notice Letters**

**NOTICE TO TENANT**

September [___], 2025

[TENANT ADDRESS]

_____

_____

_____

**RE:    939 First Avenue a/k/a 350 East 52nd Street, New York, NY 10022**

Dear Tenant:

Please be advised that on this date **EASTGATE WHITEHOUSE LLC**, a Delaware limited liability company **("Seller")** has transferred the referenced property to **MAZAL ECHAD, LLC**, a Delaware limited liability company **("New Owner")**. You must look to the New Owner, and not to Seller, for all payments and other expenses, if any, due under your lease provided after this date. All correspondence should be directed to New Owner at 95-20 63rd Road, Suite S, Rego Park, New York 11374.

**[SIGNATURE PAGE FOLLOWS]**

Very truly yours,

**SELLER**:

**EASTGATE WHITEHOUSE, LLC,**
a Delaware limited liability company

By: DAVID WALLACE AS PLAN ADMINISTRATOR FOR EASTGATE WHITEHOUSE, LLC PURSUANT TO THE CONFIRMED CHAPTER 11 LIQUIDATING PLAN FOR THE DEBTOR FILED BY BARCLAYS BANK PLC

By: _____
Name: David Wallace
Title: Plan Administrator

## EXHIBIT G

## ESCROW PROVISIONS

The Deposit and any other sums (including, without limitation, any interest earned thereon) which the parties agree shall be held in escrow (herein collectively called the "Escrow Deposits"), shall be held by the Escrow Agent, in trust, and disposed of only in accordance with the Plan and Sale Order and the following provisions:

1.      The Escrow Deposit shall be held in a non-interest bearing account.

2.      Except as expressly otherwise set forth in this **Exhibit G**, if for any reason the Closing does not occur and either party makes a written demand upon the Escrow Agent for payment of the Escrow Deposit, the Escrow Agent shall give written notice to the other party of such demand.  If the Escrow Agent either (i) receives written assent from the other party to the proposed payment or (ii) does not receive a written objection from the other party to the proposed payment within ten (10) days after the giving of such notice, the Escrow Agent is hereby authorized to make such payment.  If the Escrow Agent receives such written objection within such period, the Escrow Agent shall continue to hold such amount until otherwise directed by written instructions signed by Seller and Purchaser or a final judgment of a court. If conflicting demands are made by the parties in connection with this Agreement or if Escrow Agent, in good faith, is in doubt as to the action it should take, Escrow Agent, acting solely as a stakeholder, shall have the right to commence an interpleader action in the Supreme Court for New York County and/or to take no further action except in accordance with joint instructions from Seller and Purchaser or in accordance with the final judgment of the court in such action.

3.      If the Closing occurs, the Escrow Agent shall deliver the Escrow Deposits in accordance with the terms of the Plan on the Closing Date.

4.      The parties acknowledge that the Escrow Agent is acting solely as a stakeholder at their request and for their convenience, that the Escrow Agent shall not be deemed to be the agent of either of the parties, and that the Escrow Agent shall not be liable to either of the parties for any action or omission on its part taken or made in good faith, and not in disregard of this Agreement, but shall be liable for any losses, costs, damages, claims, liabilities, expenses, demands or obligations of any kind or nature whatsoever (including reasonable attorneys' fees, expenses and disbursements) incurred by Seller or Purchaser resulting from actions or omissions taken or made by the Escrow Agent involving gross negligence or willful misconduct on the part of the Escrow Agent.  Seller and Purchaser shall jointly and severally indemnify and hold harmless Escrow Agent wee from any damage, cost, liability or expense (including without limitation reasonable attorneys' fees and disbursements either paid to retained attorneys or representing the fair value of legal services rendered by Escrow Agent) which Escrow Agent may incur by acting hereunder, without prejudice to any right either party may have against the other party for any such damage, cost, liability or expense, except to the extent arising from Escrow Agent's gross negligence or willful misconduct.

5.      The provisions of this **<u>Exhibit G</u>** shall survive the Closing (and not be merged therein) or earlier termination of this Agreement.

## EXHIBIT H

## TENANT ESTOPPEL CERTIFICATE

This Tenant Estoppel Certificate (this **"Certificate"**), dated as of the [____] day of [_____], [____], is entered into by [_____] (**"Tenant"**), the tenant under the Lease (as hereinafter defined), with EASTGATE WHITEHOUSE, LLC, a New York limited liability company (**"Landlord"**), as landlord, for certain premises (hereinafter, the **"Premises"**), which are a part of Landlord's real property located at 939-943 First Avenue, a/k/a 344-350 East 52nd Street, New York, New York, and which Premises are more particularly described in the Lease.

Tenant hereby certifies to [_____] (**"Purchaser"**), who, in material reliance on the certifications included in this Certificate, is purchasing the Premises, that as of the date hereof:

Tenant currently leases the Premises, which is comprised of [_____] in the building commonly known as 939-943 First Avenue, a/k/a 344-350 East 52nd Street, New York, New York, containing approximately [_____] square feet pursuant to the lease documents attached as Exhibit A attached hereto and made a part hereof, between Landlord and Tenant (collectively, the **"Lease"**). Exhibit A sets forth a true and complete list of all the lease documents constituting the Lease attached as Exhibit A is a true, complete, and correct copy of the Lease. The Lease is valid and binding and in full force and effect and there has been no amendment, modification, or supplement of any kind or nature varying the stated terms and conditions of the Lease, except as set forth on Exhibit A so attached.

Landlord has delivered, and Tenant has accepted, possession of the Premises and is currently in occupancy of the entire Premises. Tenant has not subleased any portion of the Premises or assigned or otherwise transferred any of its rights under the Lease.

The term of the Lease commenced on [_____] and full rental is now accruing thereunder. The term of the Lease expires on [_____]. Tenant has no right to terminate the Lease other than as a result of a material casualty or condemnation that results in the Landlord being unable to substantially restore the Premises within a reasonable period of time.

Any and all improvements or repairs required to be made by Landlord in, on, or about the Premises have been completed in accordance with the terms of the Lease and to the satisfaction of Tenant. All allowances, reimbursements, or other obligations of Landlord for the payment of monies to or for the benefit of Tenant have been fully paid, all in accordance with the terms of the Lease.

The current monthly base rent payable under the Lease is $[_____]. Rent and all other charges due and payable under the Lease have been paid up to the date that is [_____, ____]. There are no unexpired rent abatements, free rent periods, rent credits, or rent concessions of any kind existing under the Lease.

Tenant is not in default under the Lease and Tenant has not received any notices of default under the Lease which have not been cured and there are no events which have occurred that with the giving of notice or the passage of time, or both, would result in a default by Tenant under the Lease.

Tenant has not sent Landlord any notices of default under the Lease which have not been cured, and to Tenant's knowledge there are no defaults by Landlord under the lease as of the date hereof and there are no events that have occurred that, with the giving of notice or the passage of time, or both, would result in a default by Landlord thereunder. Tenant has no defenses, counterclaims, liens, or claims of offset or credit under the Lease or against rents, or any other claims against Landlord. Tenant has no disputes with Landlord that arise out of the Lease or in any way relate to the Lease or arise out of any other transaction between Tenant and Landlord.

Landlord is holding a security deposit as security for the performance of Tenant's obligations under the Lease, in the sum of $[_____].

Tenant is not using, and has not used, the Premises in violation of any applicable laws, rules, ordinances, or regulations, including but not limited to, any applicable environmental laws, rules, or regulations (collectively, "**Laws**") and there are no actions or other claims pending or threatened against Tenant in connection with any such Laws, nor has Tenant received any notices alleging Tenant's violation of any such Laws.

