**WESTERMAN BALL EDERER**
**MILLER ZUCKER & SHARFSTEIN, LLP**
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200
John E. Westerman
William C. Heuer
Mickee M. Hennessy
Todd M. Gardella
Michele L. Angell
*Special Litigation Counsel to David Wallace,*
*as Chapter 11 Plan Administrator of the*
*Estate of Eastgate Whitehouse, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                       :
In re                                                  :   Case No. 22-22635 (SHL)
                                                       :
EASTGATE WHITEHOUSE LLC,                               :
                                                       :   Chapter 11
                                                       :
                              Debtor.                  :
                                                       :
-------------------------------------------------------x

**SUPPLEMENT TO THE MOTION OF PLAN ADMINISTRATOR FOR ENTRY OF AN ORDER (I) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS PURSUANT TO THE CONFIRMED PLAN, (II) APPROVING THE STALKING HORSE AGREEMENT, SUBJECT TO HIGHER AND BETTER OFFERS, (III) FINDING THAT THE BUYER IS A GOOD FAITH PURCHASER UNDER BANKRUPTCY CODE § 363(m), (IV) APPROVING THE ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES PURSUANT TO BANKRUPTCY CODE § 365, AND (V) GRANTING RELATED RELIEF RELATING TO BID SUBMITTED FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

TO:    HONORABLE SEAN H. LANE,
       UNITED STATES BANKRUPTCY JUDGE:

David Wallace as the chapter 11 plan administrator (the "Plan Administrator") for the above-captioned, post-confirmation debtor, Eastgate Whitehouse, LLC (the "Debtor") under the confirmed *Liquidating Plan for the Debtor Filed by Barclays Bank PLC* [Docket No. 207] (the

"Confirmed Plan"), as and in further support of his *Motion Of Plan Administrator For Entry Of An Order (I) Approving The Sale Of Substantially All Of The Debtor's Assets Pursuant To The Confirmed Plan, (II) Approving The Stalking Horse Agreement, Subject To Higher And Better Offers, (III) Finding That The Buyer Is A Good Faith Purchaser Under Bankruptcy Code § 363(m), (IV) Approving The Assignment Of Executory Contracts And Leases Pursuant To Bankruptcy Code § 365, And (V) Granting Related Relief* (the "Sale Motion") [1], and supplements additional information into his Sale Motion by providing the information below regarding a bid received for the purchase of substantially all of the Debtor's assets, and respectfully states as follows:

1. Pursuant to the Sale Motion, the Plan Administrator, in consultation with Secured Lender, is seeking approval of the sale of substantially all of the Debtor's assets free and clear of liens, claims and encumbrances to Mazal (the "Stalking Horse"), pursuant to the PSA, which is subject to (a) the Secured Lender's consent, and (b) higher and better offers, including any credit bid by the Secured Lender. (*See id.*, §§ 1.17, 1.50, 1.66, 7.2, 7.4; Confirmation Order, ¶ 21). As detailed below, although a single bid was received from a third party, the bid is not higher and better than Mazal's PSA, and for the reasons set forth herein, the Plan Administrator has determined that the Mazal PSA continues to the highest and best offer to purchaser the Sale Assets. Accordingly, no auction is necessary and the Plan Administrator respectfully requests that the Court enter the Sale Order approving the Sale to the Stalking Horse.

2. On September 30, 2025, the Court entered that certain Order Scheduling Expedited Hearing And Modifying Local Rule's Deadline For Filing Objections To, And Limiting Notice Of, Motion Of Plan Administrator For Entry Of An Order (I) Approving The Sale Of Substantially

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed them in the Sale Motion.

2

All Of The Debtor's Assets Pursuant To The Confirmed Plan, (II) Approving The Stalking Horse Agreement, Subject To Higher And Better Offers, (III) Finding That The Buyer Is A Good Faith Purchaser Under Bankruptcy Code § 363(m), (IV) Approving The Assignment Of Executory Contracts And Leases Pursuant To Bankruptcy Code § 365, And (V) Granting Related Relief (the "Scheduling Order").

3. Pursuant to the Scheduling Order, the hearing on the Sale Motion was scheduled for October 23, 2025 at 11:00 a.m. (prevailing Eastern Time) (the "Sale Hearing").

4. Pursuant to the Scheduling Order, any proposed higher and better offers were required to be submitted in writing to the Plan Administrator so as to be actually received no later than three (3) business days before the Sale Hearing, or by October 20, 2025. All such offers were required to be accompanied by a deposit to the Plan Administrator of at least $650,000 in immediately available funds.

5. On October 20, 2025, Sonny Tran a/k/a Son Dinh Tran ("Tran") submitted to the Plan Administrator a letter containing an offer to purchase the assets of the Debtor (the "Bid"), a true and correct copy of which is attached to the accompanying Declaration of David Wallace as Exhibit A.

6. The Bid proposes a purchase price of $13,500,000 with the assumption of the cure amounts listed in the Sale Motion to reestablish security deposits for the tenants.

7. The Bid identifies the buyer as "Sonny Tran or his designee."

8. The Bid states that "due diligence has been completed."

9. The Bid also details various requested revisions to the PSA with the Stalking Horse, including, (i) finding that Tran is a good faith purchaser, (ii) right to modify list of service contracts listed in Schedule "20," (iii) confirmation that there are no defaults under the ground lease with

3

the master landlord, (iv) sale to be free and clear of all liens, claims, taxes, and encumbrances and there are no outstanding New York City or Building Code violations, and (v) Seller representation that there is no current rent strike.

10. After receiving the Bid, counsel for Plan Administrator discussed the Bid with Tran's counsel and requested clarification on certain points.

