UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

                                                    Chapter 11

EASTGATE WHITEHOUSE, LLC,                    Case No.: 22-22635-shl

                      Debtor.

-----------------------------------------------------------X

## BIDDING PROCEDURES ORDER

These Bidding Procedures are promulgated in connection with the sale ("**Sale**") of substantially all of the Debtor's assets, comprised of the following:

A. The Debtor's interest as ground lessee (the "**Ground Lessee Interest**") under that certain ground lease, dated as of June 28, 1956 (the "**Initial Ground Lease**") between First and Fifty-Second Corporation, a New York corporation, as ground lessor (the "**Initial Ground Lessor**") and 2249 Webster Ave. Corp, a New York corporation and predecessor-in-interest to Seller, as ground lessee (the "**Initial Ground Lessee**"), as amended by that certain Agreement dated as of November 15, 1978 (the "**First Amendment**") between First and Fifty Second Realty Company, a New York partnership and successor-in-interest to the Initial Ground Lessor (the "**Intermediate Ground Lessor**"), and Whitehouse Estates, Inc., a New York corporation, successor-in-interest to the Initial Ground Lessee and predecessor-in-interest to Seller, as ground lessee (the "**Intermediate Ground Lessee**"), as further amended by that certain Extension of Lease dated as of May 2, 2006 (the "**Second Amendment**," and together with the First Amendment and the Initial Ground Lease, as the same may have been or may be further amended, the "**Ground Lease**"), between 939 First Avenue, LLC, a New York limited liability company and successor-in-interest to the Intermediate Ground Lessor, as ground lessor (the "**Ground Lessor**") and Intermediate Ground Lessee, as ground lessee, which provides for Seller's lease of the real property located at 939-943 First Avenue, a/k/a 344-350 East 52nd Street, New York, New York, which is commonly known as Eastgate House, more particularly described in **Schedule 1** attached hereto (the "**Land**");

B. any buildings and improvements situated on the Land (the "**Improvements**");

C. all right, title and interest of Seller, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land and all other appurtenances to the Land and Improvements, and all right, title and interest of Seller in and to any award made or to be made in lieu thereof and in and to any unpaid award for damages to the Land and Improvements by reason of change of grade of any street ("**Appurtenances**"); and

D. to the extent actually assignable by the Seller at no cost to Seller, all warranties, guaranties, licenses, permits and other rights both tangible and intangible, relating to the Ground Lessee Interest and the Improvements (the "**Miscellaneous Property**") (collectively, all of the foregoing are the "**Premises**").

1

The sale of the Premises is pursuant to the Chapter 11 Liquidating Plan For The Debtor (as may be amended, the "**Plan**") filed By Barclays Bank PLC (the "**Secured Lender**") and the order, dated January 18, 2024, of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") confirming the Plan (the "**Confirmation Order**").

The seller of the Premises is David Wallace, solely in his capacity as Plan Administrator pursuant to the confirmed Plan. These procedures (collectively, the "**Bidding Procedures**") shall be employed by the Plan Administrator in connection with the proposed auction (the "**Auction**") to achieve the highest and best offer for a sale (the "**Sale**") of the Premises, subject to the terms of an Agreement of Purchase and Sale ("**APS**") executed by each of the Bidders (defined below). The Auction shall be conducted by the Plan Administrator or his representative.

1. **Participation Requirements**

There are two (2) bidders who may participate in the Auction (the "**Bidders**"): (i) Mazal Echad, LLC ("**Mazal**"); and (ii) Son Dinh Tran ("**Mr. Tran**"). No additional bidders or interested parties may participate in the Auction.

The Plan Administrator reserves the right to request additional information (separate from the information already provided) from either or both of the Bidders to enable the Plan Administrator, in his reasonable discretion, to determine the best and highest bid capable of achieving a closing and Sale for a purchase of the Premises, including:

(a) a statement and other factual support demonstrating to the Plan Administrator's reasonable satisfaction, after consultation with the Secured Lender, that the Bidder has a *bona fide* interest in consummating a Sale transaction;

(b) additional information, as determined by the Plan Administrator, with the consent of the Secured Lender, to allow the Plan Administrator to determine that the Bidder has the financial wherewithal and any required internal corporate, legal or other authorizations to close a Sale transaction;

(c) a statement, signed under oath and penalty of perjury and to be filed with the Bankruptcy Court, that none of the following have or shall, after a closing on a Sale of the Premises, will have an interest in Bidder, or any entity to which Bidder may or will transfer its rights in and to the Premises, or any entity that will have any contractual or other relationship in any way relating to the Premises: (i) William Koeppel, (ii) any family member of William Koeppel, and/or (iii) any entity in which William Koeppel or any family member of William Koeppel (a) has an interest or (b) controls; and

(d) a statement, signed under oath and penalty of perjury and to be filed with the Bankruptcy Court, identifying all principals and other individuals or entities having or which will have an interest in Bidder and/or the ultimate purchaser of the Premises (e.g., if Bidder assigns its interests to an acquisition vehicle, the principals and interest holders in that entity must be disclosed).