There are no bankruptcy, reorganization, or insolvency actions, whether voluntary or otherwise, pending or threatened against Tenant. Tenant is not bankrupt or insolvent and has not admitted in writing that it is unable to pay its debts as they mature, consented to or applied for the appointment of a receiver or trustee for itself or for all or part of its property, or made an assignment for the benefit of creditors.

The Lease represents the entire agreement between the parties thereto regarding the Premises.

Tenant has read this Certificate and acknowledges and understands the certifications and representations made herein. Tenant hereby executes this Certificate, intending reliance hereon by Purchaser. Tenant has full authority to execute this Certificate, which has been duly authorized by all necessary action.

[signature page follows]

The undersigned, intending to be legally bound hereby, has duly executed and delivered this Certificate as of the day and year first above written.

TENANT:

[_____]

By: _____
    Name:
    Title:

**EXHIBIT I**

**RESIDENTIAL RENT ROLL AND RETAIL RENT ROLL**

## Rent Roll Analysis

Property: 350 East 52nd Street
*As of 09/23/25*

| Property | Tenant Name | Unit | Unit Type | Rent | Misc Charges | Total Charges | Security Deposit | Move In | Lease End | Last Rent Increase | Increase Amount | Balance | Market Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 350 East 52nd Street | Alvarado, Christophe | 350-01A | Studio | 3,500.00 | 0.00 | 3,500.00 | 0.00 | 7/1/19 | 7/31/26 | 06/01/23 | 3,500.00 | 60,700.00 | 3,200.00 |
| 350 East 52nd Street | Alvarado, Christophe | 350-01B | Studio | 2,500.00 | 0.00 | 2,500.00 | 2,500.00 | 8/1/18 | 7/31/23 | 03/28/24 | 2,500.00 | 71,750.00 | 3,300.00 |
| 350 East 52nd Street | Sullivan, John | 350-01C | 1 1 | 3,045.00 | 0.00 | 3,045.00 | 3,045.00 | 2/1/19 | 1/31/26 | 03/25/24 | 1,689.66 | 0.00 | 4,500.00 |
| 350 East 52nd Street | Anastassov, Anastas | 350-02A | Studio | 2,520.00 | 0.00 | 2,520.00 | 2,520.00 | 1/15/23 | 1/31/26 | 02/01/24 | -2,400.00 | 0.00 | 2,541.37 |
| 350 East 52nd Street | Fernandes, Lilian | 350-02B | Studio | 2,488.00 | 0.00 | 2,488.00 | 2,488.00 | 11/1/18 | 1/31/27 | 02/01/25 | 118.48 | 0.00 | 2,369.52 |
| 350 East 52nd Street | Kaufman, Marcia | 350-02C | 1 1 | 1,548.00 | 0.00 | 1,548.00 | 1,507.26 | 2/1/19 | 1/31/26 | 02/01/25 | 25.78 | 0.00 | 1,481.48 |
| 350 East 52nd Street | <VACANT> | 350-02D | 1 1 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 4,500.00 |
| 350 East 52nd Street | Feigan, Carolyn | 350-02E | Studio | 3,200.00 | 0.00 | 3,200.00 | 3,200.00 | 12/15/20 | 12/31/25 | 04/01/23 | 3,200.00 | 1,050.00 | 3,000.00 |
| 350 East 52nd Street | Passin, Monica | 350-02F | Studio | 1,394.94 | 0.00 | 1,394.94 | 1,577.36 | 4/1/19 | 3/31/26 | 04/01/25 | -92.60 | 0.00 | 1,487.54 |
| 350 East 52nd Street | <VACANT> | 350-02G | 2 2 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 6,000.00 |
| 350 East 52nd Street | <VACANT> | 350-02H | Studio | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 3,000.00 |
| 350 East 52nd Street | Hasan, Zain | 350-02J | Studio | 2,478.00 | 0.00 | 2,478.00 | 2,625.00 | 5/1/19 | 1/31/26 | 02/01/25 | 78.00 | 0.00 | 2,400.00 |
| 350 East 52nd Street | Janet Kilonzo | 350-02K | 1 1 | 2,950.00 | 0.00 | 2,950.00 | 2,600.00 | 6/1/20 | 1/31/26 | 03/26/24 | -2,145.39 | 0.00 | 4,500.00 |
| 350 East 52nd Street | Witlow, Allison | 350-03A | Studio | 1,800.00 | 0.00 | 1,800.00 | 1,800.00 | 4/1/21 | 3/31/22 | 03/25/24 | 1,800.00 | 15,352.58 | 1,800.00 |
| 350 East 52nd Street | Old Super, Admir Ha | 350-03B | Studio | 1,600.40 | 0.00 | 1,600.40 | 0.00 | 1/1/18 | | 06/01/23 | 1,600.40 | 76,418.80 | 3,300.00 |
| 350 East 52nd Street | Li, Melissa | 350-03C | 1 1 | 2,900.00 | 0.00 | 2,900.00 | 2,900.00 | 7/1/21 | 1/31/26 | 04/01/24 | 2,900.00 | 0.00 | 4,500.00 |
| 350 East 52nd Street | Simunovich, Rachel | 350-03D | 1 1 | 4,009.25 | 0.00 | 4,009.25 | 4,009.25 | 6/1/19 | 1/31/26 | 03/25/24 | 4,009.25 | 0.00 | 4,500.00 |
| 350 East 52nd Street | Bluni, Mark | 350-03E | Studio | 3,199.43 | 0.00 | 3,199.43 | 3,200.00 | 7/1/22 | 1/31/26 | 03/26/24 | -3,200.00 | 0.00 | 3,000.00 |
| 350 East 52nd Street | Diamond, Samantha | 350-03F | Studio | 2,828.45 | 0.00 | 2,828.45 | 2,828.45 | 4/1/22 | 3/31/26 | 04/01/25 | -2,803.81 | 0.00 | 2,654.48 |
| 350 East 52nd Street | Degrezia, Tommaso | 350-03G | 2 2 | 3,904.50 | 0.00 | 3,904.50 | 4,200.00 | 7/1/11 | 1/31/26 | 05/14/25 | 104.50 | 4,313.50 | 3,800.00 |
| 350 East 52nd Street | Kaston, Joshua | 350-03H | Studio | 2,183.94 | 0.00 | 2,183.94 | 2,183.94 | 8/1/11 | 1/31/27 | 02/01/25 | 108.94 | 108.94 | 2,075.00 |
| 350 East 52nd Street | Marcus, Rachel | 350-03J | Studio | 2,746.92 | 0.00 | 2,746.92 | 2,746.92 | 3/1/19 | 1/31/27 | 02/01/25 | 67.00 | 0.00 | 2,679.92 |
| 350 East 52nd Street | Simbal, Stacey | 350-03K | 1 1 | 2,700.00 | 0.00 | 2,700.00 | 2,700.00 | 3/1/21 | 1/31/26 | 03/26/24 | -2,145.39 | 0.00 | 4,500.00 |
| 350 East 52nd Street | Puma, Jennifer | 350-04A | Studio | 1,812.31 | 0.00 | 1,812.31 | 1,825.00 | 1/1/11 | 1/31/26 | 02/01/25 | 48.50 | 0.00 | 1,763.81 |
| 350 East 52nd Street | Pearsall, Makenna | 350-04B | Studio | 2,444.01 | 0.00 | 2,444.01 | 2,538.04 | 8/15/21 | 1/31/26 | 08/01/25 | 36.12 | 0.00 | 2,407.89 |
| 350 East 52nd Street | Daskalovski, Ivan | 350-04C | 1 1 | 2,255.00 | 0.00 | 2,255.00 | 2,255.00 | 11/15/20 | 1/31/27 | 02/01/25 | 55.00 | 0.00 | 2,200.00 |
| 350 East 52nd Street | Cassetta, Christophe | 350-04D | 1 1 | 2,877.00 | 0.00 | 2,877.00 | 3,003.00 | 9/1/11 | 1/31/26 | 02/01/25 | 77.00 | 0.00 | 2,800.00 |
| 350 East 52nd Street | <VACANT> | 350-04E | Studio | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 3,077.98 |
| 350 East 52nd Street | Rittberg, Roxanne | 350-04F | Studio | 1,018.86 | 0.00 | 1,018.86 | 1,018.86 | 12/1/22 | 11/30/25 | 12/01/24 | -987.27 | 0.00 | 960.85 |
| 350 East 52nd Street | Obten, Nessa | 350-04G | 2 2 | 3,346.87 | 0.00 | 3,346.87 | 3,361.53 | 10/1/18 | 10/31/26 | 11/01/24 | 89.57 | 0.00 | 3,257.30 |
| 350 East 52nd Street | Dubrow, Phyllis | 350-04H | Studio | 1,511.81 | 0.00 | 1,511.81 | 1,511.79 | 9/1/18 | 8/31/26 | 09/01/25 | 6.60 | 0.00 | 1,464.92 |
| 350 East 52nd Street | Ricciardella, Leo An | 350-04J | Studio | 1,872.00 | 0.00 | 1,872.00 | 1,900.00 | 5/8/10 | 1/31/27 | 02/01/25 | 72.00 | 0.00 | 1,800.00 |
| 350 East 52nd Street | Koeppel, Harrison | 350-04K | 1 1 | 2,783.56 | 0.00 | 2,783.56 | 0.00 | 1/1/21 | 12/31/22 | 03/26/24 | -1,330.73 | 0.00 | 2,783.56 |
| 350 East 52nd Street | Rivera, Sharon | 350-05A | Studio | 3,045.00 | 0.00 | 3,045.00 | 2,825.00 | 8/1/18 | 6/30/25 | 07/01/24 | 3,045.00 | 70,725.00 | 3,000.00 |
| 350 East 52nd Street | Stevens, Emilia | 350-05B | Studio | 2,650.00 | 0.00 | 2,650.00 | 2,650.00 | 8/1/19 | 1/31/26 | 03/25/24 | 2,650.00 | 0.00 | 3,000.00 |
| 350 East 52nd Street | Parvatharaj, Hemant | 350-05C | 1 1 | 3,265.48 | 0.00 | 3,265.48 | 3,265.48 | 7/1/19 | 1/31/26 | 03/26/24 | -1,355.54 | 0.00 | 4,500.00 |
| 350 East 52nd Street | <VACANT> | 350-05D | 1 1 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 2,145.39 |
| 350 East 52nd Street | Francis, Kristin | 350-05E | Studio | 3,250.00 | 0.00 | 3,250.00 | 2,820.00 | 12/1/20 | 5/31/25 | 06/01/24 | 3,250.00 | 50.00 | 3,000.00 |
| 350 East 52nd Street | Koeppel, Ruth | 350-05F | Studio | 1,424.04 | 0.00 | 1,424.04 | 1,424.04 | 7/1/19 | 5/31/26 | 06/01/25 | 6.21 | 6.21 | 1,379.88 |
| 350 East 52nd Street | Ademovi, Jasmina | 350-05G | 2 2 | 3,578.00 | 0.00 | 3,578.00 | 0.00 | 8/1/19 | 8/31/26 | 08/25/25 | 3,578.00 | 7,156.00 | 3,578.75 |