11. By letter dated October 22, 2025, a copy of which is attached to the accompany Declaration of David Wallace as Exhibit B, Tran clarified the Bid by stating that the "total purchase price is $13.5 plus the assumption of the cure amounts, so effectively the offer is $13,862,537.04. based upon the rent roll annexed to the stalking horse contract." The October 22 Letter further stated that "Mr. Tran is fine with taking the property subject to the Schedule "4" violations together with the credit of $150,000."

12. Other than the Bid, no other offers were received by the Plan Administrator in connection with the Sale Motion.

13. For the reasons set forth herein, the Plan Administrator has determined that the Bid is not a higher and better offer than the PSA with the Stalking Horse, and therefore respectfully requests that the Court enter the Sale Order, without the need for an auction.

14. First, the Bid reflects at best, an additional recovery of no more than $150,000 beyond what would be recovered following a closing under the PSA with the Stalking Horse. The Stalking Horse PSA's purchase price is $13,000,000. However, in the event the Plan Administrator sells to a purchaser other than the Stalking Horse pursuant to a higher and better offer, then Plan Administrator shall pay the Stalking Horse the amount of $350,000.00 (the "Expense Reimbursement") as an expense reimbursement. Accordingly, although the Bid reflects

4

an increase of $500,000, when considering the Expense Reimbursement, the difference is just $150,000.

15.     Second, the Plan Administrator has significant concerns regarding Tran's ability and/or intention to timely close. Prior to October 20, 2025, in the seven months that the Broker has been marketing the Assets for sale, Tran has never signed a confidentiality agreement with the Broker, has never accessed the data room, never toured the Property, and never previously submitted an offer to purchase the Assets. As such, although the Bid states that "due diligence has been completed," Tran has never been part of any due diligence process. As such, the Plan Administrator questions how Tran would have conducted due diligence without having properly obtained access to financials or toured the Property, and has significant concerns as to Tran's intentions to close on a $13.5 million sale without having done any true diligence.

16.     Third, publicly available information raises further concerns regarding Tran's ability to establish adequate assurance of future performance under the Ground Lease. Specifically, an article published by the New York Post on August 5, 2024 describes that "about a dozen buildings" owned by Tran's company Tran Group "are in a state of revolt with residents refusing to pay rent over issues including rats, house mites, unsafe construction, and even a discarded toilet stored in an apartment lobby."

17.     Similarly, a public records search of Tran reflects various liens and judgments including judgments by the Commissioner of Labor of the State of New York against Tran.

18.     On the other hand, the Stalking Horse has provided a Declaration in support of the Sale Motion, which details the Stalking Horse's economic wherewithal to (a) close on the Sale and operate the business pursuant to the terms of the PSA; (b) perform under the terms of the Ground Lease and make payments of rent to the Ground Lessor; and (c) perform as required by the Ground

Lease and the one assumed executory contract for elevator services. Moreover, the Stalking Horse Bidder is an affiliate of Golden East Investors ("Golden East"), which, together with its affiliates, own and/or manage approximately 1,500 multifamily units across New York and nationally. It has extensive experience acquiring, repositioning, and operating multifamily assets, including both market rate and rent-stabilized properties. Their principals have over 50 years of experience in real estate investment and management, with a focus on value creation through hands-on asset management, capital improvements and community engagement.

19. The Ground Lessor has been given notice and an opportunity to object to the Sale of the Assets to the Stalking Horse pursuant to the PSA, and has not done so.

20. Fourth, to the extent Tran seeks modifications to the PSA adding representations or warranties including regarding the status of the ground lease or violations at the Property, these terms are not acceptable, as the Sale is "as is, where is and there are no such representations or warranties in the PSA with the Stalking Horse.

21. Fifth, any delay of the entry of the Sale Order beyond November 3, 2025, could cause the Stalking Horse to terminate and cancel the PSA. To the extent the entry of the Sale Order is delayed beyond November 3, 2025 due to a Bid that the Plan Administrator does not deem to be higher and better than the PSA, the Plan Administrator and Secured Lender are at risk of losing the Stalking Horse without having a legitimate back-up bidder.

22. The choice of one stalking horse bidder over another is subject to the debtor's (or estate fiduciary's) exercise of "reasonable business judgment". *See In re Metaldyne Corp.*, 409 B.R. 661, 667 (Bankr. S.D.N.Y. 2009) (Glenn, J.). To that end, "the Court should not substitute its business judgment for that of the Debtors'." *Id.* (collecting cases). Here, the Bid is not a higher

and better offer because Tran is not likely to establish adequate assurance of future performance and may never close on the acquisition of the Assets.

23. Accordingly, the Bid is not a higher and better offer than the Mazal bid outlined in the PSA. As such, the Plan Administrator respectfully requests that the Court enter an order: (a) granting the Motion; (b) approving the sale of the Assets to the Stalking Horse pursuant to the PSA, subject to higher and better offers; (c) approving the assignment of the Assigned Contracts and Leases; and (d) granting such other and further relief as is just and proper.

Dated: Uniondale, New York
October 22, 2025

                                   **WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP**

By:    */s/ William C. Heuer*
        John E. Westerman
        William C. Heuer
        Mickee M. Hennessy
        Todd M. Gardella
        Michele L. Angell
        1201 RXR Plaza
        Uniondale, New York 11556
        Telephone: (516) 622-9200
        jwesterman@westermanllp.com
        wheuer@westermanllp.com
        mhennessy@westermanllp.com
        tgardella@westermanllp.com
        mangell@westermanllp.com

        *Special Litigation Counsel to David Wallace,
        as Chapter 11 Plan Administrator of the
        Estate of Eastgate Whitehouse, LLC*