Each Bidder shall comply with all reasonable requests for information and due diligence access by the Plan Administrator or his advisors regarding the ability of such Bidder to consummate its contemplated transaction.

Each Bidder shall be deemed to: (a) acknowledge and represent that it is bound by all the terms and conditions of these Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures and the Sale.

**2.    Bankruptcy Court Jurisdiction**

Bidders shall: (a) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Auction and Sale of the Premises, and the construction and enforcement of the contemplated transaction documents of the Bidders, (ii) bring any such action or proceeding in the Bankruptcy Court, and (iii) be deemed to have consented to the Bankruptcy Court entering a final judgment determining any such action or proceeding.

**3.    Form of Agreement**

Each of the Bidders have signed an APS, the executed form of which shall be used for purposes of the Auction and Sale of the Premises. Any proposed modifications may be rejected by the Plan Administrator, in consultation with the Secured Lender, and may negatively impact a bid submitted by a Bidder.

**4.    Due Diligence**

Neither Bidder is entitled to additional diligence regarding the Premises.

**5.    Bids Before Auction and Commencement of the Auction.** Each Bidder may modify the economic terms of its bid prior to the Auction, and the Plan Administrator shall communicate to the other Bidder any such changes. At the commencement of the Auction, the Plan Administrator will announce what he, in consultation with the Secured Lender, has determined be the best and highest bid for the Premises. If before the Auction either Bidder notifies the Plan Administrator that it no longer intends to bid and affirmatively withdraws its bid from consideration, the Plan Administrator may cancel the Auction and request that the Bankruptcy Court immediately hold a hearing to approve a Sale to the other Bidder.

**6.    Evaluation of Bids**

The Plan Administrator shall inform the Secured Lender of all bids and modifications to any bid by either Bidder. The Plan Administrator shall share with Mazal the APS signed by Mr. Tran. Both Bidders shall acknowledge that each has seen the other's APS.

The Plan Administrator shall confer with the Secured Lender in connection with the Plan Administrator's evaluation of any bid.

7. **Auction**

The Plan Administrator or his representative shall conduct the Auction (the "**Auction**") for the Premises. Following the Auction, the Plan Administrator will determine in his business judgment, with the consent of the Secured Lender, which bid is the highest or best bid for the Premises, to be communicated to each Bidder with an opportunity to respond until the close of the Auction, which will be determined by considering, among other things, the following non-binding factors: (a) the number, type and nature of any changes to the applicable APS requested by a Bidder; (b) the extent to which such modifications are likely to delay closing of the Sale and the cost to the estate of such modifications or delay; (c) the total consideration to be received by the estate, including the assumption of liabilities; (d) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (e) the net benefit to the estate; (f) the Expense Reimbursement (as defined in Mazal's APS); and (g) any other factors the Plan Administrator and Secured Lender may reasonably deem relevant.

The Auction for the Debtor's Premises or Properties, as applicable, shall be governed by the following procedures:

(a) the Auction shall be held on **October 29, 2025, at 12:30 p.m. (ET)** by way of a Microsoft Teams videoconference meeting or other online videoconferencing platform to be scheduled by the Plan Administrator;

(b) in Addition to the Plan Administrator and his professionals and advisors, only the Secured Lender and the Bidders (and their respective professionals and advisors) shall be entitled to attend the Auction;

(c) the Plan Administrator and his professionals and advisors shall direct and preside over the Auction, which shall be transcribed;

(f) the Bidders shall confirm at the outset of the Auction that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction or the Sale of the Premises;

(g) bidding shall commence at the amount of the best and highest bid that has been submitted prior to the Auction, as determined by the Plan Administrator.

(h) Bidders may submit successive bids in increments of at least $100,000.00 USD, and the Plan Administrator, with the consent of the Secured Lender, retains the right to modify the bid increment requirements at the Auction;

(i) all bids to be submitted shall be made on the record and in the presence of each of the Bidders;

(j) After the submission of a bid by a Bidder, the other Bidder shall have fifteen (15) minutes in which to submit a competing bid. Upon request, the Plan Administrator may permit up to thirty (30) minutes.