| Property | Tenant Name | Unit | Unit Type | Rent | Misc Charges | Total Charges | Security Deposit | Move In | Lease End | Last Rent Increase | Increase Amount | Balance | Market Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 350 East 52nd Street | Aptaker, Jason & Die | 350-05H | Studio | 2,285.10 | 0.00 | 2,285.10 | 2,285.00 | 5/1/11 | 1/31/26 | 02/01/25 | 61.16 | 0.00 | 2,323.94 |
| 350 East 52nd Street | Katz, Shaby | 350-05J | Studio | 1,947.50 | 0.00 | 1,947.50 | 1,947.50 | 2/1/21 | 1/31/27 | 02/01/25 | 47.50 | 0.00 | 1,900.00 |
| 350 East 52nd Street | <VACANT> | 350-05K | 1 1 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 4,500.00 |
| 350 East 52nd Street | <VACANT> | 350-06A | Studio | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 2,533.10 |
| 350 East 52nd Street | Yoon, Calvin | 350-06B | Studio | 2,560.08 | 0.00 | 2,560.08 | 2,560.08 | 8/15/20 | 1/31/27 | 02/01/25 | 25.35 | 2,610.08 | 2,534.73 |
| 350 East 52nd Street | Sandhu, Harnoor | 350-06C | 1 1 | 4,320.00 | 0.00 | 4,320.00 | 4,320.00 | 5/1/24 | 4/30/26 | 04/23/25 | 320.00 | -2,000.00 | 4,500.00 |
| 350 East 52nd Street | Haber, Les | 350-06D | 1 1 | 2,374.87 | 0.00 | 2,374.87 | 2,374.87 | 6/1/18 | 5/31/26 | 06/01/25 | 10.36 | 0.00 | 2,301.23 |
| 350 East 52nd Street | Bowe, Carolina | 350-06E | Studio | 2,869.45 | 0.00 | 2,869.45 | 2,868.95 | 4/1/21 | 3/31/26 | 04/01/25 | 76.80 | 0.00 | 2,711.31 |
| 350 East 52nd Street | Badiner, Alisa | 350-06F | Studio | 2,153.77 | 0.00 | 2,153.77 | 2,153.77 | 3/1/11 | 1/31/26 | 02/01/25 | 57.64 | 0.00 | 2,096.13 |
| 350 East 52nd Street | Swanson, Kirk &Jenr | 350-06G | 2 2 | 4,368.00 | 0.00 | 4,368.00 | 4,368.00 | 12/15/10 | 1/31/27 | 02/01/25 | 168.00 | -81.00 | 4,200.00 |
| 350 East 52nd Street | Jacobi, Eliza | 350-06H | Studio | 2,193.51 | 0.00 | 2,193.51 | 2,171.79 | 7/15/20 | 1/31/27 | 02/01/25 | 21.72 | 0.00 | 2,171.79 |
| 350 East 52nd Street | Lustosa-Sary, Roque | 350-06J | Studio | 2,408.75 | 0.00 | 2,408.75 | 2,408.75 | 8/1/20 | 1/31/27 | 02/01/25 | 58.75 | 0.00 | 2,350.00 |
| 350 East 52nd Street | Skyler Valentino | 350-06K | 1 1 | 2,178.56 | 0.00 | 2,178.56 | 2,188.10 | 10/1/21 | 1/31/27 | 02/01/25 | 58.31 | 0.00 | 1,731.70 |
| 350 East 52nd Street | Cohen, Karen | 350-07A | Studio | 1,836.26 | 0.00 | 1,836.26 | 1,836.26 | 3/1/18 | 2/28/26 | 03/01/25 | 56.94 | 0.00 | 1,731.70 |
| 350 East 52nd Street | Bucca, Caroline | 350-07B | Studio | 1,278.26 | 0.00 | 1,278.26 | 1,278.26 | 2/15/21 | 2/28/26 | 03/01/25 | 1,278.26 | 0.00 | 1,205.47 |
| 350 East 52nd Street | <VACANT> | 350-07C | 1 1 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 4,500.00 |
| 350 East 52nd Street | <VACANT> | 350-07D | 1 1 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 4,500.00 |
| 350 East 52nd Street | Perlman, Doris | 350-07E | Studio | 1,152.33 | 0.00 | 1,152.33 | 1,152.33 | 7/1/18 | 6/30/26 | 07/01/25 | 5.02 | 0.00 | 1,116.60 |
| 350 East 52nd Street | Cohen, Gerald | 350-07F | Studio | 2,211.67 | 0.00 | 2,211.67 | 2,325.00 | 11/1/11 | 10/31/10 | 03/26/24 | -700.78 | 209,384.20 | 2,211.67 |
| 350 East 52nd Street | Kennedy, Brian | 350-07G | 2 2 | 3,800.00 | 0.00 | 3,800.00 | 3,800.00 | 5/1/21 | 1/31/26 | 03/26/24 | -2,133.92 | 11,742.50 | 6,000.00 |
| 350 East 52nd Street | Connelly, Sean | 350-07H | Studio | 3,250.00 | 0.00 | 3,250.00 | 3,250.00 | 2/25/24 | 2/24/26 | 02/25/25 | -3,200.00 | 0.00 | 3,000.00 |
| 350 East 52nd Street | Weber, Ryan | 350-07J | Studio | 2,082.00 | 0.00 | 2,082.00 | 2,082.00 | 7/1/25 | 6/30/26 | 07/01/25 | 2,082.00 | 0.00 | 2,021.01 |
| 350 East 52nd Street | <VACANT> | 350-07K | 1 1 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 4,500.00 |
| 350 East 52nd Street | Louie, Jasmine | 350-08A | Studio | 2,079.74 | 0.00 | 2,079.74 | 2,079.74 | 9/1/23 | 8/31/25 | 09/01/24 | 60.57 | 0.00 | 1,955.61 |
| 350 East 52nd Street | Schwartz, Joseph | 350-08B | Studio | 1,989.35 | 0.00 | 1,989.35 | 1,989.35 | 9/1/17 | 8/31/25 | 09/01/23 | 94.73 | 1,968.05 | 1,894.62 |
| 350 East 52nd Street | Hristov, Darjan | 350-08C | 1 1 | 2,200.00 | 0.00 | 2,200.00 | 2,200.00 | 11/5/20 | 1/31/26 | 02/03/25 | -2,200.00 | 14,550.00 | 4,500.00 |
| 350 East 52nd Street | Lekperic, Edin | 350-08D | 1 1 | 3,631.00 | 0.00 | 3,631.00 | 3,631.00 | 5/1/25 | 3/1/26 | 05/01/25 | 3,631.00 | 0.00 | 3,516.24 |
| 350 East 52nd Street | Merckling, Tessa | 350-08E | Studio | 2,550.00 | 0.00 | 2,550.00 | 2,550.00 | 10/1/18 | 1/31/26 | 03/26/24 | -876.96 | 0.00 | 3,000.00 |
| 350 East 52nd Street | <VACANT> | 350-08F | Studio | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 1,328.68 |
| 350 East 52nd Street | <VACANT> | 350-08G | 2 2 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 6,000.00 |
| 350 East 52nd Street | Dorbian, Joan | 350-08H | Studio | 1,512.30 | 0.00 | 1,512.30 | 1,512.30 | 11/1/18 | 5/31/27 | 05/14/25 | 75.44 | 0.00 | 1,395.01 |
| 350 East 52nd Street | Mizutani, Seiko | 350-08J | Studio | 3,103.23 | 0.00 | 3,103.23 | 3,103.23 | 4/1/11 | 1/31/27 | 02/01/25 | 223.20 | 0.00 | 1,395.01 |
| 350 East 52nd Street | Salvit, Robert | 350-08K | 1 1 | 3,052.25 | 0.00 | 3,052.25 | 3,052.25 | 3/1/11 | 1/31/27 | 02/01/25 | 152.25 | 301.00 | 2,900.00 |
| 350 East 52nd Street | Nelson, Haley | 350-09A | Studio | 2,473.00 | 0.00 | 2,473.00 | 2,473.00 | 3/1/25 | 2/28/26 | 03/01/25 | 2,473.00 | 0.00 | 2,472.54 |
| 350 East 52nd Street | Malykin, Jack | 350-09B | Studio | 2,650.00 | 0.00 | 2,650.00 | 868.28 | 12/1/22 | 11/30/24 | 03/26/24 | -868.28 | 36,594.08 | 3,000.00 |
| 350 East 52nd Street | Bergey, Seth | 350-09C | 1 1 | 3,700.00 | 0.00 | 3,700.00 | 3,700.00 | 7/1/19 | 1/31/26 | 03/26/24 | -1,355.54 | 0.00 | 3,700.00 |
| 350 East 52nd Street | Bozzo, Alessandra | 350-09D | 1 1 | 2,750.00 | 0.00 | 2,750.00 | 2,750.00 | 2/1/21 | 1/31/26 | 03/26/24 | -2,145.39 | 0.00 | 4,500.00 |
| 350 East 52nd Street | Khairy, Mostafa | 350-09E | Studio | 2,658.46 | 0.00 | 2,658.46 | 2,658.46 | 5/15/24 | 5/15/26 | 05/16/25 | 71.15 | 0.00 | 2,587.31 |
| 350 East 52nd Street | Chen, Diana | 350-09F | Studio | 3,300.00 | 0.00 | 3,300.00 | 3,300.00 | 2/22/24 | 2/21/26 | 02/22/25 | 3,300.00 | 0.00 | 3,000.00 |
| 350 East 52nd Street | <VACANT> | 350-09G | 2 2 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 6,000.00 |
| 350 East 52nd Street | Walter, Shayna | 350-09H | Studio | 2,044.74 | 0.00 | 2,044.74 | 2,150.00 | 9/1/11 | 1/31/27 | 02/01/25 | 101.99 | 0.00 | 1,942.75 |
| 350 East 52nd Street | Bass, Gabrielle | 350-09J | Studio | 1,950.00 | 0.00 | 1,950.00 | 876.96 | 12/1/22 | 11/30/24 | 03/26/24 | -876.96 | 24,097.56 | 1,950.00 |
| 350 East 52nd Street | Marques, Sany | 350-09K | 1 1 | 2,998.57 | 0.00 | 2,998.57 | 2,998.57 | 7/1/19 | 1/31/26 | 02/01/25 | 2,998.57 | 0.00 | 2,998.57 |
| 350 East 52nd Street | Bannon, Finn Liam | 350-10A | Studio | 2,404.00 | 0.00 | 2,404.00 | 2,404.00 | 9/1/25 | 8/31/26 | 08/25/25 | 2,404.00 | 0.00 | 2,404.00 |
| 350 East 52nd Street | McGrath, Maryanne | 350-10B | Studio | 2,233.00 | 0.00 | 2,233.00 | 2,255.00 | 9/1/20 | 1/31/26 | 08/01/25 | 33.00 | -2,200.00 | 2,200.00 |
| 350 East 52nd Street | Da Cruz, Vera | 350-10C | 1 1 | 1,426.50 | 0.00 | 1,426.50 | 1,426.50 | 12/15/22 | 1/31/27 | 02/01/25 | 1,426.50 | 0.00 | 1,899.77 |