4

(k) the Plan Administrator and his professionals and advisors, with the consent of the Secured Lender, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any order of the Court entered in connection with the Debtor's Chapter 11 Case, and (ii) disclosed to the Bidders;

(l) Each bid submitted in each round of bidding during the Auction shall constitute an irrevocable offer and shall be binding on the Bidder submitting such bid until such party shall have submitted a subsequent bid at the Auction or the conclusion of the hearing to approve a Sale of the Premises, whichever occurs sooner;

(m) Upon the conclusion of the Auction, the Plan Administrator shall determine, with the consent of the Secured Lender, and subject to Court approval, the offer for the Premises that is the highest or best from the bids submitted at the Auction (the "**Successful Bid**"). In making this decision, the Plan Administrator shall consider, in consultation with the Secured Lender, the amount of the purchase price, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the applicable APS requested by each bidder, the Expense Reimbursement, objections and responses received from the Secured Lender, Mazal, and Mr. Tran, and the net benefit to the estate. The bidder submitting the Successful Bid shall become the "**Successful Bidder**" and shall have such rights and responsibilities of the purchaser as set forth in the applicable APS. Because there are only two (2) Bidders, the highest bid submitted by the Bidder that is not the Successful Bidder shall be designated the Back-Up Bid (and the corresponding Back-Up Bidder) to purchase the Premises in the event that the Successful Bidder does not close the Sale transaction as required with any Back-Up Bidder permitted fourteen (14) days to close once notified Successful Bidder did not close.

(n) prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

**THE SUCCESSFUL BID AND BACK-UP BID SHALL EACH CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE SUCCESSFUL BIDDER AND THE BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED, UNLESS THE APPLICABLE APS PERMITS THE BACK-UP BIDDER TO TERMINATE. EACH BID THAT IS NOT THE SUCCESSFUL BID OR THE BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.**

    8.    **Sale Hearing**

With respect to the Sale of the Premises, the Successful Bid and Back-Up Bid will be subject to approval by the Bankruptcy Court. If Mazal is the Successful Bidder, the objection deadline for the Ground Lessor has already passed, and a hearing to approve the Sale to Mazal is

scheduled to take place on **October 31, 2025, at 11 a.m. (ET) in person or via videoconference, as determined by the Court** (the "**Sale Hearing**"). To the extent that Mr. Tran is the Successful Bidder, a Sale Hearing will be scheduled for as soon as possible after the Auction. The Sale Hearing may be adjourned by the Plan Administrator from time to time, with the consent of the Secured Lender, without further notice to other creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of the Debtor's Chapter 11 Case.

At the Sale Hearing, the Plan Administrator will seek entry of an order that, among other things: (a) authorizes and approves the Sale to the Successful Bidder pursuant to the terms and conditions set forth in the APS submitted by the Successful Bidder; and (b) finds that Successful Bidder is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code.

9. **Back-Up Bidder**

Notwithstanding any of the foregoing, in the event that any Successful Bidder fails to close the Sale by no later than thirty (30) days after entry of the Sale Order approving the Sale to the Successful Bidder (or such date as may be extended by the Plan Administrator, with the consent of the Secured Lender), the Back-Up Bid will be deemed to be the Successful Bid, the Back-Up Bidder will be deemed to be the Successful Bidder, and the Plan Administrator shall be authorized, but not directed, to close the Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

10. **Failure to Achieve Closing**. To the extent that the Sale does not achieve a closing by December 31, 2025, the Plan Administrator will immediately set a new auction date and will proceed with a rescheduled auction on notice.

11. **Return of Deposits**

The Deposit of the Back-Up Bidder shall be returned upon a closing of the Sale by the Successful Bidder, or within a reasonable time thereafter. The Successful Bidder's deposit or, if the Sale is closed with a Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale. If a Successful Bidder (or, if the Sale is to be closed with a Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such Bidder, then, subject to the terms of the applicable APS, the Plan Administrator and the estate shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with a Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the estate for such breach or failure to perform. For the avoidance of doubt, the Plan Administrator's retention of a Deposit shall not constitute a waiver of the Plan Administrator's or the estate's legal or equitable rights relating to a Successful Bidder's or Back-Up Bidder's breach or failure to perform, and all such rights and remedies are preserved.

12. **Reservation of Rights**

The Plan Administrator and the estate reserve the right, with the consent of the Secured Lender, to modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments or procedures,

waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the bid requirements), impose additional terms and conditions with respect to the Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing; provided, however, that any modifications of bidding procedures shall not be inconsistent with the applicable APS, the Bankruptcy Code, or any order of the Court entered in the Chapter 11 Case, and shall be disclosed to each Bidder at the Auction.

Dated: October 28, 2025                              */s/ Sean H. Lane*
                                                     United States Bankruptcy Judge