| Property | Tenant Name | Unit | Unit Type | Rent | Misc Charges | Total Charges | Security Deposit | Move In | Lease End | Last Rent Increase | Increase Amount | Balance | Market Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 350 East 52nd Street | Glasser, Kate | 350-10D | 1 1 | 3,009.00 | 0.00 | 3,009.00 | 3,009.00 | 7/1/25 | 7/31/26 | 07/01/25 | 3,009.00 | -3,171.00 | 2,950.00 |
| 350 East 52nd Street | Brodsky, Logan | 350-10E | Studio | 2,665.90 | -39.40 | 2,626.50 | 2,550.00 | 8/1/22 | 7/31/25 | 08/01/24 | 77.65 | 5,000.00 | 2,588.25 |
| 350 East 52nd Street | Asher, Joan | 350-10F | Studio | 1,102.61 | 0.00 | 1,102.61 | 1,102.61 | 2/1/18 | 1/31/26 | 02/01/25 | 34.19 | 265.76 | 1,039.82 |
| 350 East 52nd Street | <VACANT> | 350-10G | 2 2 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 6,000.00 |
| 350 East 52nd Street | Nitzberg, Emily | 350-10H | Studio | 2,310.00 | 0.00 | 2,310.00 | 2,310.00 | 3/1/25 | 2/28/26 | 03/01/25 | 2,310.00 | 0.00 | 2,309.76 |
| 350 East 52nd Street | Moran, Kelly | 350-10J | Studio | 1,288.62 | 0.00 | 1,288.62 | 1,288.62 | 7/1/22 | 6/30/26 | 06/25/25 | -47.98 | 0.00 | 1,212.33 |
| 350 East 52nd Street | Feuer, Gabrielle | 350-10K | 1 1 | 5,685.00 | 0.00 | 5,685.00 | 5,610.00 | 9/1/22 | 10/31/25 | 11/01/24 | 75.00 | 0.00 | 4,500.00 |
| 350 East 52nd Street | Goldenberg, Max | 350-11A | Studio | 2,662.46 | 0.00 | 2,662.46 | 2,591.20 | 6/15/22 | 6/14/26 | 06/15/25 | 71.26 | 0.00 | 2,515.73 |
| 350 East 52nd Street | Qualley, Shade | 350-11B | Studio | 2,081.76 | 0.00 | 2,081.76 | 2,050.00 | 4/1/21 | 1/31/26 | 08/01/25 | 30.76 | 0.00 | 2,515.73 |
| 350 East 52nd Street | Ademovi - Super, He | 350-11C | 1 1 | 3,500.00 | -3,500.00 | 0.00 | 0.00 | 1/1/23 | | 04/01/24 | 2,453.72 | 0.00 | 4,500.00 |
| 350 East 52nd Street | <VACANT> | 350-11D | 1 1 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 4,500.00 |
| 350 East 52nd Street | <VACANT> | 350-11E | Studio | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 1,375.28 |
| 350 East 52nd Street | <VACANT> | 350-11F | Studio | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 3,155.93 |
| 350 East 52nd Street | Kirschner, Jared | 350-11G | 2 2 | 2,533.89 | 0.00 | 2,533.89 | 2,700.00 | 12/1/21 | 11/30/25 | 12/01/24 | 2,533.89 | 0.00 | 2,389.61 |
| 350 East 52nd Street | Krittcher, Paige | 350-11H | Studio | 2,777.53 | 0.00 | 2,777.53 | 2,789.69 | 9/15/21 | 5/14/25 | 07/01/24 | 2,777.53 | 2,877.53 | 2,703.19 |
| 350 East 52nd Street | Oro, Francine | 350-11J | Studio | 1,206.69 | 0.00 | 1,206.69 | 1,206.79 | 5/1/18 | 4/30/26 | 05/01/25 | 37.42 | -365.59 | 1,137.92 |
| 350 East 52nd Street | Callamaras, Paul | 350-11K | 1 1 | 2,700.00 | 0.00 | 2,700.00 | 2,700.00 | 11/15/21 | 1/31/26 | 04/01/24 | -2,089.92 | 100.00 | 4,500.00 |
| 350 East 52nd Street | Sternschein, Samant | 350-12A | Studio | 3,180.66 | -537.73 | 2,642.93 | 2,744.71 | 11/19/20 | 11/30/26 | 12/01/24 | 85.13 | 0.00 | 3,095.53 |
| 350 East 52nd Street | Hunter, Laurence | 350-12B | Studio | 1,642.92 | 0.00 | 1,642.92 | 1,642.92 | 9/1/17 | 5/31/26 | 06/01/25 | 7.16 | 0.00 | 1,591.98 |
| 350 East 52nd Street | Rose, Richard | 350-12C | 1 1 | 3,120.00 | 0.00 | 3,120.00 | 3,000.00 | 9/1/11 | 1/31/27 | 02/01/25 | 120.00 | 0.00 | 3,000.00 |
| 350 East 52nd Street | Cohn, Amanda | 350-12D | 1 1 | 1,484.57 | 0.00 | 1,484.57 | 1,484.57 | 12/15/22 | 2/28/27 | 03/01/25 | 74.00 | 0.00 | 3,200.00 |
| 350 East 52nd Street | Reynolds, Kaylee | 350-12E | Studio | 1,725.00 | 0.00 | 1,725.00 | 1,725.50 | 11/15/20 | 1/31/26 | 08/01/25 | 25.00 | 0.00 | 1,700.00 |
| 350 East 52nd Street | <VACANT> | 350-12F | Studio | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 3,000.00 |
| 350 East 52nd Street | <VACANT> | 350-12G | 2 2 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 6,000.00 |
| 350 East 52nd Street | Cagnassola, Laurie | 350-12H | Studio | 2,194.50 | 0.00 | 2,194.50 | 4,200.00 | 4/1/11 | 1/31/27 | 02/01/25 | 94.50 | 2,773.50 | 2,100.00 |
| 350 East 52nd Street | Ariel, Ron | 350-12J | Studio | 2,105.00 | 0.00 | 2,105.00 | 2,105.00 | 4/1/11 | 1/31/27 | 02/01/25 | 105.00 | 0.00 | 2,000.00 |
| 350 East 52nd Street | Stickles, Shannon | 350-12K | 1 1 | 5,100.00 | 0.00 | 5,100.00 | 5,100.00 | 9/15/24 | 9/15/25 | 10/01/24 | 5,100.00 | 0.00 | 4,500.00 |
| 350 East 52nd Street | <VACANT> | 350-14A | Studio | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 3,000.00 |
| 350 East 52nd Street | Lurie, Michelle | 350-14B | Studio | 2,069.83 | 0.00 | 2,069.83 | 2,014.43 | 8/1/24 | 7/31/26 | 07/25/25 | 55.40 | 0.00 | 2,014.43 |
| 350 East 52nd Street | Chu, Brandon | 350-14C | 1 1 | 2,588.13 | 0.00 | 2,588.13 | 2,588.13 | 12/14/20 | 1/31/26 | 03/26/24 | -1,257.86 | 0.00 | 4,500.00 |
| 350 East 52nd Street | <VACANT> | 350-14D | 1 1 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 4,500.00 |
| 350 East 52nd Street | Morel, Sofia Tortora | 350-14E | Studio | 2,357.50 | 0.00 | 2,357.50 | 2,357.50 | 8/1/21 | 1/31/27 | 02/01/25 | 57.50 | 0.00 | 2,675.00 |
| 350 East 52nd Street | Arden, Maxwell | 350-14F | Studio | 2,599.87 | 0.00 | 2,599.87 | 2,599.87 | 1/1/25 | 12/31/25 | 02/01/25 | 2,599.87 | 0.00 | 2,599.87 |
| 350 East 52nd Street | Maya Leveen | 350-14G | 2 2 | 3,700.00 | 0.00 | 3,700.00 | 3,700.00 | 1/15/21 | 1/31/26 | 03/26/24 | -2,133.92 | 0.00 | 6,000.00 |
| 350 East 52nd Street | Hirakawa, Ai | 350-14H | Studio | 2,564.69 | 0.00 | 2,564.69 | 2,564.69 | 6/1/19 | 1/31/27 | 02/01/25 | 62.55 | 0.00 | 2,502.14 |
| 350 East 52nd Street | Garcia, Mariana | 350-14J | Studio | 2,500.00 | 0.00 | 2,500.00 | 2,500.00 | 12/1/19 | 1/31/26 | 03/26/24 | -876.96 | 0.00 | 3,000.00 |
| 350 East 52nd Street | Sentissi, Sirine | 350-14K | 1 1 | 3,049.20 | 0.00 | 3,049.20 | 3,049.20 | 12/1/20 | 6/30/27 | 07/01/24 | 249.20 | -580.22 | 4,500.00 |
| 350 East 52nd Street | Koprswski, Kathleen | 350-15A | Studio | 3,400.00 | 0.00 | 3,400.00 | 3,400.00 | 3/1/22 | 2/28/27 | 03/01/25 | 100.00 | 0.00 | 3,000.00 |
| 350 East 52nd Street | Switzer, Scott | 350-15B | Studio | 2,594.91 | 0.00 | 2,594.91 | 2,620.47 | 3/1/19 | 1/31/26 | 02/01/25 | 38.35 | 0.00 | 2,556.56 |
| 350 East 52nd Street | <VACANT> | 350-15E | 1 1 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 4,500.00 |
| 350 East 52nd Street | <VACANT> | 350-15F | Studio | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 2,018.43 |
| 350 East 52nd Street | <VACANT> | 350-15G | 2 2 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 6,000.00 |
| 350 East 52nd Street | Torffield, Jack & Mar | 350-15H | Studio | 1,318.36 | 0.00 | 1,318.36 | 1,318.36 | 2/1/18 | 1/31/26 | 02/01/25 | 35.28 | 0.00 | 1,245.71 |
| 350 East 52nd Street | <VACANT> | 350-15J | Studio | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 2,415.00 |
| 350 East 52nd Street | Klau, Mindy | 350-15K | 1 1 | 3,136.69 | 0.00 | 3,136.69 | 3,136.71 | 3/1/19 | 2/28/26 | 03/01/25 | -3,123.01 | 80,708.96 | 3,039.43 |
| 350 East 52nd Street | LLC, Icon parking Ho | 350-GARAG | Commercial | 0.00 | 43,121.64 | 43,121.64 | 0.00 | 1/1/20 | 12/31/35 | | 0.00 | 41,970.10 | 43,121.64 |

| Property | Tenant Name | Unit | Unit Type | Rent | Misc Charges | Total Charges | Security Deposit | Move In | Lease End | Last Rent Increase | Increase Amount | Balance | Market Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 350 East 52nd Street | Ardai, Tibor | 350-PHA | 2 2 | 3,193.89 | 0.00 | 3,193.89 | 3,193.89 | 8/1/18 | 7/31/25 | 08/01/24 | 93.02 | 0.00 | 3,100.87 |
| 350 East 52nd Street | Davison, Jena | 350-PHB | 2 2 | 3,919.34 | 0.00 | 3,919.34 | 3,919.34 | 5/1/19 | 1/31/26 | 03/26/24 | -876.96 | 0.00 | 3,919.34 |
| 350 East 52nd Street | Keenaghan, Kenneth | 350-PHC | 1 1 | 3,500.00 | 0.00 | 3,500.00 | 3,500.00 | 5/1/21 | 1/31/26 | 03/26/24 | -2,009.54 | 0.00 | 3,500.00 |
| 350 East 52nd Street | Fernandes, Andrew | 350-PHD | 2 2 | 3,985.62 | 0.00 | 3,985.62 | 3,985.62 | 6/1/21 | 1/31/27 | 02/01/25 | 97.21 | -800.00 | 3,888.41 |
| 350 East 52nd Street | Inc, Mumbah Style P | 350-ST1 | Commercial | 0.00 | 16,962.05 | 16,962.05 | 60,000.00 | 4/1/14 | 3/31/24 | | 0.00 | 17,540.39 | 16,962.02 |
| 350 East 52nd Street | <VACANT> | 350-ST2 | Commercial | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 0.00 |
| 350 East 52nd Street | Grill, 1St Ave. Panini | 350-ST3&4 | Commercial | 15,900.00 | 0.00 | 15,900.00 | 31,800.00 | 4/1/25 | 6/30/40 | 07/01/25 | 15,900.00 | 17,046.76 | 15,900.00 |
| 350 East 52nd Street | <VACANT> | 350-ST5 | Commercial | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 0.00 |

| | | | | Rent | Misc Charges | Total Charges | Security Deposit | | | | Increase Amount | Balance | Market Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 303,061.16 | 56,006.56 | 359,067.72 | 362,537.04 | | | | 51,064.10 | 767,983.69 | 481,830.04 |

## Report Summary

| Detail | Value |
|---|---|
| Total Possible Rent | 303,061.16 |
| Vacancy Rent | 0.00 |
| Occupied Unit Rent | 303,061.16 |
| # of Units | 140 |
| Vacant Units | 27 |
| Occupancy | 80.71% |

## SCHEDULE 1

### Description of Land

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the Southerly side of Fifty-Second Street and the Westerly side of First Avenue;

RUNNING THENCE Southerly, along the Westerly side of First Avenue, seventy-seven feet, five inches;

THENCE Westerly and parallel with the Southerly side of Fifty-Second Street and part of the way through a party wall, one hundred feet;

THENCE again Southerly, and parallel with the Westerly side of First Avenue, twenty-two feet, three inches;

THENCE again Westerly and parallel with the Southerly side of Fifty-Second Street, thirty feet;

THENCE again Southerly, and parallel with the Westerly side of First Avenue, nine inches to the center line of the block between Fifty-First and Fifty-Second Streets;

THENCE again Westerly, parallel with the Southerly side of Fifty-Second Street, twenty feet;

THENCE Northerly, parallel with the Westerly side of First Avenue and part of the way through a party wall, one hundred feet, five inches to the Southerly side of Fifty-Second Street; and

THENCE Easterly along the Southerly side of Fifty-Second Street, one hundred fifty feet to the point or place of BEGINNING.

**TOGETHER** with all the right, title and interest in and to the land lying in the street in front of and adjoining said premises.

## SCHEDULE 3

| Violation # | BIN | Compliance Type | Violation Status | Civil Penalty |
|---|---|---|---|---|
| | | | | |
| VIO-FTF-PS-INITL-202312-0006908 | 1039661 | Parking Structures | Active | $27,000.00 |
| 022222FISPNRF00442 (http://a810- | 1039661 | Facades | Active | $120,000.00 |
| VIO-FTF-EN-BENCH-202411-0009611 | 1039661 | Benchmarking | Active | $500.00 |
| VIO-FTF-EN-BENCH-202502-0084419 | 1039661 | Benchmarking | Active | $500.00 |

## <u>SCHEDULE 4</u>

- Allessandra Bozzo v. Eastgate Whitehouse, LLC et al, filed in the New York County Supreme Court on September 25, 2025, case number not yet assigned.

- Eastgate Whitehouse LLC v. Gerald Cohen, filed in the New York County Civil Court – Landlord and Tenant Division on August 14, 2025, case number LT-309798-25/NY.

- David Wallace, as Chapter 11 Plan Administrator of v. Koeppel et al, Docket No. 7:24-ap-07032 (Bankr. S.D.N.Y. Aug 19, 2024), Court Docket

- David Wallace, as Chapter 11 Plan Administrator of v. Koeppel et al, Docket No. 7:24-ap-07028 (Bankr S.D.N.Y. Aug 16, 2024), Court Docket

- David Wallace, as Chapter 11 Plan Administrator of v. Big Man City Laundry Limited et al, Docket No. 7:24-ap-07015 (Bankr S.D.N.Y. June 28, 2024), Court Docket

- EASTGATE WHITEHOUSE LLC vs. BEAUTY PLUS INC. ET AL, Docket No. 150242/2023 (N.Y. Sup Ct. Jan 09, 2023), Court Docket

- Eastgate Whitehouse LLC v. Koeppel et al, Docket No. 7:22-ap-07046 (Bankr. S.D.N.Y. Nov 14, 2022), Court Docket

- Eastgate Whitehouse LLC and Whitehouse Estates, Inc., Docket No. 7:22-bk-22635 (Bankr. S.D.N.Y. Aug 19, 2022), Court Docket

- Wilmington Trust, National Association, as Trustee for the Benefit of the Registered holders of Wells Fargo Commercial Mortgage Trust 2018-C46, Commercial Mortgage Pass-Through Certificates, Series 2018-C46 v. Eastgate Whitehouse LLC et al, Docket No. 1:22-cv-04326 (S.D.N.Y. May 25, 2022), Court Docket

- EASTGATE WHITEHOUSE LLC vs. CHATEL,GINA, Docket No. 4060727 (Judgments and Liens Dec 23, 2021), Court Docket

- KATHRYN CASEY et al vs. WHITEHOUSE ESTATES INC et al, Docket No. 2021-04404 (N.Y. App. Div. Nov 26, 2021), Court Docket

- KATHRYN CASEY et al vs. WHITEHOUSE ESTATES INC et al, Docket No. 2021-01304 (N.Y. App. Div. Apr 15, 2021), Court Docket

- Valasquez v. 939 Mitchell Market Inc. et al, Docket No. 1:21-cv-02949 (S.D.N.Y. Apr 06, 2021), Court Docket

- KATHRYN CASEY et al vs. WHITEHOUSE ESTATES INC et al, Docket No. 2021-00203 (N.Y. App. Div. Jan 19, 2021), Court Docket

- EASTGATE WHITEHOUSE LLC vs. LAURIE CAGNASSOLA, Docket No. 2020-05011 (N.Y. App. Div. Dec 29, 2020), Court Docket

- KATHRYN CASEY eta al vs. WHITEHOUSE ESTATES INC et al, Docket No. 2020-03001 (N.Y. App. Div. Jul 09, 2020), Court Docket

- KATHRYN CASEY et al vs. WHITEHOUSE ESTATES INC et al, Docket No. 2020-02940 (N.Y. App. Div. Jul 07, 2020), Court Docket

- EASTGATE WHITEHOUSE LLC vs. GISA CHATEL, Docket No. 651779/2020 (N.Y. Sup Ct. Mar 19, 2020), Court Docket

- EASTGATE WHITEHOUSE LLC vs. ERICA BERNSTEIN, Docket No. 651263/2020 (N.Y. Sup Ct. Feb 26, 2020), Court Docket

- EASTGATE WHITEHOUSE LLC vs. GELLER, DANIEL, Docket No. 161572/2019 (N.Y. Sup Ct. Nov 27, 2019), Court Docket

- EASTGATE WHITEHOUSE LLC vs. CAGNASSOLA, LAURIE, Docket No. 161569/2019 (N.Y. Sup Ct. Nov 27, 2019), Court Docket

- EASTGATE WHITEHOUSE LLC vs. GORDON H. SMITH CORPORATION, Docket No. 656231/2018 (N.Y. Sup Ct. Dec 13, 2018), Court Docket

- EASTGATE WHITEHOUSE LLC vs. V.C. DRYWALL & REMODELING, LLC, Docket No. 161617/2018 (N.Y. Sup Ct. Dec 13, 2018), Court Docket

- EASTGATE WHITEHOUSE LLC vs. BEEKMAN INTERNATIONAL CENTER, Docket No. 155611/2018 (N.Y. Sup Ct. Jun 15, 2018), Court Docket

- EASTGATE WHITEHOUSE LLC vs. 939 FIRST AVENUE LLC, Docket No. 154744/2018 (N.Y. Sup Ct. May 22, 2018), Court Docket

- JERRICK ASSOCIATES INC vs. 939 FIRST AVENUE LLC, Docket No. 3658638 (Judgments and Liens Oct 04, 2017), Court Docket

- WHITEHOUSE ESTATES INC. v. 939 FIRST AVENUE LLC, Docket No. 0159333/2013 (N.Y. County Clerk, New York County 10/10/2013), Court Docket

- CASEY, KATHRYN vs. WHITEHOUSE ESTATES, Docket No. 111723/2011 (N.Y. Sup Ct. Jan 18, 2012), Court Docket

- Eastgate Whitehouse LLC v. Support Parking LLC, TMO II LLC (Case No. 651154/2019; Filed On 02/25/2019 in New York County Supreme Court)

- EASTGATE WHITEHOUSE LLC v. ADMIR HAXHIU et al (Case No. LT-309798-25/NY, Received on 06/05/2025 in the New York County Civil Court – Landlord and Tenant Division

- EASTGATE WHITEHOUSE LLC v. CHRISTOPHER ALVARADO (Case No. LT-308770-25/NY, Received on 05/16/2025 in the New York County Civil County – Landlord and Tenant Division)

- EASTGATE WHITEHOUSE LLC v. GABRIELLE BASS (Case No. LT-308776-25/NY, Received on 05/16/2025 in the New York County Civil County – Landlord and Tenant Division)

- EASTGATE WHITEHOUSE LLC v. CHRISTOPHER ALVARADO (Case No. LT-308764-25/NY, Received on 05/16/2025 in the New York County Civil County – Landlord and Tenant Division)

- EASTGATE WHITEHOUSE LLC v. JACK MALYKIN et al (Case No. LT-307210-25/NY, Received on 04/22/2025 in the New York County Civil County – Landlord and Tenant Division)

- EASTGATE WHITEHOUSE LLC – LANDLORD PRIME-TENANT v. 939 MITCHEL MARKET INC. – SUB TENANT (Case No. LT-320918-24/NY, Received on 11/26/2024 in the New York County Civil County – Landlord and Tenant Division)

- EASTGATE WHITEHOUSE LLC LANDLORD/PRIME TENANT v. BRITTANY MEYER SUB TENANT et al (Case No. LT-318790-24/NY, Received on 10/24/2024 in the New York County Civil County – Landlord and Tenant Division)

- EASTGATE WHITEHOUSE LLC – LANDLORD/PRIME TENANT v. MITCHEL MARKET INC. SUB TENANT (Case No. LT-317778-24/NY, Received on 10/07/2024 in the New York County Civil County – Landlord and Tenant Division)

- EASTGATE WHITEHOUSE LLC – LANDLORD/PRIME TENANT  v. SHARON RIVERA SUB TENANT et al (Case No. LT-317777-24/NY, Received on 10/07/2024 in the New York County Civil County – Landlord and Tenant Division)

- EASTGATE WHITEHOUSE LLC LANDLORD/PRIME TENANT v. MITCHEL MARKET INC. SUB TENANT (Case No. LT-316789-24/NY, Received on 09/20/2024 in the New York County Civil County – Landlord and Tenant Division)

- EASTGATE WHITEHOUSE LLC - LANDLORD/PRIME TENANT v. GERALD COHEN SUB TENANT et al (Case No. LT-316146-24/NY, Received on 09/11/2024 in the New York County Civil County – Landlord and Tenant Division)

- EASTGATE WHITEHOUSE LLC LANDLORD/PRIME TENANT v. 937 FIRST AVENE FOOD CORP - SUBTENANT (Case No. LT-316147-24/NY, Received on 09/11/2024 in the New York County Civil County – Landlord and Tenant Division)

- EASTGATE WHITEHOUSE LLC LANDLORD/PRIME TENANT v. AMANDA COHN et al (Case No. LT-316145-24/NY, Received on 09/11/2024 in the New York County Civil County – Landlord and Tenant Division)

- EASTGATE WHITEHOUSE LLC v. MUMBAH STYLE PIZZA, INC. et al (Case No. LT-315782-24/NY, Received on 09/06/2024 in the New York County Civil County – Landlord and Tenant Division)

- EASTGATE WHITEHOUSE LLC v. ADMIR HAVHIU et al (Case No. LT-314816-24/NY, Received on 08/20/2024 in the New York County Civil County – Landlord and Tenant Division)

- Ron Ariel v. Estate Realty Management et al. (Case No. LT-001379-24/NY, Received on 08/06/2024 in the New York County Civil Court – Landlord and Tenant Division)

- CHRISTINIA INGRAM v. EASTGATE WHITEHOUSE LLC et al. (Case No. LT-000518-24/NY, Received on 03/20/2024 in the New York County Civil County – Landlord and Tenant Division)

- Eastgate Whitehouse LLC v. Beauty Plus Inc. et al (Case No. 150242/2023, Received on 01/09/2023 in the New York County Supreme Court)

- KATHRYN CASEY et al v. WHITEHOUSE ESTATES INC et al (Case No. 2021-04404, Received on 11/26/2021 I the Appellate Division – 1st Dept)

- Eastgate Whitehouse LLC v. Daniel Heller (Case No. LT-064378-16/NY, Received on 04/22/2021 in the New York County Civil Court – Landlord and Tenant Division)

- KATHRYN CASEY et al v. WHITEHOUSE ESTATES INC et al (Case No. 2021-01304, Received on 04/15/2021 in the Appellate Division – 1st Dept)

- KATHRYN CASEY et al v. WHITEHOUSE ESTATES INC et al (Case No. 2021-00203, Received on 01/19/2021 in the Appellate Division – 1st Dept)

- EASTGATE WHITEHOUSE LLC v. DANIEL GELLER (Case No. 2020-05010, Received on 12/29/2020 in the Appellate Division – 1st Dept)

- WHITEHOUSE ESTATES, INC. v. – THE TAX COMMISSION OF THE CITY OF NEW YORK, AND THE COMMISSIONER OF FINANCE OF THE CITY OF NEW YORK, Docket No. 0252569/2023 (New York Clerk Court, New York County 09/20/2023), Court Docket

- Commissioner of Labor State of New York v. Whitehouse Estates Inc., Docket No. 4213984/2023 (New York Judgment & Liens Court, New York County 08/23/2023), Court Docket

- Building Service 32bj Pension Fund v. Whitehouse Estates, Inc., Docket No. 1:23cv7286 (United States District Court, New York Southern District 08/17/2023), Court Docket

- Commissioner of Labor State of New York v. Whitehouse Estates Inc., Docket No. 4154636/2023 (New York Judgment & Liens Court, New York County 01/25/2023), Court Docket

- WHITEHOUSE ESTATES, INC. v. – THE TAX COMMISSION OF THE CITY OF NEW YORK, AND THE COMMISSIONER OF FINANCE OF THE CITY OF NEW YORK, Docket No. 0255497/2022 (New York Clerk Court, New York County 10/06/2022), Court Docket

- WHITEHOUSE ESTATES, INC. v. – THE TAX COMMISSION OF THE CITY OF NEW YORK, AND THE COMMISSIONER OF FINANCE OF THE CITY OF NEW YORK, Docket No. 0257234/2020 (New York Clerk Court, New York County 10/08/2020), Court Docket

- Whitehouse Estates, Inc. v. Renna, Pamela, Docket No. 3891894/2019 (New York Judgment & Liens Court, New York County 07/29/2019), Court Docket

- Whitehouse Estates, Inc. v. Intervenors, Docket No. 3891892/2019 (New York Judgment & Liens Court, New York County 07/29/2019), Court Docket

- DLA Piper LLP v. Whitehouse Estates Inc, Docket No. 0153734/2012 (New York Clerk Court, New York County 06/15/2012), Court Docket

- Whitehouse Estates Inc v. Does John 1 Thru 99, Docket No. 0153646/2012 (New York Clerk Court, New York County 06/13/2012), Court Docket

- CASEY, KATHRYN v. WHITEHOUSE ESTATES, Docket No. 111723/2011 (New York Supreme Court, New York County 01/20/2012), Court Docket

- Swanson Kirk v. Whitehouse Estates Inc, Docket No. 0111723/2011 (New York Clerk Court, New York County 10/14/2011), Court Docket

- Whitehouse Estates Inc v. Swanson Kirk, Docket No. 0652478/2011 (New York Clerk Court, New York County 09/09/2011), Court Docket

- Mujica, Moises v. Whitehouse Estates Inc Et Ano, Docket No. 0000978/2002 (New York Clerk Court, Kings County 01/09/2002), Court Docket

- Whitehouse Estates Inc v. Leonardi, Vito, Docket No. 1234725/1999 (New York County Clerk Records 09/14/1999), Court Docket

- Whitehouse Estates Inc v. Leonardi Vito, Docket No. 0602684/1999 (New York Clerk Court, New York County 06/02/1999), Court Docket

- Whitehouse Estates Inc v. Post Elizabeth J, Docket No. 0571194/196 (New York Clerk Court, New York County 11/29/1996), Court Docket

- Whitehouse Estates Inc v. Bernard Dowrkin, Docket No. 0092167/1991 (New York Clerk Court, New York County 03/15/1991), Court Docket

- Whitehouse Estates Inc v. Seventh City Corp, Docket No. 0022399/1978 (New York Clerk Court, New York County 12/27/1978), Court Docket

- Whitehouse Estates Inc v. Albert H Brodkin Et Al, Docket No. 0048811/1978 (New York Clerk Court, New York County 11/02/1978), Court Docket

- V.C. Drywall & Remodeling LLC v. 939 First Ave LLC, Eastgate Whitehouse LLC, Whitehouse Estates Inc., et al., Case No. 120618-110, Received on 12/06/2018 in the New York County Supreme Court

## SCHEDULE 17

## KEY TENANTS

1. 1ST Ave. Panini & Grill, LLC
2. Support Parking LLC

## **SCHEDULE 20**

1. That certain Elevator Maintenance Contract Specifications (Full Service) dated January 4, 2007, by and between PS MARCATO ELEVATOR CO. INC. and WHITEHOUSE ESTATES INC.